IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF: )
)
KERRY PARIS, )
) No. 16 D 004685
    Petitioner/Counter-Respondent )
) Hon. Abbey Fishman Romanek
and )
) Calendar 94
FRANK MARTIN PARIS, JR., )
)
    Respondent/Counter-Petitioner. )

## BODY ATTACHMENT ORDER

This matter coming to be heard on the status of Respondent's purge from the Order of Adjudication of Indirect Civil Contempt entered on September 29, 2023, and Petitioner's Petition for Adjudication of Indirect Civil Contempt and For Other Relief (Failure to Pay STOUT Per the June 29, 2023 Order), Petitioner Kerry Paris, her counsel Thomas C. Cronin, counsel for Angelini, Ori + Abate, counsel for Lake Toback, counsel for Hurst Robin & Kay and counsel for Law Offices of Jonathan Merel, P.C. appearing in person, the Child Representative and Respondent's counsel appearing via Zoom, the Court being fully advised, **IT IS HEREBY ORDERED:**

    1.    Per the Court's September 29, 2023, Respondent/Obligor FRANK MARTIN PARIS, JR was ordered to appear in person in Room 3008 of the Daley Center at 11:00 a.m. today.

    2.    Without cause or explanation, Respondent/Obligor did not appear in person or via Zoom.

    3.    The Court having found and declared FRANK MARTIN PARIS, JR (Respondent/Obligor) to be in indirect civil contempt of Court for his willful failure to obey the Court's Judgment and Orders of May 5, 2023, May 17, 2023, May 18, 2023, June 29, 2023, July 6, 2023, and July 17, 2023.

    4.    This is Respondent's/Obligor's Body Attachment ordered by this court.

    5.    Respondent/Obligor shall post cash bond in the amount of One Million Six Hundred Seven Thousand Eight Hundred Fifty Dollars and 35 Cents ($1,607,850.35).

    6.    The Clerk of the Court is directed to prepare two certified copies of this Order for submittal to the Sheriff of Cook County.

---


EXHIBIT A

**WHEREFORE, THE COURT ORDERS:**

1. The Sheriff of Cook County, the Sheriff of any County in Illinois, or any duly deputized law enforcement agent to seize the Respondent/Obligor and bring him to Courtroom 3008 of the Richard J. Daley Center, 50 West Washington, Chicago, Illinois 60602 and to enter this Order into the LEADS System:

   **Name:** Frank Martin Paris, Jr. (AKA "Marty)     **Date of Birth:** November 23, 1968

   **Male**     **Height:** 5'9"     **Weight:** 160 pounds     **Race:** Caucasion

   **Last known home address:** 1100 Keystone Ave., River Forest, IL 60305
   **Alternate home address:** 822 Forest Ave., River Forest, IL 60305
   **Last known work address:** 1525 W. Homer Street, Suite 401, Chicago, IL 60642

2. If Respondent/Obligor is taken into custody, the Sheriff/law enforcement agent may release the Respondent/Obligor after he shall deposit **One Million Six Hundred Seven Thousand Eight Hundred Fifty Dollars and 35 Cents ($1,607,850.35)** in escrow with the Sheriff or the Court pursuant to 750 ILCS 5/713(a).

3. If the Respondent/Obligor is released pursuant to paragraph 2, the Sheriff shall then advise the Respondent/Obligor that further hearing on the Petition is continued to 21 to 30 days from the date of release and the Respondent/Obligor is required to appear at _____ a.m. on _____, 2023 at the Richard J. Daley Center, 50 W. Washington, Chicago, Illinois 60602, Room 3008.

   FAILURE OF RESPONDENT TO APPEAR AFTER POSTING ESCROW SHALL RESULT IN ANOTHER BODY ATTACHMENT.

4. The conditions set forth on the next page apply to this order.

**ENTERED:**

**SO ENTERED:** October 17, 2023     **BY:/S/Judge Abbey Fishman Romanek #2119**
                                       Abbey Fishman Romanek

*Prepared By:*
Cronin & Co., Ltd.
Thomas C. Cronin
120 N. LaSalle St., 20th Floor
Chicago, Illinois 60602
Tel. 312.500.2100
Firm No. 37287
tcc@cronincoltd.com

**TO BE COMPLETED BY THE SHERIFF/LAW ENFORCEMENT AGENCY:**

I informed the Respondent/Obligor that his court date is at _____ a.m. on_____, 2023 at the time and location set forth in paragraph 3 of the Body Attachment Order, and informed him attendance is mandatory. A copy of this order was given to Respondent/Obligor.


**DATE:** _____  **SHERIFF:** _____

                                          **RESPONDENT/OBLIGOR:** _____


## CONDITIONS OF THE BODY ATATCHMENT ORDER

1. A copy of this order is given by the Sheriff to the Respondent/Obligor.

2. THE CONTINUANCE DATE GIVEN BY THE SHERIFF/LAW ENFORCEMENT AGENCY TO THE RESPONDENT/OBLIGOR SHALL NOT BE LESS THAN 21 DAYS NOR MORE THAN 30 DAYS FROM THE DATE OF RELEASE, AND IF SUCH DATE FALLS ON A COURT HOLIDAY, THE HEARING WILL BE HELD ON THE NEXT REGULAR DAY THE COURT IS IN SESSION.

3. The Order is directed to any Sheriff of any County in Illinois.

4. The Clerk shall inform the legal counsel of the Petitioner/Obligee whose name appears on this order of the court date at which the Respondent/Obligor is required to appear.

5. <u>If the Respondent/Obligor fails to appear on the next court date</u>, the escrow deposited either with the Sheriff or the Clerk, pursuant to local rule, shall be sent immediately from the Clerk of the Circuit Court Bond Department to the Office of the Clerk of the Circuit Court, Child Support Division, Richard J. Daley Center, 50 West Washington Street, Room LL01, Chicago, Illinois 60602, to be applied toward child support arrearages unless otherwise ordered by the Court issuing this order.

6. The escrow is not subject to fees.

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE THE MARRIAGE OF: ) | |
| ) | |
| KERRY PARIS, ) | |
| ) | No. 16 D 004685 |
| Petitioner/Counter-Respondent ) | |
| ) | Hon. Abbey Fishman Romanek |
| and ) | |
| ) | Calendar 94 |
| FRANK MARTIN PARIS, JR., ) | |
| ) | |
| Respondent/Counter-Petitioner. ) | |

## ORDER

This matter coming to be heard on the status of the Respondent's purge of contempt following the execution of the Court's Body Attachment Order, Petitioner, Petitioner's counsel, the Child Representative, Respondent and Respondent's counsel all appearing via Zoom, the Court being advised in the premises, **IT IS HEREBY ORDERED:**

1. The Court finds that (i) Respondent has not paid any money to purge his contempt, including his overdue child support and maintenance obligations, (ii) Respondent has not produced the life insurance policies to purge his contempt, (iii) Respondent has not executed the paperwork, or caused the paperwork to be executed, to transfer the assets awarded Kerry in the Judgment, and (iv) Respondent has not funded the 503(g) Trust as ordered by the Court in order to protect the interests of the Paris children.

2. Marty remains remanded/committed in the Cook County Jail, there to remain until he shall have purged himself by (i) producing the life insurance policies, (ii) transferring the assets awarded to Kerry in the Judgment, and (iii) paying $500,000 to the 503(g) Trust for child support and maintenance.

3. Respondents' counsel advised the Court that, during the pendency of today's hearing, a bankruptcy petition was filed on Mr. Paris' behalf, Case Number 23-16481. The Court has not been provided a copy of the Petition. However, as reflected in the Court's holding in *In re Posner*, 610 B.R. 586 (ILNB2019), assets awarded to Kerry in the Judgment are not part of any bankruptcy estate and not subject to any automatic stay. Further, pursuant to 11 U.S.C. Section 362(b)(2), the filing of a petition for bankruptcy does not stay a divorce proceeding, the establishment or modification of a domestic support obligation, or the collection of a domestic support obligation from property that is not property of the estate. If Respondent or his counsel believe that this Order violates the automatic stay in any respect, they shall provide the Court and Petitioner's counsel with a copy of the bankruptcy filings and an appropriate motion for relief.


EXHIBIT B

4. All other matters are entered and continued to the Court's in person hearing on December 21, 2023 at 2:00 p.m.

**ENTERED:**

**SO ENTERED**: December 8, 2023    **BY**:_____
                                         Abbey Fishman Romanek

*Prepared By:*
Cronin & Co., Ltd.
Thomas C. Cronin
120 N. LaSalle St., 20th Floor
Chicago, Illinois 60602
Tel. 312.500.2100
Firm No. 37287

# LAW OFFICES
# CRANE, SIMON, CLAR & GOODMAN

ARTHUR G. SIMON
SCOTT R. CLAR
KAREN R. GOODMAN

135 S. LA SALLE STREET
SUITE 3950
CHICAGO, ILLINOIS 60603-4297
TEL: 312-641-6777
FAX: 312-641-7114
WWW.CRANESIMON.COM

JOHN H. REDFIELD, OF COUNSEL

EUGENE CRANE (1930-2022)

December 9, 2023

**Via Email:** tcc@cronincoltd.com

Thomas C. Cronin
Cronin and Co., Ltd.
120 N. LaSalle Street
20th Floor
Chicago, IL 60602

Re: Frank Martin Paris, Jr. ("Debtor"); Chapter 7 Case 23-16481

Dear Tom:

As you know, an order for relief pursuant to a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code was entered in the above-captioned case on December 8, 2023. As you also know, the Debtor has been incarcerated pursuant to a Body Attachment Order. The Debtor's incarceration began just prior to the entry of the Order for Relief, based upon purported indirect civil contempt.

Due to the entry of the Order for Relief, Section 362 of the U.S. Bankruptcy Code has been invoked and accordingly, the Body Attachment matter has been automatically stayed. For your benefit, please see attached in re: Erhardt, 618 B.R.832 (N.D.Ill 2020) supporting our position that this matter is not only automatically stayed, but requires immediate action on your part to free the Debtor from such incarceration. Failure to do so could result in sanctions against your client as well as your firm. We are in the process pf preparing an Emergency Motion to enforce the automatic stay before Judge Cleary to be heard as early as possible, but which we hope would not be necessary.

Please call me to discuss. I am available most of the day today. My cell number is 312-479-6937. I look forward to hearing from you.

Very truly yours,

CRANE, SIMON, CLAR & GOODMAN

By: /s/Scott R. Clar

SRC/drk
Attachments


EXHIBIT C

618 B.R. 832
United States District Court, N.D. Illinois, Eastern Division.

IN RE: Arthur T. ERHARDT, Debtor,

Arthur T. Erhardt, Appellant,

v.

Thomas Baldassarre, as executor of the estate of Mary Baldassarre, decedent, Appellee.

No. 20 C 0006
|
Bankruptcy No. 19 B 31952
|
Signed July 15, 2020

**Synopsis**
**Background:** Chapter 7 debtor moved for order to show cause why creditor should not be held in contempt for willfully violating the automatic stay in connection with debtor's continued incarceration in state jail for his civil contempt in refusing to return alleged property of his former domestic partner. The United States Bankruptcy Court for the Northern District of Illinois denied motion, after concluding that debtor's continued incarceration came within the "police and regulatory power" exception to automatic stay, and debtor appealed.

**Holdings:** The District Court, Sara L. Ellis, J., held that:

[1] debtor's continued incarceration upon order holding him in civil contempt was in nature of "continuation" of civil contempt proceeding against the debtor, which came within terms of automatic stay;

[2] debtor's continued incarceration did not satisfy the "pecuniary purpose" test for coming within the "police and regulatory power" exception to automatic stay; and

[3] debtor's continued incarceration did not come within the "public policy" test for being a legitimate exercise of government's "police and regulatory power," and thus was not excepted from the stay.

Vacated and remanded.

West Headnotes (16)

[1] **Bankruptcy** District Court
Before addressing the merits of arguments raised on bankruptcy appeal, district court had independent obligation to first confirm its jurisdiction over the appeal.

[2] **Bankruptcy** Scope of review in general
District court could treat a Chapter 7 debtor's show-cause motion for entry of order requiring creditor to show cause why he should not be held in contempt for willfully violating the automatic stay as a motion for an order on the merits of the alleged contempt, and address the propriety of a contempt finding on the merits, where doing so would not prejudice creditor, who had opportunity to argue before the bankruptcy court why he had not violated the automatic stay, and who prevailed on that argument. 11 U.S.C.A. § 362(a).

1 Case that cites this headnote

[3] **Bankruptcy** Finality
Bankruptcy court order finding that an individual has not violated the automatic stay is "final" and appealable and appealable as of right. 11 U.S.C.A. § 362(a); 28 U.S.C.A. § 158(a)(1).

[4] **Bankruptcy** Discretion
District court would review, for abuse of discretion, a bankruptcy court's determination that Chapter 7 debtor's continued incarceration in state jail, on a finding that he was in civil contempt of order requiring him to return the personal property of his former domestic partner, was an exercise of state court's police and regulatory power, and thus did not violate automatic stay. 11 U.S.C.A. § 362(b)(4).

[5] **Bankruptcy** Discretion

Bankruptcy court necessarily abuses its discretion when its decision is based solely on an erroneous conclusion of law.

[6]  **Bankruptcy** Conclusions of law; de novo review

Application of the automatic stay is question of law, which the district court reviews de novo on appeal from bankruptcy court.

[7]  **Bankruptcy** Proceedings, Acts, or Persons Affected

Statutory exceptions to automatic stay are interpreted narrowly to give the stay its intended broad application. 11 U.S.C.A. § 362(b).

[8]  **Bankruptcy** Contempt

Chapter 7 debtor's continued incarceration, under order holding him in civil contempt for failing to return the personal property of his former domestic partner as directed by state court, was in nature of "continuation" of civil contempt proceeding against the debtor, which came within terms of automatic stay if a stay exception did not apply. 11 U.S.C.A. § 362(a)(1).

[9]  **Bankruptcy** Contempt

State court's actions, holding Chapter 7 debtor in civil contempt and requiring him to serve a jail sentence until he purged his contempt by returning his former domestic partner's personal property as directed, were actions or proceedings by a "governmental unit," as required to come within the "police and regulatory" exception to automatic stay. 11 U.S.C.A. § 362(b)(4).

[10] **Bankruptcy** Administrative Proceedings and Governmental Action

"Police and regulatory power" exception to automatic stay is narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals and safety, but not to regulatory laws that directly conflict with control of the estate res or property by bankruptcy court. 11 U.S.C.A. § 362(b)(4).

[11] **Bankruptcy** Administrative Proceedings and Governmental Action

"Pecuniary purpose" test for whether governmental conduct comes within the "police and regulatory power" exception to automatic stay requires court to look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to debtor's estate; if government's acts are directed to health and safety concerns, then the exception applies, but if the focus of government's conduct is directed at debtor's financial obligations, then the exception does not apply. 11 U.S.C.A. § 362(b)(4).

[12] **Bankruptcy** Administrative Proceedings and Governmental Action

"Public policy" test for whether governmental conduct comes within the "police and regulatory power" exception to automatic stay considers whether the government action is principally to effectuate public policy or to adjudicate private rights; while the former meets the test, the latter does not. 11 U.S.C.A. § 362(b)(4).

[13] **Bankruptcy** Administrative Proceedings and Governmental Action

Government conduct comes within the "police and regulatory power" exception to automatic stay if it satisfies either the "pecuniary purpose" test or the "public policy" test for application of this exception. 11 U.S.C.A. § 362(b)(4).

[14] **Bankruptcy** Contempt

Civil contempt order issued as means of ensuring Chapter 7 debtor's compliance with prepetition state court order requiring him to return certain items identified as personal property of his former domestic partner was not issued out of

health or safety concerns, and did not satisfy the "pecuniary purpose" test for coming within the "police and regulatory power" exception to automatic stay; to the extent that any of the specified items were later found to constitute "property of the estate," state court's order could potentially hamper ability of debtor's creditors to recover from the estate during the bankruptcy process. 11 U.S.C.A. § 362(b)(4).

[15] Bankruptcy ⟶ Contempt

Continued incarceration of Chapter 7 debt in state jail for his civil contempt of court in failing to return personal property identified as belonging to his former domestic partner did not come within the "public policy" test for being a legitimate exercise of government's "police and regulatory power," and thus was not excepted from automatic stay; debtor was not being incarcerated to uphold dignity of court, as previously found by state court in characterizing the contempt order as a civil, and not a criminal, contempt order, but as means of coercing him to return property identified as belonging to his former domestic partner. 11 U.S.C.A. § 362(b)(4).

[16] Bankruptcy ⟶ Frivolity or bad faith; sanctions

Rule 11 sanctions are designed to deter litigation misconduct and to punish parties who have already engaged in such misconduct, in the exercise of a court's regulatory power. Fed. R. Civ. P. 11.

**Attorneys and Law Firms**

*835 Richard L. Hirsh, Richard L. Hirsh, P.C., Lisle, IL, for Appellant.

Lauren Newman, Thompson Coburn, LLP, Chicago, IL, for Appellee.

**OPINION AND ORDER**

SARA L. ELLIS, United States District Judge

In June 2019, the Circuit Court of DuPage County ordered Debtor-Appellant Arthur T. Erhardt to be incarcerated as a sanction for civil contempt. Erhardt was to remain in jail until he turned over several items of Mary Baldassarre's ("Ms. Baldassarre") personal property to Appellee Thomas Baldassarre ("Baldassarre"), the executor of Ms. Baldassarre's estate. Still in jail five months later, Erhardt filed a Chapter 7 bankruptcy petition. Shortly thereafter, he asked the bankruptcy court to enforce the automatic stay provided by 11 U.S.C. § 362 and sanction Baldassarre for not seeking to obtain Erhardt's release from jail based on the stay. The bankruptcy court denied Erhardt's motion, finding that Erhardt's continued incarceration was not prohibited by the automatic stay. Erhardt now appeals that order.[1] Because the bankruptcy court legally erred in determining that Erhardt's incarceration is outside the scope of the automatic stay, the Court vacates the bankruptcy court's order and remands the case for further proceedings in accordance with this opinion.

**BACKGROUND**[2]

**I. The Underlying State Trial Court Proceedings**

Erhardt and Ms. Baldassarre were domestic partners for over three decades. In May 2003, they jointly purchased a home (the "Residence"). The couple lived together until September 2016, when Ms. Baldassarre was diagnosed with an inoperable brain tumor. After Ms. Baldassarre's hospitalization and biopsy surgery, she began living with her daughter, Denise Bosh-Williams.

Shortly after Ms. Baldassarre's diagnosis, conflicts arose between Erhardt and Ms. Baldassarre's children from her previous marriage, Baldassarre and Bosh-Williams. In November 2016, Baldassarre and Bosh-Williams jointly petitioned for guardianship over Ms. Baldassarre in the Circuit Court of DuPage County. Erhardt filed a counterpetition seeking guardianship over Ms. Baldassarre and the estate. The following month, the state court appointed a guardian *ad litem*, set dates and times for Erhardt to visit Ms. Baldassarre, and affirmed Bosh-Williams' health care power of attorney.

In March 2017, Ms. Baldassarre discovered that since September 2016, Erhardt had been moving some of her money into accounts solely in his name. Erhardt admitted this, and Ms. Baldassarre terminated their relationship. A month later, on April 13, Ms. Baldassarre filed an emergency *836 motion for entry of the Residence and return of her personal property, alleging that Erhardt had repeatedly denied her access to the home and her belongings. The state court granted Ms. Baldassarre's motion on April 14 and ordered Erhardt to return specific items to Ms. Baldassarre, including her clothing, jewelry, baking items, and make-up. The same day, Ms. Baldassarre's children filed a citation to discover assets against Erhardt.

On April 20, the state court suspended Erhardt's power of attorney for property and froze all but one of his accounts, pending the turnover of certain financial documents. The court then conducted a hearing on the citation to discover assets on April 27. During the hearing, Erhardt admitted that after he had Ms. Baldassarre sign over the title to her vehicle, he had sold it for less than fair market value without telling her; that he had changed the locks and alarm codes to the Residence the previous fall; and that he had reviewed a letter from Ms. Baldassarre's counsel requesting the return of specific items of her personal property. Erhardt also testified that despite the April 14 order to turn over property, he had donated Ms. Baldassarre's baking items without her knowledge. The court ordered all parties not to remove any personal property from the Residence.

Later, at a hearing held on May 11, Erhardt testified that he did in fact possess Ms. Baldassarre's baking items, despite his previous testimony that he had donated them all. The state court ordered Erhardt to provide the garage access code for the Residence so that Ms. Baldassarre could pick up some of her items. On May 19, the parties entered into an agreed order that permitted Ms. Baldassarre to remove certain personal items from the Residence, and on June 1, Erhardt and Ms. Baldassarre entered into an agreed order listing the Residence for sale. The June 1 order also provided that Erhardt would return any property that he had removed from the Residence within 24 hours and provide the location of, and access to, all personal property that had been relocated from the house.

Ms. Baldassarre subsequently learned that Erhardt had cleaned out nearly all the property in the Residence, including many of the belongings that the state court had ordered to be returned to her, without the court's permission and without notifying Ms. Baldassarre. On August 9, Ms. Baldassarre and her children filed a petition for a rule to show cause against Erhardt. The petition alleged that by removing all or substantially all of the personal property from the Residence without returning it, Erhardt had violated the state court's April 27 and June 1 orders and was in "indirect civil contempt."[3] *In re Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶ 12, 432 Ill.Dec. 282, 129 N.E.3d 170. The same day, Erhardt filed an emergency motion to continue the hearing on the April 14 citation to discover assets based on an alleged potential Fifth Amendment issue. The state court continued the citation hearing and ordered that no property be removed from the Residence.

Ms. Baldassarre filed a citation to discover assets against Erhardt two days later, on August 11. Ms. Baldassarre alleged that Erhardt had removed, destroyed, or converted all of her personal property in violation of the court's orders and had previously admitted that he gave away some of her personal property and sold her car. The citation included a list of personal property that had not been returned *837 to Ms. Baldassarre despite the court orders.

On August 23, the state court issued a rule to show cause against Erhardt and set a hearing regarding any personal property not returned to the Residence for September 20. At the September 20 evidentiary hearing, the guardian *ad litem* and Bosh-Williams testified as to which items of personal property had been inside the Residence, which items remained missing, and who had access to the Residence and on what terms. Erhardt did not present any evidence of his own, and when he was called to testify, he asserted his Fifth Amendment right against self-incrimination.

On September 22, the state court found Erhardt in "deliberate and ongoing indirect civil contempt" of its April 27 and June 1 orders for removing and then failing to return numerous items of personal property to the Residence. *Id.* ¶ 17. Erhardt, however, could purge the contempt by returning "all missing items of personal property" to Ms. Baldassarre by the next court date. *Id.* Erhardt did not do so. Instead, he only returned some of the missing items of personal property to the Residence.

The state court thereafter held a hearing on December 6 to determine whether Erhardt had purged himself of indirect civil contempt. The court found that he had not and reiterated its holding that Erhardt was in "deliberate and ongoing indirect civil contempt" of its April 27 and June 1 orders

by removing numerous items of personal property that were ordered not to be removed from the Residence and not returning them. *Id.* ¶ 19. On December 8, the court ordered Erhardt to serve 30 days' incarceration but stayed enforcement of this order until December 13 to again give Erhardt a chance to purge his contempt.

Erhardt appealed the state court's contempt finding and its order of incarceration. Erhardt also filed an emergency motion with the appellate court to stay the incarceration pending appeal. The appellate court granted Erhardt's emergency motion on January 2, 2018. Ms. Baldassarre passed away the following month.

## II. Erhardt's Appeal and the State Trial Court's Subsequent Contempt Order

On appeal, Erhardt argued that because the contempt finding was criminal rather than civil, the state trial court had impermissibly made Erhardt prove that he was *not* in contempt. In the alternative, Erhardt argued that the civil contempt finding was an abuse of discretion because it "did not contain a valid purge provision or list the specific items that he must return." *Id.* ¶ 25.

The Illinois Appellate Court decided Erhardt's appeal on October 25, 2018. The appellate court affirmed the state court's contempt finding, which it found to be a finding of indirect civil contempt because "the dominant purpose for which the trial court imposed sanctions was to secure [Erhardt's] compliance with the" April 27 and June 1 orders. *Id.* ¶¶ 29, 39. Critically, "[t]he trial court's actions were remedial and for [Ms. Baldassarre's] benefit," as opposed to "a punitive effort to vindicate the authority of the court." *Id.* ¶ 30. However, the appellate court found that the state court's 30-day sentence allowed Erhardt to "evade the coercive nature of the sanctions": if Erhardt was "willing to sit in jail for 30 days rather than turn over [Ms. Baldassarre's] personal property to her estate," the coercive effect of the contempt order was lost. *Id.* ¶ 39. The appellate court also noted that the state court's September 22 order, which stated that Erhardt could purge his contempt by returning *838 all missing items of personal property, "did not specify the items that must be returned." *Id.* ¶¶ 17, 38. Thus, the appellate court vacated the sentence and remanded the case to "the trial court to enter a continuing and indeterminate sentence," as well as an order (1) providing that Erhardt "may purge himself of the contempt either before or during his imprisonment" and (2) listing "which specific items must be returned." *Id.* ¶ 39. Erhardt petitioned for leave to appeal the appellate court's decision, but the Illinois Supreme Court denied Erhardt's petition on January 31, 2019.

On June 5, 2019, the state court issued an "Order of Adjudication of Indirect Civil Contempt" in accordance with the appellate court's instructions for remand ("the June 5 Contempt Order"). Doc. 6-2 at 29. The June 5 Contempt Order remanded Erhardt to the county sheriff's custody for transfer to the county jail until he purged himself of his indirect civil contempt with respect to the April 27 and June 1 orders, and it explained that Erhardt could purge his contempt by tendering to Baldassarre every item listed on the attached exhibit, which listed 45 items or categories of items. The order also required Erhardt, "to more fully purge himself of contempt," to provide the court and Baldassarre with written inventories identifying the items that Erhardt had returned and those items that he had not returned. *Id.* at 30. It appears that Erhardt began serving his sentence in the county jail shortly after the state court entered the June 5 Contempt Order.

## III. Bankruptcy Court Proceedings

On November 8, 2019, a still-incarcerated Erhardt filed a voluntary petition for Chapter 7 bankruptcy. At a November 12 status hearing before the state court, Erhardt's state court counsel informed the court of the bankruptcy filing and asked for Erhardt's release from jail. Baldassarre's counsel did not agree to the motion, and the state court judge did not grant the motion. Later that day, Erhardt's bankruptcy counsel sent a letter to counsel for the guardian *ad litem* and Baldassarre demanding that their clients appear before the state court judge within 24 hours to obtain Erhardt's release based on the automatic stay provided by 11 U.S.C. § 362(a).

The demand fell on deaf ears, and on November 18, Erhardt filed a motion with the bankruptcy court titled "Motion to Enforce the Automatic Stay Entry of a Rule to Show Cause and for Other Relief Against" Baldassarre. Doc. 6-2 at 19. Erhardt argued that the automatic stay prohibited his continued incarceration and that Baldassarre was willfully violating the stay by failing to seek and obtain Erhardt's release from jail. Erhardt's motion sought (1) an order requiring Baldassarre to show cause as to "why he should not be held in contempt for failing to seek or obtain the termination of [Erhardt's] incarceration" once he received notice of the bankruptcy filing, (2) an award of fees and costs pursuant to 11 U.S.C. § 362(k)(1),[4] and (3) an assessment of punitive damages ($5,000) for each day that Baldassarre failed to seek and obtain Erhardt's release or, alternatively,

that such payment be made a condition, along with the release of Erhardt, for Baldassarre to purge himself of contempt. *Id.* at 27–28. At the November 22 hearing on the motion, Erhardt's counsel clarified that he was not asking the bankruptcy court to order the state court *839 to release his client from jail; rather, he was asking for Baldassarre "to cease the enforcement" of the jail sentence. Doc. 7 at 6:15–23. The bankruptcy court continued the hearing until December 19, which allowed Baldassarre to file a written response and Erhardt to file a reply.

At the December 19 hearing, the bankruptcy court denied Erhardt's motion. The bankruptcy court concluded that Erhardt's incarceration was an "exercise of police and regulatory power" and therefore not prohibited by the automatic stay. Doc. 7-1 at 5:22–6:6, 6:19–23. As the bankruptcy judge bluntly put it: "[Erhardt] is disrespecting, dishonoring, violating and flaunting the state court orders, and that I do believe is not protected by the automatic stay, and that is my ruling. So I'm denying your motion." *Id.* at 11:11–15. The bankruptcy court entered an order the same day denying Erhardt's "Motion To Enforce" and "Motion for Rule to Show Cause" "for the Reasons Stated on the Record." Doc. 1-3 at 6 (Bankr. Doc. 32).

Erhardt timely appealed the bankruptcy court's December 19, 2019 order under 28 U.S.C. § 158(c)(2) and Bankruptcy Rule 8002(a).

## LEGAL STANDARD

Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of a bankruptcy court. The Court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014).

## ANALYSIS

### I. The Court's Appellate Jurisdiction

[1] [2] Before addressing the merits of Erhardt's arguments, the Court must confirm its jurisdiction over his appeal. *See Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011) ("[W]e have an independent obligation to satisfy ourselves that jurisdiction is secure before proceeding to the merits."). Erhardt's motion before the bankruptcy court requested three types of relief: a show-cause finding, an award of fees and costs under 11 U.S.C. § 362(k)(1), and an order requiring Baldassarre to pay $5,000 for every day that he failed to seek and obtain Erhardt's release from jail. These requests sought to sanction Baldassarre for his alleged willful violation of the automatic stay by finding him in contempt and making him pay damages under § 362(k).[5] *See Thompson v. Gen. Motors Acceptance Corp.*, 566 F.3d 699, 708 (7th Cir. 2009) (noting that a bankruptcy court may award sanctions under § 362(k) for a willful violation of the automatic stay); *Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 41 (N.D. Ill. 2010) ("[A] bankruptcy court may punish a violation of the automatic stay pursuant to its civil contempt powers[.]").

*840 [3] The bankruptcy court denied these requests because it determined that Erhardt's incarceration was not prohibited by the automatic stay. In doing so, the bankruptcy court implicitly concluded that Baldassarre had not violated the stay—he could not violate the stay if it did not apply in the first place. An order finding that an individual has not violated the automatic stay is final and appealable. *In re Jones*, 369 B.R. 745, 747 (B.A.P. 1st Cir. 2007) ("A bankruptcy court's order determining whether there has been a violation of the automatic stay is a final order that supports appellate jurisdiction."). Moreover, by finding that the automatic stay did not apply to Erhardt's incarceration, the bankruptcy court essentially issued an order lifting the automatic stay as to that proceeding. *See Rajala v. Gardner*, 709 F.3d 1031, 1034 (10th Cir. 2013) (characterizing an order deeming § 362 inapplicable to judgment proceeds as "essentially an order granting relief from the automatic stay"); *In re Quigley Co.*, 676 F.3d 45, 51 (2d Cir. 2012) (finding that the bankruptcy court's decision on § 362's applicability was "the equivalent of a decision...on a motion seeking relief from a stay"). The bankruptcy court's order is final and appealable when viewed through this lens as well. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. ——, 140 S. Ct. 582, 586, 205 L.Ed.2d 419 (2020) (holding that a bankruptcy court's unreserved grant or denial of a motion for relief from the automatic stay "yields a final, appealable order"); *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 954 (7th Cir. 2003).

The Court therefore concludes that it has jurisdiction over Erhardt's appeal. With jurisdiction confirmed, the Court proceeds to the merits of the appeal.

### II. The Applicability of the Automatic Stay

[4] [5] [6] Although Erhardt identifies a number of issues that purportedly arise out of the bankruptcy court's order, the primary question before the Court is this: did the bankruptcy court err in concluding that Erhardt's continued incarceration is an exercise of police and regulatory power that is not prohibited by the automatic stay? Whether the Court views the bankruptcy court's conclusion as a denial of a motion for sanctions and contempt or as a grant of relief from the automatic stay, the standard of review is abuse of discretion. *See In re Sterling*, 933 F.3d 828, 832 (7th Cir. 2019) (civil contempt ruling); *In re United Air Lines, Inc.*, 438 F.3d 720, 734 (7th Cir. 2006) (decision to grant relief from an automatic stay). "However, a court necessarily abuses its discretion when its decision is based solely on an erroneous conclusion of law." *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003). The application of the automatic stay is a question of law that the Court reviews *de novo*. *Kovacs*, 739 F.3d at 1023; *N.L.R.B. v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 512 (7th Cir. 1991).

[7] "[F]iling a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts outside the umbrella of the bankruptcy case." *Ritzen*, 140 S. Ct. at 586. This automatic stay is governed by 11 U.S.C. § 362. *See In re Benalcazar*, 283 B.R. 514, 520–21 (Bankr. N.D. Ill. 2002). Subsection (a) to § 362 lays out the actions that are prohibited upon a filing for bankruptcy. 11 U.S.C. § 362(a)(1)–(8). Subsection (a), however, is subject to subsection (b), which lists several actions that are not prohibited by the automatic stay. *Id.* § 362(b)(1)–(28). Courts interpret the § 362(b) "exceptions narrowly to give the automatic stay its intended broad application." *In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir. 2011).

[8] Erhardt first contends (without challenge from Baldassarre) that his continued incarceration satisfies § 362(a)(1). The Court agrees. Subsection (a)(1), in relevant *841 part, applies the automatic stay to "the commencement or continuation...of a judicial, administrative, or other action or proceeding against the debtor that was...commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Section 362(a)(1)'s broad language— "judicial, administrative, or other action or proceeding against the debtor"—encompasses the state court's contempt proceedings and Erhardt's resulting incarceration. *See Benalcazar*, 283 B.R. at 518–19, 529–30 (finding that § 362(a)(1) prohibited a creditor from continuing to pursue civil contempt proceedings it initiated in state court against the debtor before the debtor filed for bankruptcy); *In re Atkins*, 176 B.R. 998, 1006 (Bankr. D. Minn. 1994) ("Section 362(a)(1)...has to include proceedings for adjudications of civil contempt, where the act in question is the debtor's alleged pre-petition violation of a court order."); 3 Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2020) ("The stay provision of subsection (a)(1) is drafted so broadly that it encompasses all types of legal proceedings, subject only to the exceptions provided in section 362(b)."). Whether measured from the state court's first finding of civil contempt (September 2017) or the start of Erhardt's jail sentence for that contempt (June 2019), the actions or proceedings at issue began well "before the commencement" of Erhardt's bankruptcy case. 11 U.S.C. § 362(a)(1). And these proceedings continue; indeed, Erhardt's continued incarceration reflects the state court's ongoing effort to use its civil contempt power to make Erhardt comply with its prior orders, which he has not yet done. *See In re Marriage of Carpel*, 232 Ill. App. 3d 806, 823, 173 Ill.Dec. 873, 597 N.E.2d 847 (1992) ("[T]he penalties in a civil contempt case serve only to coerce the contemnor to comply with a court order, and they must cease when the contemnor complies. For instance, a court may imprison [the contemnor] until [he] complies with the court order." (citation omitted)); *In re Moon*, 201 B.R. 79, 82–84, 90 (Bankr. S.D.N.Y. 1996) (finding that "the continued enforcement of [a pre-petition] contempt order by incarceration of the debtor" violated § 362(a)(1)), *rev'd on other grounds*, 211 B.R. 483 (S.D.N.Y. 1997). The Court therefore concludes that § 362(a)(1) encompasses the state court's civil contempt proceedings and Erhardt's ongoing incarceration as part of those proceedings.

[9] Even though Erhardt's incarceration satisfies subsection (a)(1), it is not prohibited if it also satisfies one of the exceptions found in subsection (b). The parties agree that the bankruptcy court relied upon § 364(b)(4) to deny Erhardt's motion. That exception provides that a stay under § 362(a)(1) does not apply to

> the commencement or continuation of an action or proceeding by a governmental unit...to enforce such governmental unit's...police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's...police or regulatory power.

11 U.S.C. § 362(b)(4). The state court's actions—holding a debtor (Erhardt) in civil contempt and requiring him to serve a jail sentence until he purges his contempt—are actions or proceedings by a "governmental unit." *Id.* § 101(27) ("governmental unit" includes an "instrumentality of...a State

[or] a municipality"). Thus, the question before the Court is whether Erhardt's incarceration for civil contempt reflects the enforcement of the state court's "police and regulatory power" under § 362(b)(4).

[10] [11] [12] [13] Courts have narrowly construed 362(b)(4) "to apply to the enforcement of state laws affecting health, welfare, morals and safety, but not to 'regulatory laws that directly conflict with *842 the control of the *res* or property by the bankruptcy court.' " *In re Cash Currency Exch., Inc.*, 762 F.2d 542, 555 (7th Cir. 1985) (citation omitted). Although the Seventh Circuit has not directly addressed whether a debtor's incarceration for civil contempt reflects the use of a government's "police and regulatory power," it has endorsed two tests for determining "whether a state's actions fall within the scope of § 362(b)(4)—the pecuniary purpose test and the public policy test." *In re Fulton*, 926 F.3d 916, 929 (7th Cir. 2019), *cert. granted sub. nom. City of Chicago v. Fulton*, ––– U.S. ––––, 140 S. Ct. 680, 205 L.Ed.2d 449 (Dec. 18, 2019).[6] "The pecuniary purpose test requires the court to 'look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to the debtor's estate.' " *Id.* (citation omitted). If the government's acts are directed to health and safety concerns, § 362(b)(4) applies; if "the focus of the police power is directed at the debtor's financial obligations," however, the exception does not apply. *See id.* at 930 (citation omitted). "Alternatively, the public policy test considers whether the state action is principally to effectuate public policy or to adjudicate private rights." *Id.* The former meets the test, whereas the latter does not. *See id.*; *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385–86 (6th Cir. 2001). "Satisfying either test is sufficient for the [§ 362(b)(4)] exception to apply." *Fulton*, 926 F.3d at 929.

The Court must therefore determine the nature and purpose of Erhardt's incarceration under either test. In making this determination, the Court is guided by the Illinois Appellate Court's opinion, which held that the state court's contempt finding constituted a finding of civil contempt. *Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶ 39, 432 Ill.Dec. 282, 129 N.E.3d 170. The appellate court found that the state court's actions "were remedial and for [Ms. Baldassarre's] benefit" and were imposed with the dominant purpose of securing Erhardt's compliance with the state court's prior orders. *Id.* ¶¶ 29, 30. The contempt orders were not, on the other hand, "a punitive effort to vindicate the authority of the court." *Id.* ¶ 30. Although the appellate court did not address the later-issued June 5 Contempt Order, the state court issued this order in accordance with the appellate court's instructions on remand, *see id.* ¶ 39, and there is nothing to indicate that this order meaningfully differs from the contempt orders the appellate court addressed in its opinion. The Court sees no reason to deviate from the appellate court's holding and findings with respect to the contempt proceedings at issue, which are governed by Illinois law.[7] *843 *See Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) ("[S]tate courts are the authoritative expositors of their own state's laws."); *MacDonald v. Estate of Gayton*, 469 F.3d 1079, 1081–82 n.1 (7th Cir. 2006) (following an Illinois appellate court decision that addressed the same issue raised on appeal and noting that "we defer to an Illinois court's interpretation of state law").

[14] In light of the appellate court's opinion, the Court concludes that the state court's civil contempt findings and Erhardt's accompanying incarceration do not satisfy the pecuniary purpose test. As an initial matter, the test may not even apply because the state court is not a traditional creditor seeking to recover a debt owed to it by Erhardt, which is "the type of conduct that the pecuniary [purpose] test exists to prohibit." *In re Emerald Casino, Inc.*, No. 03-CV-05457, 2003 WL 23147946, at *9 (N.D. Ill. Dec. 24, 2003); *see In re FirstEnergy Sols. Corp.*, 945 F.3d 431, 447 (6th Cir. 2019) (finding that the pecuniary purpose test did not apply because the party taking action against the debtor had no pecuniary interest). But even if the test applies, it is not met because the state court did not hold Erhardt in contempt and order him to jail because of health or safety concerns. *See Fulton*, 926 F.3d at 930. Rather, the court did so as a means of coercing Erhardt to turn over certain personal property to Ms. Baldassarre's estate. Furthermore, to the extent any of this property is later determined to be part of Erhardt's bankruptcy estate, Erhardt's compliance with the state court's orders would potentially hamper his creditors' ability to recover from the estate during the bankruptcy process.[8] *Cf. Fulton*, 926 F.3d at 930 (finding that the city's actions were focused on the debtors' financial obligation because they would give the city "an advantage over other parties interested in the debtors' estates").

[15] The Court likewise finds that Erhardt's incarceration for civil contempt fails to pass the public policy test. The state court's civil contempt proceedings were not intended to effectuate some sort of public policy interest, such as the deterrence of litigation misconduct. *See, e.g., In re Dingley*, 852 F.3d 1143, 1147–48 (9th Cir. 2017) (finding that civil contempt proceedings "intended to effectuate the court's public policy interest in deterring litigation misconduct" were

exempt from the automatic stay under § 362(b)(4)). Instead, the state court's actions were primarily intended to adjudicate and enforce Ms. Baldassarre's private rights in the underlying guardianship proceedings. *See Fulton*, 926 F.3d at 930. As the Illinois Appellate Court explained, the state court's actions "were remedial and for [Ms. Baldassarre's] benefit." *844 *Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶ 30, 432 Ill.Dec. 282, 129 N.E.3d 170; *see also People ex rel. Chi. Bar Ass'n v. Barasch*, 21 Ill. 2d 407, 409, 173 N.E.2d 417 (1961) ("[C]ivil contempts are those prosecuted to enforce the *rights of private parties* and to compel obedience to orders or decrees for the *benefit of opposing parties*." (emphases added)).

Baldassarre contends otherwise by repeatedly asserting that the state court issued the June 5 Contempt Order to "uphold the dignity" of the court. Doc. 13 at 8, 17, 20, 25. Upholding the court's dignity is, of course, an important public policy. *See Kotowski v. Kotowski*, 3 Ill. App. 3d 231, 234, 278 N.E.2d 856 (1971) (recognizing "the vital need to uphold the dignity of the court"). But Baldassarre does not cite any aspect of the record showing that the state court issued the June 5 Contempt Order for this reason. To the contrary, the Illinois Appellate Court expressly found that the state court's contempt orders "were *not* a punitive effort to vindicate the authority of the court." *Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶ 30, 432 Ill.Dec. 282, 129 N.E.3d 170 (emphasis added). If the state court had been acting primarily to uphold its dignity, the appellate court likely would have found the contempt finding to constitute criminal contempt, which it did not do. *See id.* ¶ 27 ("[C]riminal contempt is an act committed against the majesty of the law in disrespect of the court or its process, and the court acts to preserve its dignity by punishing the wrongdoer." (citation omitted)); *Barasch*, 21 Ill. 2d at 409, 173 N.E.2d 417 (criminal contempt proceedings are "those directed to preservation of the dignity and authority of the court").

Baldassarre further points out that the June 5 Contempt Order requires Erhardt, if he returns the items at issue, to provide an inventory of these items to both Baldassarre and the state court. But this requirement does not in any way suggest that the state court issued the June 5 Contempt Order to reaffirm the court's dignity. Nor does it indicate that the purpose of the court's actions was no longer to coerce compliance for the benefit of Ms. Baldassarre's estate. At best, the inventory requirement simply provided a way for the state court to better monitor whether Erhardt has provided all the necessary items to Baldassarre.

Baldassarre also argues that the Seventh Circuit's decision in *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993), compels affirmance of the bankruptcy court's order. The Court disagrees. In *Alpern*, the plaintiff appealed an order requiring him to pay attorneys' fees as a sanction under Federal Rule of Civil Procedure 11 for filing a frivolous lawsuit. *Id.* at 689. While the appeal was pending, the plaintiff filed for bankruptcy and then sought to invoke the automatic stay to stay the appeal. *Id.* The Seventh Circuit rejected the plaintiff's attempt on the basis "that a proceeding to impose sanctions under Rule 11 is exempt from the automatic stay" under § 362(b)(4). *Id.* at 690. The *Alpern* court reasoned that although Rule 11 sanctions are typically sought by a non-governmental litigant, the litigant "can be viewed as an agent of the 'governmental unit,' " the federal court. *Id.* The court then imposes the sanctions to punish unprofessional behavior and conduct in litigation. *Id.* The *Alpern* court concluded its analysis with the following observations:

> A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or *845 individuals teetering on the edge of the bankruptcy abyss.

*Id.*

[16] The Rule 11 sanctions *Alpern* found to be encompassed by § 362(b)(4), however, substantively differ from the state court's civil contempt orders here. "A civil contempt order has much different purposes than a Rule 11 sanction." *Willy v. Coastal Corp.*, 503 U.S. 131, 138–39, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). Rule 11 is designed to deter litigation misconduct and punish parties who have already engaged in misconduct. *Id.* at 139, 112 S.Ct. 1076; *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004). Pursuing these goals through Rule 11 sanctions reflects the exercise of a court's regulatory power. *See In re Commerce Oil Co.*, 847 F.2d 291, 296 (6th Cir. 1988) ("Punishing wrongdoers[ and] deterring illegal activity...are exercises of the state's regulatory power to effectuate public policy and are not actions based upon the state's property interests."); *Benalcazar*, 283 B.R. at 533 (punishing and deterring frivolous pleadings "can reasonably be seen as the pursuit of a regulatory governmental interest"). In fact, the Seventh Circuit has recognized that *Alpern*'s holding regarding § 362(b)(4) was based on the "regulatory" component of the sanctions at issue. *See In re Maurice*, 73 F.3d 124, 128 (7th Cir. 1995). In contrast, the motivation for

the state court's June 5 Contempt Order and related contempt findings was not punishment, deterrence, or some other broad regulatory interest. It was "to force the contemnor to comply with an order of the court" for the benefit of Ms. Baldassarre, a private party. *Willy*, 503 U.S. at 139, 112 S.Ct. 1076; *Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶¶ 27, 29, 30, 432 Ill.Dec. 282, 129 N.E.3d 170. Based on these substantive differences between the Rule 11 sanctions in *Alpern* and the state court's civil contempt actions here, *Alpern* does not require the application of § 362(b)(4).[9]

To be sure, the Court recognizes that holding § 362(b)(4) inapplicable to civil contempt proceedings like those at issue here may incentivize civil contemnors to use bankruptcy as a means to avoid (or at least delay) atoning for their contempt. *Cf. Alpern*, 11 F.3d at 690 ("A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy."). But however undesirable this result, it is the one compelled by a proper § 362(b)(4) analysis in these circumstances, especially considering the narrow construction that courts are to give § 362(b)(4) and the other subsection (b) exceptions. *See Fulton*, 926 F.3d at 927, 929; *see also Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003) ("[T]he judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior."). Moreover, the Court notes that there may be other grounds upon which a bankruptcy court can lift the automatic stay when a debtor attempts to use bankruptcy for no other reason than to avoid complying with a civil contempt order. *See, e.g.*, 11 U.S.C. § 362(d)(1) (bankruptcy court may terminate *846 the automatic stay "for cause"); 3 Collier on Bankruptcy ¶ 362.07[3][a] (16th ed. 2020) ("[R]elief might be granted [from the stay] when the court finds that the debtor commenced the case in bad faith."); *see also In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013) (identifying the debtor's "good or bad faith" as a factor in determining whether cause exists to lift or modify the automatic stay).

In sum, Erhardt's ongoing jail sentence as part of the state court's civil contempt proceedings does not satisfy either the pecuniary purpose test or the public policy test, and it is not governed by *Alpern*. Therefore, the Court must conclude that the bankruptcy court legally erred in determining that Erhardt's continuing incarceration falls within the scope of § 362(b)(4).

### III. Remaining Issues

Two issues remain. First, Erhardt seeks an award of sanctions under 11 U.S.C. § 362(k) for Baldassarre's willful refusal to cease and desist from enforcing the state court's contempt order. The Court denies this request. Erhardt did not make any substantive arguments on appeal regarding his entitlement to sanctions under § 362(k), so he has forfeited any request for this relief as part of his appeal. *See, e.g., Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."); *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854–55 (7th Cir. 1998) (refusing "to consider unsupported or cursory arguments"). In addition, because the bankruptcy court determined that the automatic stay did not apply, it did not have occasion to consider this issue in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule...that a federal appellate court does not consider an issue not passed upon below.").

Second, Erhardt asks the Court to instruct the bankruptcy court to direct Baldassarre to "take all steps necessary to secure the immediate release of [Erhardt] from incarceration." Doc. 11 at 24. The Court denies this request as well. The Court leaves it to the bankruptcy court to decide what actions it should take on remand given the Court's ruling that Erhardt's incarceration does not fall within 11 U.S.C. § 362(b)(4).

### CONCLUSION

For the foregoing reasons, the Court vacates the bankruptcy court's December 19, 2019 order denying Erhardt's motion to enforce and to show cause and remands the case to the bankruptcy court for proceedings in accordance with this opinion.

**All Citations**

618 B.R. 832

---

Footnotes

1   The Court denies Erhardt's request for oral argument because the parties' briefs and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the Court.

| | |
|---|---|
| 2 | The Court takes many of the underlying facts from the Illinois Appellate Court's opinion in *In re Estate of Baldassarre*, 2018 IL App (2d) 170996, 432 Ill.Dec. 282, 129 N.E.3d 170. For ease of reading, the Court generally will not quote or cite to the opinion in reciting these facts. |
| 3 | The characterization of contempt as "indirect" refers to the fact that the "alleged contemptuous conduct occurs outside the direct presence of a judge." *Windy City Limousine Co. v. Milazzo*, 2018 IL App (1st) 162827, ¶ 40, 428 Ill.Dec. 740, 123 N.E.3d 469. |
| 4 | Erhardt referred to 11 U.S.C. § 362(h) as providing relief for a willful violation of the automatic stay, but § 362(h) was re-designated as § 362(k)(1) in 2005. *In re Johnson*, 575 F.3d 1079, 1081 n.2 (10th Cir. 2009); *In re Glenn*, 359 B.R. 200, 202 n.2 (Bankr. N.D. Ill. 2006). |
| 5 | A request for a show-cause finding does not actually ask for a contempt finding; it only seeks "an order requiring the nonmovant to show the court by a certain date why the court should not" make such a finding. *See S.E.C. v. Hyatt*, 621 F.3d 687, 695–96 (7th Cir. 2010). Nonetheless, "a district court may treat a show-cause motion as a motion for an order on the merits of the alleged contempt where doing so would not cause prejudice—that is, when it would not violate the alleged contemner's right to notice and an opportunity to be heard." *Id.* at 696. Here, Baldassarre had the opportunity to argue before the bankruptcy court why he did not violate the automatic stay, and he prevailed on that argument. Treating Erhardt's show-cause request as a request for a contempt finding therefore does not prejudice Baldassarre. Moreover, Erhardt's requests for damages and an order requiring Baldassarre to pay $5,000 per day to purge his contempt make clear that Erhardt sought much more than just a preliminary show-cause finding. He wanted a finding of contempt and the relief that accompanied that finding. |
| 6 | Because the City of Chicago's petition for certiorari did not seek review of the Seventh Circuit's rulings regarding § 362(b)(4), the Court does not expect the Supreme Court's resolution of the case to affect the Seventh Circuit's § 362(b)(4) analysis in *Fulton*. *See* Pet. for Cert., No. 19-357, at 14–15 n.6, *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-357.html (Sept. 17, 2019 filing). |
| 7 | Throughout his briefing, Erhardt points out that the appellate court's opinion is the "law of the case" in the underlying state court case. True enough, but the "law of the case" doctrine does not apply to Erhardt's bankruptcy case, which is not the same case as the state court case. *People v. Bannister*, 378 Ill. App. 3d 19, 37, 316 Ill.Dec. 871, 880 N.E.2d 607 (2007) ("The law of the case doctrine bars relitigation of an issue already decided in the same case....Because the defendant's direct appeal and the postconviction proceedings are not the same case, the doctrine of law of the case does not apply here."). The appellate court's findings could be preclusive under theories of issue preclusion or judicial estoppel, but the Court does not consider these theories because Erhardt did not raise them until his reply. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."); *CSX v. Pac. Rail*, No. 07 CV 2738, 2010 WL 4736313, at *3 (N.D. Ill. Nov. 15, 2010) (explaining that "arguments raised for the first time in a reply brief are forfeited" because it denies the opposing party "any opportunity to address the issue"). In any event, because the Court finds it appropriate to defer to the appellate court's findings, it need not determine whether they are, in fact, binding or preclusive. |
| 8 | The Court is not suggesting that any of the personal property at issue should be part of the bankruptcy estate; that is for the bankruptcy court to decide. But Erhardt's briefing indicates his belief that he jointly owns at least some of the property. *E.g.*, Doc. 6-2 at 19 (asserting before the bankruptcy court that he jointly owned all or most of his non-exempt assets with Ms. Baldassarre, "including almost all personalty"); Doc. 15 at 5 (asserting on appeal that the items of property at issue are "largely" owned by Ms. Baldassarre and her estate). It is therefore possible that Erhardt's turnover of the property at issue could deplete his bankruptcy estate. |
| 9 | Baldassarre suggests that *Alpern* has broader application because in *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165 (7th Cir. 1997), the Seventh Circuit cited *Alpern* to support the following statement: "[u]se of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment." *Id.* at 166. But *Alpern* did not address a situation where the district court used its contempt power, so the Court reads *Cleveland Hair* as citing *Alpern* only to support the latter part of the quoted statement—that a sanction for misconduct is not an ordinary money |

judgment. This proposition does not bear on the lack of similarity between the nature and purpose of the Rule 11 sanctions addressed by *Alpern* and the civil contempt actions here.

---

End of Document                                             © 2023 Thomson Reuters. No claim to original U.S. Government Works.