Form G-3.1 (20230922)

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re: FRANK MARTIN PARIS, JR.,     )   Chapter
                                    )
                                    )   No.  23-16481
                                    )
         Debtor(s)                  )   Judge David D. Cleary

### NOTICE OF EMERGENCY MOTION

TO:  See attached list

        PLEASE TAKE NOTICE that on December 13, 2023 , at ___9:30AM___, I will appear
before the Honorable David D. Cleary ___, or any judge sitting in that judge's place, **either**
in courtroom  648  of the Everett McKinley Dirksen United States Courthouse___,
219 S. Dearborn Street, Chicago, IL 60604 ___, **or** electronically as described below, and
present the motion of Kerry Paris_____ [to/for]
Order Clarifying That the Automatic Stay Does Not Apply_____, a copy of which is attached.

**Important:  Only parties and their counsel may appear for presentment of the motion
electronically using Zoom for Government.  All others must appear in person.**

**To appear by Zoom using the internet**, go to this link:  https://www.zoomgov.com/.
Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252
or 1-646-828-7666.  Then enter the meeting ID and passcode.

**Meeting ID and passcode.**  The meeting ID is __161 122 6457__, and the passcode is
__Cleary644__.  The meeting ID and passcode can also be found on the judge's page on the
court's web site.

        In addition to other grounds for opposing the motion, you may oppose the motion on the
basis that emergency treatment is not appropriate.

                                        By: /s/ Carolina Y. Sales (ARDC #6287277)
                                        ROBBINS DIMONTE, LTD.
                                        180 N. LaSalle St., Suite 3300
                                        Chicago, Illinois 60601
                                        Tel: (312) 456-0372

**Please note:** This form may be used only after the court grants the movant's application under Local Rule 9013-2.

## CERTIFICATE OF SERVICE

I, Carolina Y. Sales, certify that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on December 11, 2023, at 4:00PM.


/s/ Carolina Y. Sales
_____

Steven R. Jakubowski (ARDC #6191960)
Carolina Y. Sales (ARDC #6287277)
ROBBINS DIMONTE, LTD.
180 N. LaSalle St., Suite 3300
Chicago, Illinois 60601
Tel: (312) 456-0372
sjakubowski@robbinsdimonte.com
csales@robbinsdimonte.com

## SERVICE LIST

Via Telephone:

Scott Clar, Attorney for Debtor
312-641-6777

Ira Bodenstein, Chapter 7 Trustee
(312) 474-1647

Spencer Ezell, Attorney for U.S. Trustee
(312) 886-5785

Via ECF and Email:

Ira Bodenstein
iratrustee@cozen.com, IL29@ecfcbis.com

Scott R Clar on behalf of Debtor 1 Frank Martin Paris, Jr
sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com

Thomas C Cronin on behalf of Creditor Kerry Paris
tcc@cronincoltd.com

Sean B Crotty on behalf of Creditor Kerry Paris
scrotty@crottylaw.com, dmueller@colemanlawfirm.com;docket@crottylaw.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Elizabeth E Richert on behalf of Creditor Kerry Paris
erichert@crottylaw.com, docket@crottylaw.com;dmueller@crottylaw.com

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-BK-16481 |
| | ) | |
| FRANK MARTIN PARIS, JR., | ) | Chapter 7 |
| | ) | |
| Debtor | ) | Hon. David D. Cleary |

**EMERGENCY MOTION OF KERRY PARIS FOR ORDER
CLARIFYING THAT THE AUTOMATIC STAY DOES NOT APPLY OR,
IN THE ALTERNATIVE, TO LIFT THE AUTOMATIC STAY *NUNC PRO TUNC*,
AND AUTHORIZING FILING OF MOTION IN EXCESS OF 15 PAGES**

This Emergency Motion asks the Court to enter an Order clarifying that the automatic stay does not apply to the Circuit Court of Cook County Domestic Relations Division's ("Divorce Court") enforcement of the Judgment for Dissolution of Marriage entered on December 2, 2022, and subsequent court orders providing for maintenance, child support and attorneys' fees and costs for the well-being of the Debtor's ex-wife, Kerry Paris, and the Debtor's seven (7) children. If the Court determines that the automatic stay does apply to some portion of the judgment or support orders, Kerry asks the Court to lift the stay *nunc pro tunc*. In addition, pursuant to Bankr. N.D. Ill. L.R. 9090-3(F), Kerry requests authority to file this Motion in excess of 15 pages. In support of such relief, Kerry states as follows:

### STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C.§§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157.

### BACKGROUND FACTS

Kerry and the Debtor were married on August 10, 2002. There were seven (7) children born to the marriage. Kerry has been a stay-at-home mother for the last 20 years. The Debtor is a real estate developer who concentrates on the development (or re-development) and construction

of residential condominium and rental buildings in Chicago, including 1325 N. Wells, 301 W.

North Ave., 146 W. Erie, 1454-64 S. Michigan Ave, 828 W. Grace, 3216 N. Racine, 2049 N.

Sheffield, 1927 N. Sedgwick, 1933 N. Sedgwick, 3114 N. Southport, 1611 Hermitage, and 1857

W. Dickens. (Ex. A at 18-57 and B at 5-8]).

The Debtor carries on his business through a number of entities, none of which have filed

bankruptcy. These entities can be broken down into four (4) categories: investment holding

companies, real estate holding companies, operating companies, and management companies. (Ex.

B at 5-8). The Entities include Conor DE II, Inc., Conor Management, LLC, Martin NV II, Inc.,

Maeve, LLC, Maeve Manager, Inc., MK Manager Corp., 828 W. Grace, LLC, 1454 Michigan,

LLC, Sedgwick Investments, LLC, 2049 N. Sheffield, LLC, 55th and Kedzie Investments, LLC,

Erie LaSalle Venture, LLC, Alpha Carpentry, LLC, Alpha Construction Services, LLC, Alpha

Drywall Services, LLC, Alpha Property Services, LLC, Sedgwick Properties Holding Corp., and

Sedgwick Realty Corp. *Id.* Further, Maeve, LLC is segmented into 38 separate series lettered

Series A through Series LL. (*Id.*, at 21-4). The Maeve Series Investments are comprised of

investments in cash and marketable securities accounts (*e.g.*, Jeffries and CIBC brokerage

accounts), investments in companies holding real estate companies (*e.g.*, 1933 Sedgwick, LLC,

SP/RPA 1325 Holdings, LLC, 1454 S. Michigan LLC, etc.), direct investments in real property

and investments in operating companies (*e.g.*, Alpha Construction Services, LLC). (Ex. B at 62-

8). As explained below, the Divorce Court has found the net value of Maeve, LLC to be in excess

of $20 million and the Debtor has represented to his lending institutions that the net value is even

higher. (Ex. A at 58, 68-69).

Of particular relevance to this Motion, the Debtor does not directly own any interest in

Maeve, LLC or its individual series. Rather, the Frank Martin Paris, Jr. Revocable Trust (the "FMP

Trust"), of which the Debtor is the Trustee and sole beneficiary, holds a 1% equity interest in Maeve, LLC. (Ex. A at 54-6; Ex. B at 61-68). The remaining 99% is held through a series of other holding companies starting with Jack Enterprises L.P. and ending with Martin NV II, Inc. The intermediate holding companies follow the similar pattern of a 1% equity interest being held by the FMP Trust and 99% being held by another holding company. *Id.* For example, Jack Enterprises, L.P. is owned 1% by the FMP Trust and 99% by Conor Management, LLC. The last "umbrella" holding company in the line is Martin NV II, Inc., which is owned 86.5% by the FMP Trust and 13.5% by a trust for the benefit of the Paris children.

Although the Debtor does not directly own Maeve, LLC or its underlying assets, he controls its distributions and has included the net value of these assets on the personal financial statements he submits to his lenders. For example, the last six years of sworn personal financial statements received by Kerry in the divorce action list the following assets, net worth and income totals (Ex. A at 68; Ex. C):

| Year | Assets | Personal Net Worth | Income |
|------|--------|--------------------|--------|
| 2019 | $25,414,617 | $18,746,617 | $1,244,500 |
| 2018 | $27,039,035 | $21,391,035 | $1,339,500 |
| 2017 | $25,094,780 | $19,926,780 | $1,574,500 |
| 2016 | $27,342,385 | $22,617,286 | $1,740,000 |
| 2015 | $26,893,834 | $22,896,814 | $2,185,000 |
| 2014 | $24,395,752 | $20,115,752 | $1,377,000 |

Further, in January 2022, in connection with a loan application for a proposed development, the Debtor represented to Beverly Bank/Wintrust that he had "liquidity of $9.5MM, assets of $34.9MM and a net worth of $28.3MM." (Ex. D at 16). The Debtor's $28.3 million net worth was broken down as follows:

|  |  |  |  |  |  | ($000's) |
|---|---|---|---|---|---|---|
| **Marty Paris Assets Held:** | | Personally | | | | |
| **Assets** | [1] | **6/19/2019** | | **Liabilities** | | **6/19/2019** |
| Cash | [2] | 9,525 | | RE - Mortgage Residence | | 1,373 |
| Marketable Securities | | - | | HELOC-Residence | | - |
| Partnerships/LLC Interests | [3] | 23,428 | | RE - Mortgage Investment | | - |
| RE - Residence | | 1,400 | | Notes Payable to Others | | 4,650 |
| RE - Investment Value | | - | | Notes Payable (Car Loans) | | 10 |
| Cash Value of Life Insurance | | - | | Taxes Payable | | 635 |
| Retirement Assets | | 587 | | **Total Liabilities** | | **$6,668** |
| Other Personal Property | | - | | **Net Worth** | | **28,272** |
| Other Assets | | - | | **Adjusted Net Worth** | | **$4,257** |
| **Total Assets** | | **$34,940** | | **Contingent Liabilities:** | [4] | **$ 44,415,300** |

The entities holding the $9.5 million in cash and marketable securities were explained as follows:

[2] The $9.5MM in total liquidity is held in various entities as detailed below. The Maeve Series LLCs are all operating entities, so liquidity moves between the entities in the normal course of business. Since they are all ultimately owned and controlled by Martin NV II, INC the Sponsor uses that entity to capture the benefit of the total liquidity and net worth. Maeve is a series LLC set up to provide the benefit of liability protection between the series but still allowing for the controlling interest holder to have access to all the liquidity in the event it is needed.

| Entity | Liquidity (Cash & Marketable Securities) | Held At |
|---|---|---|
| Maeve, LLC - Series A | $5,023,823 | Jefferies |
| Maeve, LLC - Series A | $902,179 | Private Bank |
| Maeve, LLC - Series DD | $1,336,636 | Jefferies |
| Misc. Entities | $1,587,000 | Charles Schwab |
| Sedgwick related entities | $10,000 | Republic Bank, Private Bank, etc. |
| Misc. Property operating accounts | $665,000 | Various |
| Total: | $9,524,638 | |

The value of the Debtor's $23.4 million in Partnership/LLC Interests were broken down as follows

(*Id.* at 20-21):

### APPENDIX C: BREAKDOWN OF MR. PARIS' PARTNERSHIPS/LLC INTERESTS

| Entity | Ownership | Interest | Value |
|---|---|---|---|
| Sedgwick Properties Holdings, Corp. | Marty Paris | 1% Common Stock | $28,134 |
| Sedgwick Properties Holdings, Corp. | Frank Martin Paris, Jr. Revocable Trust | 99% Common Stock | $2,785,303 |
| Maeve, LLC - Series A | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $59,260 |
| Maeve, LLC - Series B | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $1,000 |
| Maeve, LLC - Series C | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $1,940 |
| Maeve, LLC - Series D | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $225 |
| Maeve, LLC - Series E | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $1,525 |
| Maeve, LLC - Series F | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $495 |
| Maeve, LLC - Series G | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $73,898 |
| Maeve, LLC - Series H | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $0 |
| Maeve, LLC - Series I | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $99 |
| Maeve, LLC - Series J | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $6,679 |
| Maeve, LLC - Series K | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $911 |
| Maeve, LLC - Series L | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $8,940 |
| Maeve, LLC - Series M | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $6,248 |
| Maeve, LLC - Series N | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $860 |

| Maeve, LLC - Series O | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $0 |
| Maeve, LLC - Series P | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $1,925 |
| Maeve, LLC - Series Q | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $150 |
| Maeve, LLC - Series R | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $1,650 |
| Maeve, LLC - Series S | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $150 |
| Maeve, LLC - Series T | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $3,350 |
| Maeve, LLC - Series U | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $7 |
| Maeve, LLC - Series V | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $898 |
| Maeve, LLC - Series W | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $990 |
| Maeve, LLC - Series X | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $4,500 |
| Maeve, LLC - Series Y | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $113 |
| Maeve, LLC - Series Z | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $14,430 |
| Maeve, LLC - Series AA | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $134 |
| Maeve, LLC - Series BB | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $19 |
| Maeve, LLC - Series CC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $27,021 |
| Maeve, LLC - Series DD | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $14,026 |
| Maeve, LLC - Series EE | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $7,611 |

| | | | |
|---|---|---|---|
| Maeve, LLC - Series FF | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $21,480 |
| Maeve, LLC - Series GG | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $33,809 |
| Maeve, LLC - Series HH | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $36,794 |
| Maeve, LLC - Series II | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $0 |
| Maeve, LLC - Series JJ | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $9,293 |
| Conor DE II, Inc. | Frank Martin Paris, Jr. Revocable Trust | 33% Common A Voting Stock | $110,107 |
| Conor Management, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $333,656 |
| Martin NV II, Inc. | Frank Martin Paris, Jr. Revocable Trust | 1% Common A Voting Stock | $330,320 |
| Martin NV II, Inc. | Frank Martin Paris, Jr. Revocable Trust | 89.009% Common B Non-Voting Stock | $19,404,945 |
| 828 W. Grace, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Class A Membership Interest | $1,959 |
| Alpha Carpentry, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $500 |
| 1454 S. Michigan, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Class A Membership Interest | $74,644 |
| Sedgwick Investments, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $100 |
| 2049 N. Sheffield, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $920 |
| 55th and S. Kedzie Investments, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Class A Membership Interest | $908 |
| Alpha Property Services, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $1,000 |
| 1611 N. Hermitage, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Class A Membership Interest | $114 |

| Alpha Construction Services, LLC | Frank Martin Paris, Jr. Revocable Trust | 1% Membership Interest | $14,576 |
|---|---|---|---|
| | | **Total:** | **$23,427,617** |

### DIVORCE COURT PROCEEDINGS

On May 17, 2016, Kerry filed for divorce in the Circuit Court of Cook County, Illinois – *In re Marriage of Paris*, Case No, 16 D 004685. On December 2, 2022, the Divorce Court entered its Judgment for Dissolution of Marriage (the "Judgment"). (Ex. A). As set forth in the Judgment, the appellate court opinions, and the Divorce Court docket, the past 7+ years have been marked by the Debtor's repeated refusal to obey the Divorce Court's orders and, in particular, any order that requires him to pay Kerry maintenance or child support.[1] As a result, the Debtor was adjudicated in contempt on February 28, 2018, February 1, 2021, October 4, 2021, April 22, 2022, June 6, 2022, July 20, 2022, July 29, 2022, November 18, 2022, November 23, 2022, January 6, 2023, September 29, 2023, October 17, 2023 and November 15, 2023. (Ex. E through S; *Paris I*, 164 N.E.3d 41 (2020). He has been incarcerated three times in order to coerce his compliance with the Divorce Court's orders. *Id*. The Debtor's willful non-compliance with support orders has caused tremendous hardship on Kerry and the parties' seven children. See e.g., *Paris III*, 2021 IL App (1st) 210828-U at ¶¶30-2 (The Debtor "had allowed the home to remain in a constant state of construction and disrepair, with exposed rusty nails, black mold, ripped up floors, exposed outlets, and animals nesting in the ceiling. He did not pay for any of the complained-of home defects, but told the children several times that he would fix the home quickly once he knew he would have possession of the home. [. . . ] Multiple utilities, including internet, telephone, water and heat were shut off on multiple occasions due to [the Debtor's] failures.").

---

[1] *Paris I*, 2020 IL App (1st) 181116, 164 N.E.3d 41 (2020).

Around this time last year, Kerry and the children were left without running water and other utilities due to the Debtor's refusal to pay support. (Ex. O and P). Then, as now, the Debtor claimed that he did not have the ability to pay for support, maintenance or the basic necessities for Kerry and the children to live. Then, as now, he offered no evidence of his inability to pay, and he was adjudicated to be in indirect civil contempt of court. *Id*. Then, as now, a body attachment order was entered because the Debtor refused to purge his contempt. (Ex. M). Then, as now, the Debtor skipped his mandatory court appearances and evaded law enforcement in order to prolong his non-compliance and the hardship he caused Kerry and the children. The Debtor was apprehended in mid-January 2023. (Ex. T). He posted $500,000 in cash in less than a week to secure his release from jail. (Ex. U).

The Debtor's ability to pay $500,000 in less than a week came as a surprise to no one. While the Debtor was evading authorities, the Divorce Court issued its Judgment. (Ex. A). Relying on hundreds of exhibits, the testimony and reports of two real estate appraisers and a business valuation expert, and the financial statements the Debtor himself submitted to his lenders, the Divorce Court found that the Debtor's non-marital net worth alone was in excess of $20 million. (Ex. A at 58, 68-9). Further, the Divorce Court found that – contrary to his repeated assertions – the Debtor "controls his own salary" and "controls issuance of dividends and interest in the various entities in which he holds financial interests vis-à-vis Sedgwick, Maeve, Martin NV II, Inc., etc." (Ex. A, at 69). The Judgment also found that the Debtor's testimony regarding his income was "not credible, was evasive, and unreliable." (*Id.* at 70).

The Judgment awarded the Debtor almost all of the parties' assets, finding that the various entities that comprise the Debtor's businesses were non-marital property. (Ex. A). Kerry was awarded the totality of a 401(k) retirement account, free and clear of any claim of interest by the

Debtor (the "Retirement Account"), the parties' interest in 828 W. Grace St., Unit 402 and P-37, free and clear of any further claim of interest by the Debtor (the "828 Grace Condo"), the parties' interest in 1464 S. Michigan Unit 1605 and P-48, free and clear of any further claim of interest by the Debtor (the "1464 S. Michigan Condo"), a 50% interest in the marital residence at 711 Park Ave. in River Forest, and a 50% interest in the marital residence side lot ("703 Park Ave."). (Ex. A at 76-78; Ex. V). The Debtor was not an owner of the 828 Grace Condo, 1464 S. Michigan Condo or 703 Park at the time of Judgment or today. Rather, those assets had been transferred into Maeve LLC. The 828 Grace Condo is titled in the name of two land trusts of which Maeve LLC, Series P and Q are the beneficial owners, the 1464 S. Michigan Condo is titled in the name of two land trusts in which Maeve LLC, Series R and S are the beneficial owners, and 703 Park is titled in the name of Maeve LLC, Series U. (Ex. B at 65). The Retirement Account is part of the Sedwick Properties 401K Plan Dtd 06/23/2006 FBO F Paris, of which the Debtor is the trustee. Although the Debtor is not the named owner of these assets, the Divorce Court found that the Debtor nonetheless controls Maeve LLC and can cause the assets to be transferred. (Ex. A at 69, 71, 76-8; Ex. V). The Judgment also obligates the Debtor to pay Kerry $5,500 per month in maintenance and $7,500 in child support, due on the first day of each month. (Ex. A at 97-8). He is also obligated to pay the mortgage, real estate taxes, and homeowners' insurance on 703 Park and 711 Park each month as part of his child support obligation. *Id.*

Notwithstanding the terms of the Judgment, the Debtor has not paid ***any*** maintenance or child support for more than ten (10) months and has not transferred, or caused to be transferred, any of the assets awarded to Kerry in the Judgment. (Ex. E, H and J). As a result of the Debtor's failure to pay child support or maintenance, the trustee of a 503(g) Trust has been compelled to advance said funds so that Kerry and the Paris children did not suffer undue hardship.

The trust was established by the Judgment, which provides:

> That as evidenced by the extraordinary number of Petitions for Rule and findings of non-compliance and/or contempt against MARTY for his failures to pay timely child support, the costs of the children's activities, tuition, utilities and other expenses related to the family home and the children's well-being, the court does find that it is necessary to protect the interests of the Paris children by imposing a Section 503(g) trust to be funded by MARTY to secure such payments. (Ex. A at p. 99).

However, the advancement of funds from the 503(g) Trust did not alleviate the Debtor from his obligation to follow the terms of the Judgment. To the contrary, the Judgment is clear that the 503(g) Trust is only to act as "security," a point the Divorce Court made clear in subsequent court orders. (Ex. H, J and V). Yet, the Debtor refused to make his maintenance and support payments to Kerry or to reimburse the 503(g) Trust despite being ordered to do so.[2] *Id.*

Further, the Judgment provides that the Debtor is obligated to maintain a $2.5 million life insurance policy and provide a copy of the same to Kerry and the Child Representative within thirty (30) days. (Ex. A at p. 100). As the Debtor ignored Kerry's requests to provide her proof that he obtained such a policy, the Divorce Court entered an Order on May 5, 2023 providing that:

> Marty Paris shall tender copies of his life insurance policies, which shall include a $2.5 million policy with Kerry Paris as the primary beneficiary, to Kerry's counsel and the Child Representative no later than June 5, 2023. (Ex. W).

The Debtor did not comply with May 5th Order.

Accordingly, on August 11, 2023, Kerry filed Petitioner's Petition for Adjudication of Indirect Civil Contempt and for Other Relief (Failure to Pay June, July, August Maintenance and Child Support, Failure to Reimburse 503(g) Trust, Failure to Provide Life Insurance). On August 15, 2023, the Divorce Court entered an order requiring the Debtor to file a response to Kerry's

---

[2] The 503(g) Trust was funded with $150,000 out of the cash bond the Debtor posted to get out of jail in January. It is now nearly empty due to the Debtor's failure to pay support.

Petition no later than September 12, 2023. (Ex. X). The Order further provided: "The Petition is set for hearing and/or ruling on September 29, 2023 at 11:00 a.m. via Zoom. Should the Court issue the Rule, it shall be issued *instanter* and the Court will proceed to a contempt hearing at that time." *Id*.

The Debtor did not file any response in opposition to Kerry's Petition by September 12 or anytime thereafter. (Ex. J). On September 29, 2023, the parties appeared in Court and confirmed the verified allegations of Kerry's Petition – *i.e.* the Debtor had not paid the overdue maintenance and support, reimbursed the 503(g) Trust or tendered a $2.5 million life insurance policy. Accordingly, the Divorce Court issued the rule to show cause *instanter*. (Ex. J and K). The Debtor chose not to present any evidence to rebut the presumption created by the issuance of the rule to show cause against him. He did not produce any bank statements, financial statements or appraisals, and he did not offer any testimony in his defense. Accordingly, the Divorce Court adjudicated the Debtor to be in indirect civil contempt of court and ordered him to purge his contempt by paying $100,000 to the 503(g) Trust and tendering a $2.5 million life insurance policy to Kerry and the Child Representative by October 16, 2023. *Id.*

The same day, the Court adjudicated the Debtor to be in indirect civil contempt of court for his failure to pay various fee orders, including the contribution award for Kerry's attorneys' fees under 750 ILCS 5/508 and 750 ILCS 5/503(j). *Id.* On May 18, 2023, the Divorce Court had entered an order requiring the Debtor to pay $935,000 to Kerry's attorneys by paying the sum of $100,000 per month for a period of nine months beginning on June 1, 2023 and a final payment of $35,000 on March 1, 2024. (Ex. Y). The order found that "the contribution award is in the nature of child support and maintenance within the meaning of 11 U.S.C. §523(a)(5). Not only are the funds necessary for Kerry and the children's financial support, but a significant portion of the fees

were incurred to establish and enforce Marty's child support and maintenance obligations." *Id.* As the Debtor had not paid any the May 18, 2023, fee award, the Divorce Court entered an Order on Rule to Show Cause against the Debtor on August 15, 2023 and ordered the Debtor to file a response to the Rule. (Ex. J). The Debtor did not file any response, as ordered, and failed to appear at the contempt hearing, as ordered. *Id*. On September 29, 2023, the Debtor was ordered to purge his contempt by paying the full amount owed. *Id.*

The Debtor was ordered to appear in person on October 17, 2023 for status on his purge and to attend another contempt hearing regarding his failure to pay Kerry's expert fees as previously ordered. (Ex. J and K). The Debtor did not pay any money to the 503(g) Trust and did not tender the life insurance policy. The Debtor also failed to appear in court on October 17th, as ordered. (Ex. G and H).

On October 17th, Marty's counsel appeared via Zoom but offered no excuse or justification for the Debtor's failure to appear in court as ordered. *Id.* The Divorce Court proceeded to the previously scheduled contempt hearing. The Debtor did not appear, and his counsel did not present any evidence at the hearing on his behalf. *Id.* The Debtor again was adjudicated to be in indirect civil contempt of court and the Divorce Court entered a Body Attachment Order.[3] *Id.* The matter was set over to October 30, 2023, for further status and presentment of a petition to adjudicate the Debtor in contempt of court for his refusal to fund the Children's Activities Trust Account – a trust account established by the Allocation Judgment to be "held by the children's attorney and shall be used to pay for children's activities as set forth herein including, but not limited to, all fees for participation, uniforms, and equipment." This time, neither the Debtor nor his counsel appeared.

---

[3] On October 26, 2023, the Debtor filed a Notice of Appeal. Shortly thereafter, he moved for a stay pending appeal. The Appellate Court denied his motion. (Ex. Z).

The Divorce Court entered another Rule to Show Cause and ordered the Debtor to file a written response no later than November 13, 2023 and to appear in court in person on November 15, 2023.

The Debtor did not file any response and failed to appear in Court as ordered on November 15th. (Ex. E and F). The Court adjudicated the Debtor to be in indirect civil contempt of court again – this time for failing to fund the children's activity account – and granted Kerry's previously filed motion to increase the size of the 503(g) Trust. *Id.* The Court's order provides, in part:

> The Court finds that Respondent's continued non-compliance with the support obligations placed upon him by the Judgment and Allocation Judgment necessitates an increase in the amount of the 503(g) Trust established by the Judgment in order to protect and promote the interest of the Paris children. (Ex. F).

The Debtor was ordered to pay $1,185,722 to the 503(g) Trust no later than December 7, 2023. (Ex. E). The Divorce Court also ordered that the existing Body Attachment Order be updated to reflect the additional $15,000 purge amount to fund the Children's Activities Trust Account. *Id.*

Each of the November 15th, October 17th and September 29th orders adjudicating the Debtor in indirect civil contempt of court contains a factual finding that the Debtor has the means to comply with the Court's orders and relies, in part, upon the factual findings that (i) the Debtor controls the issuance of dividends and interests in Maeve LLC and Martin NV II, Inc.; (2) the Debtor controls his own salary; and (3) the Debtor has sufficient income and resources to pay the child support and maintenance contained in the Judgment. (Ex. E ¶¶ 22-24, Ex. H ¶¶ 20-22, and Ex. J ¶¶ 31-33).

On November 16, 2023, Kerry's counsel sent the Debtor's counsel quit claim deeds and a transfer letter to effectuate the transfer of the 828 Grace Condo, 1464 S. Michigan Condo, 703 Park Ave. and the Retirement Account as required by the Judgment.[4] (Ex. AA). As the Debtor

---

[4] On November 15, 2023, the Divorce Court denied the Debtor's Motion for Reconsideration thereby making the Judgment final. (Ex. EE).

would not execute any of the documents or otherwise effectuate the transfers, Kerry's counsel filed a Motion to Enforce the Judgment on December 4, 2023, while continuing to request the Debtor's counsel to have his client transfer the assets. (Ex. BB ¶¶ 1-2). Debtor's counsel stated that his client had no objection to transferring the retirement account, but he would not return the executed transfer letter. *Id.* ¶ 3. With respect to the condominiums and 703 Park, the Debtor's counsel maintained that his client did not have the authority to transfer those assets – even though the Judgment and previous Divorce Court orders had already held that he did have such authority. *Id.* ¶ 4.

Sometime on the evening of December 7, 2023, the Debtor was arrested on the outstanding Body Attachment Order. *Id.* ¶ 5. Similar to his January 2023 incarceration, he had managed to avoid arrest for almost two months by switching cars, not sleeping at home, and avoiding his office. *Id.* ¶ 6. On the morning of Friday, December 8, 2023, Kerry's divorce counsel received a call and a follow-up email from the Cook County Sheriff informing him that the Debtor would appear before the Divorce Court momentarily and requesting that he join the hearing by Zoom. *Id.* ¶ 7. Although the outstanding purge amounts totaled in excess of $1.6 million, the Divorce Court indicated a willingness to release the Debtor on a lower bond amount if he transferred the assets awarded to Kerry in the Judgment. *Id.* ¶ 8. The Debtor's divorce attorney stated that the Debtor would transfer the retirement account but had no authority to transfer the other assets. *Id.* ¶ 9. The Divorce Court disagreed. *Id.* At that point, the Debtor's divorce attorney stated that he needed a short break to confer with his client. Shortly after the hearing continued, Scott Clar joined the Debtor's divorce attorney on Zoom and stated that the Debtor shortly would be filing for bankruptcy protection. *Id.* ¶¶ 10-11. The Divorce Court noted that the Debtor had not filed for bankruptcy protection yet and that the Divorce Court was ordering the Debtor remanded until he

transferred the assets awarded to Kerry in the Judgment to Kerry and paid $500,000 to the 503(g)

Trust. *Id*. ¶ 12. The Debtor's divorce counsel continued to argue that the Debtor had no authority

to transfer the assets awarded to Kerry and, a few minutes later, Mr. Clar rejoined the conversation

and stated that the Debtor had just filed Chapter 7. *Id*. ¶ 13.

At that point, the Debtor's divorce counsel told the Divorce Court that it had "lost

jurisdiction" and could not enter any orders affecting the Debtor. *Id*. ¶ 14. Kerry's divorce counsel

read the provisions of 11 U.S.C. §362(b)(2)(A)(ii) and (iv) allowing for the continuation of

proceedings for the establishment of an order for domestic support obligations and 11 U.S.C.

§ 362(b)(2)(B) allowing for the collection of a domestic support obligation so long as it is not from

the property of the estate. He also referenced the holding of *In re Posner*, 610 B.R. 586 (2019) that

a final judgment awarding a debtor's ex-spouse property removes that property form a debtor's

estate. *Id*. ¶ 15. The Debtor's divorce counsel continued to argue that the divorce case was stayed

and that the Divorce Court lost jurisdiction. *Id*. ¶ 16. The Divorce Court ruled that the case was

not stayed, nor was the stay applicable to its order so long as Kerry was not seeking to collect

against assets of the Debtor's estate. (*Id*. ¶17; Ex. DD). The Order provides, in relevant part:

> Respondents' counsel advised the Court that, during the pendency of today's
> hearing, a bankruptcy petition was filed on Mr. Paris' behalf, Case Number 23-
> 16481. The Court has not been provided a copy of the Petition. However, as
> reflected in the Court's holding in *In re Posner*, 610 B.R. 586 (ILNB2019), assets
> awarded to Kerry in the Judgment are not part of any bankruptcy estate and not
> subject to any automatic stay. Further, pursuant to 11 U.S.C. Section 362(b)(2), the
> filing of a petition for bankruptcy does not stay a divorce proceeding, the
> establishment or modification of a domestic support obligation, or the collection of
> a domestic support obligation from property that is not property of the estate. If
> Respondent or his counsel believe that this Order violates the automatic stay in any
> respect, they shall provide the Court and Petitioner's counsel with a copy of the
> bankruptcy filings and an appropriate motion for relief. (Ex. DD)

Accordingly, the Divorce Court ordered that the Debtor "remains remanded/committed in

the Cook County Jail, there to remain until he shall have purged himself by (i) producing the life

insurance policies, (ii) transferring the assets awarded to Kerry in the Judgment, and (iii) paying $500,000 to the 503(g) Trust for child support and maintenance."[5] (Ex. CC and DD).

On December 9, 2023, Kerry's counsel received a letter from the Debtor's bankruptcy counsel stating that the automatic stay was violated and Kerry and her counsel could face "sanctions." (Ex. BB ¶ 20; Ex. EE). Shortly thereafter, Kerry's counsel responded by seeking information that would allow her to reasonably consider the Debtor's position. (Ex. BB ¶ 21; Ex. FF). Kerry's counsel acknowledged that the Divorce Court's order "recognizes that collection efforts relating to Marty's overdue support obligations cannot be maintained against his bankruptcy estate and, on its face, does not require Marty to access his bankruptcy estate in order to comply with the order." *Id*. The letter goes on to ask whether the Debtor claims any of the assets awarded to Kerry are part of his bankruptcy estate, and whether Maeve LLC or any of the assets of Maeve LLC – which would be used to satisfy the domestic support obligation – are assets of the Debtor's bankruptcy estate. *Id.* Those questions went unanswered. (Ex. BB ¶ 22).

On a telephone call between counsel on December 10, 2023, the Debtor's counsel again raised the possibility of sanctions. *Id*. ¶ 23. Kerry's counsel stated that Kerry would not take any action that violated the automatic stay and, if the Debtor is claiming that any of the assets to be transferred under the Judgment or Maeve LLC are part of the Debtor's estate, Kerry would likely join in some kind of motion with the Debtor. *Id*. ¶¶ 23-24. When asked point blank if any of those assets are part of the Debtor's bankruptcy estate, the Debtor's counsel stated that they could not answer that question. *Id*.

---

[5] As of the time of this filing, Kerry's counsel has received back the file stamped Remand/Commitment Order By Order of Court provided to the Sheriff's Office (Ex. CC) but not the Order from Friday reflecting the Divorce Court's ruling on the inapplicability of the stay. However, the Order was submitted to the case coordinator for entry without objection from the Debtor's divorce counsel that it accurately reflected the court's oral ruling. (Ex. DD).

**ARGUMENT**

The Debtor is a wealthy serial contemnor who has steadfastly refused to comply with any child support, maintenance or other domestic support order for the past seven years. His skeletal bankruptcy filing – which came in the middle of a hearing remanding him to Cook County jail for the third time for refusing to follow the Divorce Court's orders – is an abuse of the bankruptcy process designed to continue the torture he has inflicted on his ex-wife and seven children.[6] Although Marty's entire real estate development business is worth more than $20 million, the Debtor simply refuses to turn over to Kerry the relatively minor assets she was awarded in the Judgment and cannot bring himself to pay her ***any*** child support or maintenance. Indeed, when adjudicated in contempt of court in January 2023 (on the heels of the Judgment), the Debtor defiantly told the Divorce Court that "having seven (7) children does not 'entitle' Mrs. Paris to be paid funds from him." (Ex. N ¶ 3). The Debtor only paid his support back then when he was arrested after evading law enforcement for two months. Nothing has changed. The only chance the Debtor will pay his domestic support obligations or transfer the assets awarded to Kerry is if he is coerced to do so through the ongoing contempt proceedings in the Divorce Court. Any stay of those proceedings will result in untold harm to Kerry and the Paris children.

This Motion seeks relief that is explicitly authorized by the Bankruptcy Code, and specifically Bankruptcy Code section 362(b)(2)(B), which provides that the commencement of a bankruptcy case "does not operate as a stay . . . of the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. §362(b)(2)(B). This express statutory

---

[6] The Debtor's chapter 7 petition itself appears to have been filed in bad faith in violation of 11 U.S.C. § 707(a). Kerry intends to file a separate motion to dismiss the petition on that basis.

provision applies here and was the basis for the Divorce Court's ruling that the automatic stay does not apply. The Debtor organized his businesses so that he controls – but does not own – the valuable condominiums, apartment buildings, and brokerage accounts that he has acquired. In placing these assets beyond the reach of his creditors, he has also excluded them from his bankruptcy estate and from the protections of the automatic stay.

As noted above, the Debtor has no interest in the assets awarded to Kerry in the Judgment. These assets became her property through the Judgment, free and clear of any interest of Marty. They are not part of his estate and, as such, the automatic stay does not prevent the Divorce Court from utilizing its contempt powers to coerce the Debtor's compliance with the Judgment. Accordingly, Kerry asks the Court to determine that the automatic stay does not apply or, in the alternative, to lift the automatic stay *nunc pro tunc* to allow her to enforce her rights and permit enforcement of the Divorce Court's Contempt Orders.

Finally, even assuming the automatic stay were to apply, "cause" exists within the meaning of Bankruptcy Code section 362(d) to lift the stay to free the Divorce Court to apply its contempt powers to coerce the Debtor's compliance with the Judgment. Further, such relief should be granted retroactively in accordance with equitable principles. *In re Brittwood Creek, LLC*, 450 B.R. 769, 774-75 (N.D. Ill. 2011) (holding Section 362(d) permits bankruptcy courts to grant retroactive relief from the automatic stay).

## A.    THE CONTEMPT PROCEEDINGS DID NOT VIOLATE THE STAY.

The Divorce Court was acting within its authority by (i) determining that the automatic stay did not apply to the proceeding before it; and (ii) exercising its authority to enter an order that consistent with the requirements of the automatic stay. While bankruptcy courts have core jurisdiction to terminate, annul, or modify the automatic stay pursuant to 28 U.S.C. § 157(b)(2)(G), state courts have concurrent jurisdiction to determine whether the automatic stay applies to

proceedings before them. *In re Welsch,* 602 B.R. 682, 684–85 (Bankr. N.D. Ill. 2019) ("Though only a bankruptcy court can modify the stay, a state court can decide whether the stay applies to the proceeding before it and whether a motion in the bankruptcy court is really necessary"). Indeed, courts "*encourage*[] state court judges hearing domestic relations cases to make these determinations precisely because the stay affects so few of the proceedings before them." *Id*. at 685 (emphasis added). Here, the Divorce Court correctly held that its Contempt Order was not entered in violation of the automatic stay.

1.   **THE CONTEMPT PROCEEDINGS ARE EXEMPT FROM THE STAY PURSUANT TO SECTION 362(B)(2)(B).**

Under Section 362(b)(2) the filing of a bankruptcy petition does not operate as a stay "of the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2). The definition of "domestic support obligation" is found under 11 U.S.C. § 101(14A) and means

> a debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is—(A) owed to or recoverable by—(i) a . . . former spouse . . .; (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such . . . former spouse, or child of the debtor . . . without regard to whether such debt is expressly so designated; (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—(i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (D) not assigned to a nongovernmental entity . . . ."

It is incontrovertible that the Divorce Court's Judgment for Dissolution of Marriage entered on December 2, 2022 creates debts for the Debtor for the support of Kerry, his former spouse, and their children, which have not been assigned to a nongovernmental entity, and therefore are "domestic support obligations" within the meaning of Section 362(b)(2). It is equally incontrovertible that the Orders of Adjudication of Indirect Civil Contempt and Order of

Commitment entered by the Divorce Court on September 29, 2023, October 17, 2023, and November 15, 2023, and the Order on the status of the purge of contempt entered by the Divorce Court on December 8, 2023 ("Remand Order" and collectively, the "Contempt Orders") were proceedings to collect those domestic support obligations. Since the contempt proceedings were directed at assets that are not part of Marty's chapter 7 bankruptcy estate, those proceedings by definition are exempt from the automatic stay.

### 2.   THE PROPERTY AT ISSUE IN THE CONTEMPT ORDERS IS NOT PROPERTY OF THE ESTATE

A bankruptcy filing creates an estate that includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). What constitutes "property of the estate" under Section 541 is a question of federal law, but state law generally creates and defines the nature of the property interests at issue. *In re Dordevic*, 67 F.4th 372, 378 (7th Cir. 2023). Here, the Contempt Orders compel the Debtor to (i) transfer the assets awarded to Kerry in the Judgment; (ii) produce certain life insurance policies naming Kerry as a beneficiary; and (iii) pay $500,000 to the 503(g) Trust for child support and maintenance. (Remand Order ¶ 2). Significantly, none of these assets are property of Marty's chapter 7 bankruptcy estate.

### i.   Assets transferred to Kerry in the Judgment are not part of the Debtor's bankruptcy estate.

The property Kerry received through the Judgment is unquestionably not part of Marty's chapter 7 bankruptcy estate. *In re Posner*, 610 B.R. 586, 590-1 (Bankr. N.D. Ill. 2019) (property awarded to the debtor's ex-spouse prior to the filing of the bankruptcy petition is not part of the debtor's estate). Under Illinois law, ownership of the property identified in the Judgment vested in Kerry on December 2, 2022, the date the Divorce Court issued the divorce decree. *Id*. Illinois law provides that each spouse has a "species of common ownership" in marital property which vests when either spouse files for divorce. 750 ILCS 5/503(e). This common ownership interest becomes

a full ownership interest for the property the divorce court distributes to a spouse when the court

enters the order of distribution or final judgment. *Posner*, 610 B.R. at 590 (*citing In re Dziełak*,

435 B.R. 538, 547 (Bankr. N.D. Ill. 2010)). Assets that are directed by a divorce decree in favor

of the non-debtor spouse are not property of the estate. *In re Thorpe*, 881 F.3d 536, 540 (7th Cir.

2018); *see also* 1 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 2.01 [5] (2019)

("It is generally acknowledged that once the divorce decree becomes final the property interests

awarded are vested pursuant to the decree."). The fact that the Debtor has refused to turnover

Kerry's property does not transform the Debtor's interest (or non-interest) in that property. Those

interests were fixed by the Judgment, and the bankruptcy filing does not "expand the debtor's rights

against others more than they exist at the commencement of the bankruptcy case." *Thorpe*, 881

F.3d at 542 (*quoting Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984)).

*Posner* is on point here. In *Posner*, the debtor failed to transfer property awarded by order

of the divorce court to his non-debtor spouse and instead filed a chapter 11 bankruptcy petition

four days before his scheduled appearance on contempt charges.[7] The *Posner* court held that the

debtor lacked an interest in assets that had been ordered by the divorce court to be transferred to

his non-debtor ex-spouse in the divorce decree and that the debtor's bankruptcy filing was in bad

faith for purposes of avoiding enforcement of the divorce judgment. *Posner*, 680 B.R. at 590-591.

       **ii.**      **The insurance policies and $500,000 due the 503(g) Trust are domestic support obligations sought from post-petition income and are not estate property.**

The order that the Debtor produce life insurance policies and pay $500,000 to the 503(g)

Trust for child support and maintenance likewise does not involve any assets of the Debtor's

chapter 7 bankruptcy estate. As described above, the Debtor planted the seed of his own undoing

---

[7] *See* Motion of Lisa Posner for Relief from the Automatic Stay, Case No. 19-07338, [ECF No. 43] at 7, July 29, 2019 (Bankr. N.D. Ill.).

in this case by creating a complex ownership structure designed to shield his lucrative various development ventures from creditors (and his ex-wife). By so doing, however, his bankruptcy estate is virtually empty, and the only creditors he lists in his petition are Kerry and her and Marty's divorce lawyers. And except for the marital residence at 711 Park Avenue in River Forest, Illinois, there are no bank or brokerage accounts or real estate holdings of any significance in the Debtor's chapter 7 estate. Rather, Marty is 1% beneficial owner of a revocable trust that has partial ownership interests in various holding companies, all of which Marty continues to exercise complete control over without any oversight from this Court since the assets valued at over $20 million have been placed by Marty in the various Maeve LLC Series subsidiaries of multiple levels of holding companies below owned by Marty's revocable trust. The Debtor had no direct ownership in any of these assets as of the bankruptcy filing, and so none of these assets are part of Marty's chapter 7 bankruptcy estate. Further, the Divorce Court found that Marty exercises complete control over Maeve LLC and its assets and so could be ordered to pay himself a salary or otherwise make distributions to himself as necessary to comply with his obligations under the Judgment.

Significantly, each of the November 15th, October 17th, and September 29th Contempt Orders incorporates the findings from the Judgment that the Debtor exercise complete control over these non-debtor, third-party assets held in subsidiaries of the revocable trust. Each specifically provides that (i) the Debtor controls the issuance of dividends and interests in Maeve LLC and Martin NV II, Inc.; (2) the Debtor controls his own salary; and (3) the Debtor has sufficient income and resources to pay the child support and maintenance contained in the Judgment. (Ex. E ¶¶ 22-24, Ex. H ¶¶ 20-22, and Ex. J ¶¶ 31-33). Moreover, each of the Contempt Orders contains a finding that the Debtor does presently have the ability to purge the Contempt Order by simply issuing

distributions to Kerry from the more than ample liquid funds buried in Maeve LLC, a company ironically named after his own daughter.

As for the Remand Order, which actually lowers the cash bond amount from $1.6 million to $500,000, this order must be read in conjunction with the factual finding of the Contempt Orders that the Debtor can pay the from these third-party assets. Indeed, the Remand Order specifically states that "pursuant to 11 U.S.C. Section 362(b)(2), the filing of a petition for bankruptcy does not stay a divorce proceeding, the establishment or modification of a domestic support obligation, or the collection of a domestic support obligation *from property that is not property of the estate*." (Remand Order ¶ 3).

Moreover, any distributions, dividends, or salary to satisfy the requirements of the Contempt Order necessarily involve assets that are not property of the estate. "In a chapter 7 case, the debtor's post-petition income and assets generally are not property of the estate. The stay therefore will not bar domestic relations proceedings attempting to collect on domestic support obligations from post-petition income of the chapter 7 debtor." *In re Welch*, 602 B.R. 682, 684 (Bankr. N.D. Ill. 2019). Here, the Debtor has not put Maeve LLC, Martin NV II, Inc., or any of the other holding or investment companies that are subsidiaries of the revocable trust into bankruptcy. Nor can the Debtor claim that any of those companies, or the assets they hold, are part of the chapter 7 bankruptcy estate. Thus, any of the distributions, dividends, or salary that the Debtor distributes to himself post-petition from Maeve, LLC, Martin NV II, Inc., or any of the other holding companies as a result of the Divorce Court's enforcement proceedings will be post-petition income and asset distributions that are not subject to the protections of the automatic stay.

### 3. CONTEMPT PROCEEDINGS SEEKING NON-ESTATE ASSETS UNDER 362(B)(2)(B) DO NOT VIOLATE THE STAY.

Having found that the contempt proceedings were exempt from the stay under Bankruptcy Code section 362(b)(2)(B), entry of the Divorce Court's Contempt Order—including the order of incarceration—necessarily did not violate the stay. Indeed, the weight of authority is that the automatic stay does not prohibit the use of any collection remedies, including contempt and incarceration, to satisfy a domestic support obligation from non-estate property. *See, e.g., In re Foufas,* 650 B.R. 732, 737-41 (Bankr. S.D. Fla. 2023) (holding ex-spouse did not violate the automatic stay in facilitating the debtor's incarceration while seeking to collect a domestic support obligation from the assets of a trust that the debtor had previously denied were property of the estate); *In re Bezoza*, 271 B.R. 46, 51 (Bankr. S.D.N.Y. 2002) (holding debtor's continued imprisonment for civil contempt did not violate the automatic stay where his confinement was intended to coerce him to pay support-related debts from non-estate assets); *In re Moon*, 211 B.R. 483 (S.D.N.Y. 1997) (reversing the bankruptcy court's order directing ex-spouse to release the Debtor from incarceration pursuant to a contempt order as a violation of the stay).

*Foufas*, the most recent decision in this area, is especially instructive. *Foufas* involved a contempt proceeding filed in the Circuit Court of Cook County, Illinois. *Foufas*, 650 B.R. at 734-736. As here, the debtor in *Foufas*, a man named "Plato," transferred his assets to a trust to avoid paying maintenance sums to "Teddy," his ex-wife, thereby forcing her to file multiple motions finding him in contempt. *Id.* The Illinois court found that Plato's transfer of assets to the trust was fraudulent and done to avoid paying maintenance. *Id.* During contempt proceedings in 2016, Plato claimed he was insolvent and could not pay overdue maintenance despite having reported over $16 million in income on his 2016 tax return. *Id.* The court directed that Plato be incarcerated until he purged himself of the contempt. *Id.*

While the court's body attachment order was pending, but before Plato was arrested, he filed a chapter 7 petition in the Southern District of Florida, West Palm Beach Division, after which he was arrested. *Id.* at 735. He immediately moved for relief from the Illinois court, arguing that the automatic stay prohibited the enforcement of the body attachment order. *Id.* In response, Teddy cited to the Bankruptcy Code section 362(b)(2)(B) exception in support of her argument that that she was only seeking to recover from the trust, not the chapter 7 estate, and so the automatic stay was inapplicable since her debt was a domestic support obligation. *Id.* The Illinois Court denied Plato's motion for release from the contempt order of incarceration. And while the order itself did not explicitly address the automatic stay, the issue was briefed before the divorce court, which, the appellate court held, "could not have denied Plato's motion unless it had determined that enforcement of the Body Attachment Order did not violate the automatic stay." *Id*. Notably, in his bankruptcy schedules, Plato claimed to hold only a beneficial interest in the trust that he claimed had no value. *Id.* at 735-36. When the chapter 7 trustee sought turnover of the assets of the trust, Plato stated in response that neither the trust nor its assets were property of the bankruptcy estate. *Id.*

Following his release from incarceration, Plato filed an adversary seeking damages and punitive damages against Teddy for violation of the automatic stay. *Id.* The bankruptcy court held that judicial estoppel prohibited Plato from asserting that the assets of the trust were property of the estate, which was "fatal" to his claims that Teddy violated the automatic stay and granted Teddy summary judgment. *Id*. at 741.

Similarly, here, the Debtor has been flouting the Divorce Court's orders to avoid making payments to Kerry while devising a complex asset protection scheme to shield his assets from her. Indeed, the Debtor argued that the Divorce Court (and any future bankruptcy court) had no

jurisdiction or authority over Maeve LLC or its assets and any orders requiring him to transfer

such assets were ineffectual. For example, with respect to 703 Park Ave, the Debtor argued:

> In 2012, Maeve LLC (an entity in which Marty maintains a non-marital interest) purchased the empty lot adjacent to 711 Parke Avenue. The lot was purchased using funds from Maeve Series A. In the event that *any court* were to order Marty to take any action with respect to this asset (of which Conor DE I is the General Partner), Frank Paris Sr.'s non-voting shares in Conor DE I would be converted into voting shares, thereby taking this asset out of Marty's control and placing it into Frank Paris Sr's control. As this Court does not have jurisdiction over the entity which owns the side lot, nor over Frank Paris, Sr., it does not possess the authority to order the sale of this property. (Ex. FF n.1, emphasis supplied).

The Debtor's "barebones" filing, devoid of schedules or other required disclosures, only adds to

the confusion by creating the false illusion that the Debtor should be protected from incarceration

because the Contempt Order implicates property of the estate, which it does not.

Additionally, although this Court has jurisdiction to determine applicability of the

automatic stay, the Court is required to give full faith and credit to the Contempt Orders and the

underlying factual findings that were necessary for entry of them. *See, e.g., In re Moon*, 211 B.R.

at 486 (finding that the bankruptcy court failed to give full faith and credit to the state court's

contempt order and factual findings that the debtor had the ability to pay the fee award—which

funds would be post-petition assets not protected by the chapter 7 filing—in holding the ex-spouse

violated the stay). Here, the Divorce Court specifically found that the Debtor has the ***present*** means

to comply with the Judgment, has sufficient income and/or resources to make provision for the

financial support and maintenance of Kerry and the Paris Children, and has the power to issue

distributions, dividends, and salary compensation to himself from Maeve LLC, Martin NV II, Inc.

and the other holding companies, none of which constitute assets of the Debtor's bankruptcy estate.

As in *Moon*, the Divorce Court's findings should be given full faith and credit here. The

contempt proceedings—which seek only to compel distributions of liquid assets either belonging

to Kerry or constituting post-petition income from entities whose assets are not property of the

estate—do not violate the automatic stay.

**B.**    **IN THE ALTERNATIVE, EVEN IF THE STAY APPLIES, IT SHOULD BE LIFTED *NUNC PRO TUNC* FOR CAUSE UNDER SECTION 362(D).**

Even were this Court to find that the automatic stay applies to the contempt proceedings,

there is ample cause to lift the stay retroactively pursuant to Bankruptcy Code section 362(d),

which states in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d).

A determination of cause is committed to the sound discretion of the bankruptcy court. *In re Briggs*, No. 12-BK-14853, 2012 WL 3780542, at *2 (Bankr. N.D. Ill. Aug. 31, 2012). However, when stay relief is requested under Section 362(d), it "should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court." *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir. 1992) (citing *In re White,* 851 F.2d 170, 173 (6th Cir.1988); *Bush v. Heimer (In re Heimer)*, 549 B.R. 881, 886 (Bankr. N.D. Ill. 2016) ("Relief from the stay is therefore generally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters, which are best left to State courts.").

Among the factors the court may consider as "cause" for relief under Section 362(d) is a debtor's good or bad faith in commencing the bankruptcy case." *Briggs* at *3 (*citing In re Milne*, 185 B.R. 280, 283 (N.D. Ill. 1995)). "A determination of bad faith involves a number of factors, any one of which may be persuasive." *Id*. (*citing In re Grieshop*, 63 B.R. 657, 662-63 (N.D. Ind.

1986)); *In re Kerns*, 111 B.R. 777 (S.D. Ind. 1990)). These factors include "that the debtor filed the bankruptcy petition solely to create the automatic stay." *Id*.

Here, the Debtor's bad faith is manifest from the above statement of facts. Indeed, the Divorce Court itself repeatedly described his conduct as "willful and contumacious." (Ex. E, H and J). For years, the Debtor has abandoned his legal responsibilities at every turn. Only when forced by the Divorce Court under threat of body attachment to do so would he pay lip service to performing his court-ordered domestic support obligations, none of which he disputed were due. In sum, this case is another sorry example of a debtor misusing the bankruptcy forum not to earn the "fresh start" deserving of the "honest but unfortunate debtor" (*Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)), but "as a weapon in an on-going battle between former spouses . . . [and] as a shield to avoid family obligations." *Carver*, 954 F.2d at 1578.

In *Posner*, the bankruptcy court found the debtor lacked good faith in filing bankruptcy when the debtor filed his petition four days before contempt proceedings were to commence. *Posner*, 680 B.R. at 591; *In re Walter Posner*, 19-07338, Docket #43 (Bankr. N.D. Ill. July 29, 2019). Here, the Debtor filed his bare bones petition in the middle of the Divorce Court's contempt hearing, nearly bragging that the filing would spring him not only from having to pay his domestic support obligations, but from being incarcerated until he did so from the plentiful non-debtor assets that he continues to control. This is a textbook bad faith filing and the Court should not reward his abuse of the bankruptcy system by imposing a stay on enforcement of the Contempt Orders through body attachment and incarceration.

The factors articulated in *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir. 1991), also favor stay relief even if the stay were to apply in this situation. The *Fernstrom* factors are whether (a) any great prejudice to either the bankruptcy estate or the debtor will result from

continuation of the civil suit, (b) the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship to the debtor, and (c) the creditor has a probability of prevailing on the merits. *Id*. at 735.

Here, neither the Debtor nor the bankruptcy estate will be prejudiced by lifting the stay. The bankruptcy estate has no interest in the property at issue. Further, the Divorce Court has already found that the Debtor has the means to pay the amounts owed and that his violations of his domestic support obligations are "willful and contumacious." (Ex. E, H, and J). In stark contrast, the hardship to Kerry and her children if the stay is maintained will be considerable. As noted in the Judgment and contribution orders, Kerry has been a stay-at-home mother for 20 years with no income or assets while raising seven children. Meanwhile, the Debtor doesn't even provide enough to cover Kerry's electric or water bills, much less provide Kerry and the Debtor's own children with the support the law requires of him. Clearly, then, to the extent the automatic stay applies here, "cause" exists to lift the automatic stay to enable the Divorce Court to continue the pending contempt proceedings, even if it means body attachment and continued incarceration of the Debtor until he complies with his domestic support obligations from assets that are not part of the bankruptcy estate and, because the Debtor is in chapter 7, are not necessary for an effective reorganization.

**WHEREFORE**, Kerry Paris requests the entry of an order (1) determining that the automatic stay does not apply to the contempt proceedings in the Divorce Court and to the Contempt Orders pursuant to 11 U.S.C. §362(b)(2)(B), or in the alternative modifying the automatic stay *nunc pro tunc* pursuant to 11 U.S.C. §362(d) to permit Kerry to take all actions necessary to enforce the Judgment of Dissolution, (2) granting Kerry Paris a waiver of the 14-day

stay provision of Bankruptcy Rule 4001(a)(3), (3) authorizing the filing of the Motion in excess

of 15 pages, and (3) providing such other and further relief as is just and proper.

Dated: December 11, 2023                    Respectfully submitted,

                                            **KERRY PARIS**

                                            By: /s/ Carolina Y. Sales
                                                    One of Her Attorneys

                                            Steven R. Jakubowski (ARDC #6191960)
                                            Carolina Y. Sales (ARDC #6287277)
                                            ROBBINS DIMONTE, LTD.
                                            180 N. LaSalle St., Suite 3300
                                            Chicago, Illinois 60601
                                            Tel: (312) 456-0372
                                            sjakubowski@robbinsdimonte.com
                                            csales@robbinsdimonte.com

                                            By: /s/ Thomas C. Cronin
                                                    One of Her Attorneys

                                            Thomas C. Cronin (ARDC No. 6204065)
                                            Cronin & Co., Ltd.
                                            120 North LaSalle Street
                                            20th Floor
                                            Chicago, IL 60602
                                            312.500.2100
                                            tcc@cronincoltd.com
                                            admin@cronincoltd.com

                                            By: /s/ Sean Crotty
                                                    One of Her Attorneys

                                            Sean Crotty (ARDC No. 6242730)
                                            Elizabeth Richert (ARDC No. 6275764)
                                            Crotty & Schiltz, LLC
                                            120 North LaSalle St., 20th Floor
                                            Chicago, IL 60602
                                            Tel. 312-606-8648
                                            Fax 312-444-1028
                                            E-Mail erichert@crottylaw.com