**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 16481 |
| | ) | |
| FRANK MARTIN PARIS, JR., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter came before the court on the emergency motion of Frank Martin Paris, Jr. ("Marty" or "Debtor") to enforce the automatic restraining provisions of section 362 of the Bankruptcy Code ("Motion to Enforce") and the emergency motion of Kerry Paris ("Kerry") for order clarifying that the automatic stay does not apply or, in the alternative, to lift the automatic stay *nunc pro tunc*, and authorizing filing of motion in excess of 15 pages ("Motion to Clarify"). For the reasons stated below, the court will deny the Motion to Enforce. The court will grant the Motion to Clarify in part, to the extent it requests a finding that the contempt proceedings are excepted from the automatic stay. The remainder of the Motion to Clarify is moot.

**JURISDICTION**

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. § 1409(a).

**BACKGROUND**

Kerry and Marty were married in 2002 and had seven children. Divorce proceedings began around 2016 and have been ongoing for nearly eight years.

The Circuit Court of Cook County ("State Court") entered a judgment for dissolution of marriage on December 2, 2022 ("JDOM"). In the JDOM, the State Court found that Marty controls his own salary as well as the issuance of dividends and interest in various entities in

which he holds financial interests.  *See* Motion to Clarify, Ex. A, p. 69.  It determined that the

marital estate consisted of two retirement accounts (one 401(k) and one IRA), Kerry and Marty's

interest in two condominiums, certain corporate entities, and real property in River Forest,

Illinois.  *Id.*, pp. 71-73.  Having made these findings and reviewed the factors required by Illinois

law, the State Court made the following awards to Kerry or for her benefit:

- The 401(k) account

- Both condominiums

- Temporary exclusive possession of the real property in River Forest, with Marty

  remaining responsible for the mortgage, real estate taxes and homeowners' insurance

- Monthly maintenance in the amount of $5,500 until the youngest child graduates

  from eighth grade, at which time Kerry will have a duty to seek employment

- Child support in the monthly amount of $7,500

- A section 503(g) trust funded by Marty in the initial amount of $150,000

- Payment of the balance due to the children's representative

- Life insurance on Marty in the amount of $2,500,000

- Marty must hold Kerry harmless from any federal or state income taxes that accrued

  to date

*Id.*, pp. 76-78; 97-100.  On Kerry's motion to clarify the JDOM, the State Court entered an order

holding, among other findings, that Marty remained solely obligated to pay uncovered medical

bills and maintenance of the marital home.  *See* Motion to Clarify, Ex. V.

Marty did not comply with the JDOM and other State Court orders.  In order to collect

the amounts awarded, Kerry sought the intervention of the State Court.  Marty was adjudicated

in contempt of court on several occasions. *See* Motion to Clarify, Exs. L, M, N, O, P, Q.  *See*

*also In re Marriage of Paris*, 2020 IL App (1st) 181116, ¶ 3 (affirming State Court orders holding Marty in indirect civil contempt and requiring him to contribute $550,000 for the interim fees and costs of Kerry's counsel and expert witness).

More recently, on September 29, 2023, the State Court entered an Order of Adjudication of Indirect Civil Contempt against Marty, and he was ordered to appear in person on October 17, 2023. *See* Motion to Clarify, Ex. J. When he failed to do so, and for willful failure to obey the court's judgment and orders, the State Court issued a Body Attachment Order. *See* Motion to Clarify, Ex. I.

The Cook County Sheriff eventually arrested Marty pursuant to the Body Attachment Order, and the State Court held a hearing on December 8, 2023, on the status of Marty's purge of contempt. At that hearing, the State Court judge found ("December 8 Order") that Marty had not:

--paid any money to purge his contempt, including overdue child support and
maintenance obligations;

--produced the life insurance policies to purge his contempt;

--executed or caused to be executed the paperwork required to document title of the
transferred assets previously awarded to Kerry; or

--funded the 503(g) trust to protect the interests of the Paris children.

The State Court ordered Marty remanded to the custody of the Sheriff of Cook County, stating that he would not be released until he produced his life insurance policies, transferred the assets awarded to Kerry in the judgment, and paid $500,000 to the 503(g) Trust. *See* Motion to Clarify, Exs. BB, CC, DD. Each of these were awards that Kerry sought to collect in furtherance of the JDOM.

3

In the December 8 Order, the State Court judge indicated that she had been advised that while the hearing before her was pending, Marty had filed a petition for relief under the Bankruptcy Code. She found, however, that pursuant to *In re Posner*, 610 B.R. 586 (Bankr. N.D. Ill. 2019), "assets awarded to Kerry in the Judgment are not part of any bankruptcy estate and not subject to any automatic stay. Further, pursuant to 11 U.S.C. Section 362(b)(2), the filing of a petition for bankruptcy does not stay a divorce proceeding, the establishment or modification of a domestic support obligation, or the collection of a domestic support obligation from property that is not property of the estate." *See* Motion to Clarify, Exs. BB and DD; Motion to Enforce, Ex. A.

Marty did in fact file a petition for relief under chapter 7 of the Bankruptcy Code on December 8, 2023. Shortly thereafter, Marty filed the Motion to Enforce in this court. Marty has since filed his schedules and Statement of Financial Affairs. A chapter 7 trustee has been appointed. The initial date of Marty's § 341 meeting of creditors was January 8, and the trustee adjourned the meeting to February 7, 2024.

**DISCUSSION**

### I. The Automatic Stay

Section 362 provides debtors an automatic stay of nearly all actions against them, allowing breathing room in which they may reorganize their affairs. *See Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) (the stay "permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy") (quotation omitted). The stay benefits creditors as well, replacing "an unfair race to the courthouse with an orderly liquidation procedure designed to treat all creditors equally." *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988).

4

**A.  Marty alleges a violation of the automatic stay**

In his Motion to Enforce, Marty asks the court to find that the December 8 Order is a violation of the automatic stay as set forth in 11 U.S.C. § 362(a)(1), and to void that order:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

Marty also asks the court to direct Kerry to take immediate action with respect to freeing him from incarceration, and to enter such sanctions as the court finds appropriate.  Section 362(k) provides the statutory basis for an award of damages when there is a willful violation of the automatic stay in an individual debtor's bankruptcy case: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k).

**B.  Exceptions to the automatic stay**

While the protection of the automatic stay is broad, it is not limitless.  *See In re Chellino,* No. 18BK25452, 2022 WL 1180621, at *5 (Bankr. N.D. Ill. Apr. 13, 2022) ("the automatic stay is not without limits or exceptions").  11 U.S.C. § 362(b) lists several exceptions to the automatic stay, including:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--

…

(2) under subsection (a)—

(A)     of the commencement or continuation of a civil action or proceeding—

(i)for the establishment of paternity;

(ii) for the establishment or modification of an order for domestic support obligations;

(iii) concerning child custody or visitation;

(iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or

(v) regarding domestic violence;

(B) of the collection of a domestic support obligation from property that is not property of the estate;

(C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;

(D) of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

(E) of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

(F) of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

(G) of the enforcement of a medical obligation, as specified under title IV of the Social Security Act[.]

The question before the court is whether Kerry's continued pursuit of the domestic support obligations Marty owes to her is excepted from the automatic stay under § 362(b)(2).

## II.     Marty's arguments cannot succeed, and the stay will not be enforced

### A. Possessory interests are shielded by the automatic stay

In his Motion to Enforce, Marty argues that the State Court mistakenly relied on *Posner*. He cites instead *In re Wright*, 183 B.R. 541, 545 (Bankr. C.D. Ill. 1995) ("[a] possessory interest

is sufficient to invoke the protection of the automatic stay").  This court does not disagree with

*Wright.*  But a statement that a possessory interest in property is shielded by the automatic stay is

only half the story.  We must also ask whether there is an applicable exception to the automatic

stay.

### B.  Kerry seeks to collect a prepetition debt

Next, Marty asserts that "Kerry's actions clearly seek to collect a pre-petition debt or

obligation."  Motion to Enforce, p. 6.  Again, the court does not disagree.  Kerry is trying to

collect domestic support obligations awarded to her well before Marty filed his petition for relief

under the Bankruptcy Code.  Her actions in seeking to collect what was awarded to her in the

JDOM appears to fall within the confines of § 362(a)(1) because they are "the commencement or

continuation … of a judicial, administrative, or other action or proceeding against the debtor that

was … commenced before the commencement of" Marty's bankruptcy case.  But again, Marty's

assertion misses the point.  The court's analysis must go further – were the alleged acts excepted

from the automatic stay?

### C.  Even if an action appears to be prohibited by § 362(a)(1), it may be excepted from the stay

Even if Kerry's actions and the December 8 Order seem to violate the stay at first glance,

the court must also consider whether there is an applicable *exception* to the automatic stay.

11 U.S.C. § 362(b)(2) is that exception.  The plain language of the Bankruptcy Code

excepts "collection of a domestic support obligation from property that is not property of the

estate" from the automatic stay.  Kerry asserts that the debts owed to her are domestic support

obligations.  The orders of contempt and of commitment were proceedings to collect those

domestic support obligations.  She further contends that none of the assets that are the subject of

the State Court contempt proceedings are property of Debtor's estate.  Therefore, the automatic

stay does not prevent the State Court from using its contempt powers to coerce the Debtor to comply with its judgment. For this proposition Kerry cites *In re Foufas*, 650 B.R. 732, 737-41 (Bankr. S.D. Fla. 2023), *In re Bezoza*, 271 B.R. 46, 51 (Bankr. S.D.N.Y. 2002) and *In re Moon*, 211 B.R. 483 (S.D.N.Y. 1997). The Debtor cites no persuasive authority overriding the plain language of the Bankruptcy Code.

### 1. Commentators' analysis of the exception

Two treatises have raised the question whether proceedings to *enforce* alimony or support orders may not be excepted from the automatic stay. *See* Collier Family Law and the Bankruptcy Code ¶ 5.03[3][b][iii] (footnote omitted) ("the absence of language in section 362(b) excepting the continuation of enforcement proceedings from the stay casts significant doubt on whether such proceedings are included in the exception to the automatic stay, even when they do not seek to collect from property of the estate"); Robert E. Ginsberg, Robert D. Martin & Catherine J. Furay, Ginsberg & Martin on Bankruptcy § 3.02[H] (Sixth Ed., 2023-3 Supp. 2021-2022) ("The stay does not stop the commencement or continuation of proceedings to establish or modify a domestic support obligation order, although proceedings to enforce such orders, such as pursuing a civil contempt for violating an alimony order, are conspicuously omitted from that exception and courts have held that such actions continue to be stayed.") (footnote omitted).[1]

In its discussion of the issue, Collier Family Law relies on the Supreme Court's *Davenport* decision. *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990). The *Davenport* decision determined whether, under an earlier version of the Bankruptcy Code, criminal restitution orders were claims dischargeable in chapter 13. Addressing the arguments presented, *Davenport* "accorded considerable significance to the precise wording of the

---

[1] In the interests of full disclosure, the undersigned served as a contributing editor to a prior edition of Ginsberg & Martin, although not for the cited section.

exceptions to the stay, contrasting the language authorizing 'commencement or continuation of a proceeding' in some exceptions with the language authorizing 'collection' in others."  Collier Family Law and the Bankruptcy Code ¶ 5.03[3][b][iii] (footnote omitted).  *Davenport* did not, however, distinguish "enforcement" from the broad range of efforts that constitute "collection."

In fact, a close reading of *Davenport* shows that the Court considered "enforcement" synonymous with "collection."  Without pointing to any specific exception in section 362 applicable to restitution but drawing upon the domestic support obligation exception, the United States (appearing as *amicus* in support of the petitioners) had argued that since the commencement or continuation of a criminal action was excepted from the stay, it should also be allowed to collect restitution obligations.  The Court summarized this argument as follows: "[I]t would be anomalous to construe the Code as eliminating a haven for criminal offenders under the automatic stay provision while granting them sanctuary from restitution obligations under Chapter 13." *Id.* at 560.

In the next paragraph, the Court exposed the weakness of that argument, and in so doing demonstrated that it considered collection and enforcement to be part of a broader whole:

> We find no inconsistency in these provisions. Section 362(b)(1) ensures that the automatic stay provision is not construed to bar federal or state prosecution of alleged criminal offenses. It is not an irrational or inconsistent policy choice to permit prosecution of criminal offenses during the pendency of a bankruptcy action and at the same time to preclude probation officials from ***enforcing*** restitution orders while a debtor seeks relief under Chapter 13. Congress could well have concluded that maintaining criminal prosecutions during bankruptcy proceedings is essential to the functioning of government but that, in the context of Chapter 13, a debtor's interest in full and complete release of his obligations outweighs society's interest in ***collecting or enforcing*** a restitution obligation outside the agreement reached in the Chapter 13 plan.

*Id.* at 560-61 (emphasis added).

Despite the suggestions in Collier Family Law and in Ginsberg & Martin that proceedings to enforce domestic support obligations might not be excepted from the automatic

9

stay, the court finds otherwise.  This court holds that the better reading of § 362(b)(2), which excepts "*collection* of a domestic support obligation from property that is not property of the estate" (emphasis added) from the automatic stay, includes *enforcement* of those domestic support obligations.  This is so even when enforcement leads to a civil contempt proceeding or an order of incarceration.

Judgment creditors are provided with tools to collect their claims – wage garnishments, replevins, supplementary proceedings (citations) and in Illinois the domestic relations statute provides a method of collection – contempt.  *See* 750 ILCS 5/505.  The Code specifically allows continuation of proceedings and collection of domestic support obligations.  To preclude the *enforcement* of those obligations while enabling their *collection* ignores the plain language of the Code and renders subsection (B) meaningless and ineffective.

### 2.  Legislative history supports the court's position

The court's reading of § 362(b)(2)(B) is supported by the legislative history, which demonstrates the drafters' intent to provide "a broad spectrum of special protections" to those claiming domestic support obligations.  H.R. Rep. No. 109-31(1), 16, *reprinted in* 2005 U.S.C.C.A.N. 88, 102.  Statements on the floor from various members of Congress compel the same conclusion.  *See* 151 Cong. Rec. 6457 (2005) (statement of Rep. Sensenbrenner) ("Of critical importance, the legislation prevents deadbeat parents from abusing the bankruptcy system to shirk their child support obligations. With respect to these reforms, the National Child Support Enforcement Association stated that S. 256 is 'crucial to the collection of child support during bankruptcy.'"); 151 Cong. Rec. 4349 (2005) (statement of Sen. Biden) ("[O]n the question of child support and alimony, there should be no dispute.  Because this bill strengthens the collection of alimony.  Period.").

10

Although the plain language of the Code is clear, the legislative history does not indicate a contrary result limiting the collection efforts of a creditor who is owed a domestic support obligation. In fact, the legislative history further supports acknowledgment of the statutory construction principle that a statute should be interpreted to provide meaning. If subsection (b)(2)(B) were interpreted to permit "collection" but not "enforcement," the statute would be left without any effect. This would "trigger the presumption against ineffectiveness—the idea that Congress presumably does not enact useless laws." *United States v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., concurring).

Instead, the court should prefer the "textually permissible interpretation that furthers rather than obstructs" the statute's purpose. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 4, at 63 (2012). Congress was clear in its intent to protect spouses and children to whom domestic support obligations are owed. If the statute were interpreted to allow collection but not enforcement of those obligations, it would stymie the purpose of the statute. Reading § 362(b)(2)(B) to allow enforcement, including contempt proceedings, "is not only a textually permissible interpretation, it is the better one." *United States v. Bryant*, 996 F.3d 1243, 1256 (11th Cir. 2021) (using the presumption against ineffectiveness as further support for its interpretation of the Sentencing Reform Act).

Finally, common sense must play a part. Congress specifically excepted from the stay the collection of domestic support obligations from property other than property of the estate. It defies logic to interpret this exception as carving out from the automatic stay only the voluntary payment of the obligation by a bankruptcy debtor.

11

### 3. Relevant case law addressing the exception

The conclusion that civil contempt proceedings to enforce a domestic support obligation are excepted from the automatic stay due to the operation of § 362(b)(2) has been accepted by some courts, although not all. *See In re Johnston*, 321 B.R. 262, 275-78 (D. Ariz. 2005) (plain meaning of the term "collection" includes active collection efforts; order in question violated the stay since it was not limited to non-estate property); *In re Angelo*, 480 B.R. 70 (Bankr. D. Mass. 2012) ("collection" is a broad term that encompasses continuation of a proceeding for the purpose of collecting, including enforcement by contempt process). *But see In re Dougherty-Kelsay*, 636 B.R. 889, 899 (B.A.P. 6th Cir. 2022), *aff'd on other grounds*, 2022 WL 9730003 (6th Cir. Oct. 17, 2022) (where the purpose of a contempt motion "was to compel Debtor to pay pre-petition arrearages under threat of sanction for civil contempt," the family court judgment finding debtor in contempt violated the stay and was void); *In re Evans*, 2023 WL 2571854, *6 (W.D. Va. March 20, 2023) (no exception to the automatic stay to commence civil contempt enforcement litigation with respect to a domestic support obligation); *In re Grinspan*, 597 B.R. 725, 740-43 (Bankr. E.D.N.Y. 2019) (collecting cases on the split of authority as to the meaning of "collection" and finding persuasive those courts that take a narrow view, therefore, postpetition enforcement of a support obligation through contempt proceedings violates the automatic stay).

Some cases highlight the use of the word "enforcement" in § 362(b)(2)(G) in their analysis of § 362, which excepts from the automatic stay "the enforcement of a medical obligation, as specified under title IV of the Social Security Act[.]" But that subsection addresses a different action in relation to the stay. The plain language of that subsection explains why the drafters chose the word "enforcement" rather than "collection." The exception that section 362

recognizes is a statutory obligation in the Social Security Act.  The exception permits enforcement of the obligation arising in the statute.  A party cannot "collect" a statutory obligation; it must enforce it.  Thus, desiring an exception to permit a party to receive the benefit of the statutory obligation without consequence of the stay, Congress excepted "enforcement" of the obligation.  This was a logical choice of language.  The government entities that would be "enforcing" medical obligations would be doing so pursuant to statutory authority.

### 4.   *Erhardt* **is not on point and is not persuasive**

Marty argues that *In re Erhardt*, 618 B.R. 832 (N.D. Ill. 2020), is on all fours with this case, and requires this court to find that Kerry's actions and the December 8 Order violate the automatic stay.  It is not, and it does not.

In *Erhardt*, the debtor had been incarcerated for civil contempt for failure to turn over property as ordered by a state court.  After five months in jail, he filed for relief under chapter 7 and brought a motion to enforce the stay.  The bankruptcy judge denied the motion, finding that the incarceration was an exercise of police and regulatory power and therefore excepted from the stay under § 362(b)(4).

The *Erhardt* debtor appealed to the District Court.  The District Court judge first noted that the parties agreed that continued enforcement of a prepetition contempt order violates § 362(a)(1).  The question, therefore, was whether one of the exceptions in § 362(b) applied.  The court considered whether § 362(b)(4) applied and determined that it did not.  The orders incarcerating the debtor were not punitive, but instead "were imposed with the dominant purpose of securing Erhardt's compliance with the state court's prior orders."  618 B.R. at 842.

The Seventh Circuit had endorsed two tests for determining whether a state's actions fall within § 362(b)(4) – the pecuniary purpose test and the public policy test.  The District Court

13

judge concluded that incarcerating the debtor to compel compliance with court orders satisfied neither of those tests, and so could not come within the ambit of § 362(b)(4).

Having reviewed the *Erhardt* decision as well as the arguments of the parties, the court concludes that it is not persuasive authority. *Erhardt* does not involve the collection of a domestic support obligation. It does not involve analysis and application of the same exception to the automatic stay.

As in this case, the *Erhardt* court determined that the continued enforcement of a prepetition obligation violates § 362(a)(1). But the exception to the stay that was under consideration in *Erhardt* was § 362(b)(4). Just because § 362(b)(4) does not except continued enforcement of a prepetition action does not mean that none of the exceptions in § 362(b) are operable. *Erhardt* did not even mention § 362(b)(2)(B). There was no reason to mention it, since there was no domestic support obligation that a creditor was seeking to collect from non-estate property.

As Kerry points out, *Erhardt* actually supports her position. It also supports the court's interpretation of § 362(b)(2)(B): "Even though Erhardt's incarceration satisfies subsection (a)(1), it is not prohibited if it also satisfies one of the exceptions found in subsection (b)." *Id.* at 841. Similarly here – even though Marty's incarceration satisfies subsection (a)(1), it does not run afoul of the automatic stay if it satisfies one of the exceptions in § 362(b). In this case, the applicable exception is § 362(b)(2)(B).

### D. Collection efforts are not against property of the estate

As stated above, most creditors' actions to collect their claims against debtors are halted by the automatic stay. The Code provides several exceptions to this general rule, and the applicable exception in this case is § 362(b)(2)(B). There are two requirements that must be

14

satisfied for § 362(b)(2)(B) to apply: (1) the actions relate to the collection of a domestic support obligation; and (2) the creditor is not trying to collect from property of the bankruptcy estate.

As discussed previously, there is no question that Kerry seeks to collect a domestic support obligation. The court must also consider, however, whether she is proceeding against property of Marty's estate.

Marty has not identified any property of the estate that is implicated in Kerry's collection efforts. He listed only the following property on Schedules A and B:

| Property | Additional information |
|---|---|
| 711 Park Avenue, River Forest, Illinois (held in fee simple with Kerry) | Fully encumbered, except for claimed homestead exemption |
| Jet skis | |
| Golf clubs | exempt |
| Clothing | exempt |
| $600 cash | exempt |
| $2000 in various bank accounts | exempt |
| Interests in 25 corporate entities of unknown value | Secured claim of $2,000,000 appears to be against Marty's interest in one of the entities |
| Pan-American bank shares | |
| Two retirement or pension accounts | One account is to be transferred to Kerry |
| The Frank M. Paris Jr. Revocable Trust, beneficial interest holder of Debtor's interests in 25 corporate entities and the Pan-American bank shares | |
| Claims for violation of the automatic stay | |
| Malpractice claim | |

15

In answer to Questions 37 through 44, Marty acknowledged that he has a legal or equitable interest in business-related property, but then listed no property. When asked whether there was any other business-related property he did not already list, he checked "yes" and described the property as "??" with a $0 value.

Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). The bankruptcy estate contains only what the debtor himself owned just before filing, nothing less but also nothing more. *See Ryan v. Branko Prpa MD, LLC*, 55 F.4th 1108, 1118 (7th Cir. 2022) ("A debtor's property does not shrink by happen-stance of bankruptcy, but it does not expand, either.") (quotation omitted).

For example, the *assets* of the 25 corporate entities in which Marty holds an interest are not property of the estate. Only Marty's membership or other interest in each entity can be categorized as property of the estate. *See Kreisler v. Goldberg*, 478 F.3d 209, 214 (4th Cir. 2007) ("The fact that a parent corporation has an ownership interest in a subsidiary, however, does not give the parent any direct interest in the *assets* of the subsidiary."); *Manson v. Friedberg*, No. 08 CIV. 3890(RO), 2013 WL 2896971, at *4 (S.D.N.Y. June 13, 2013) ("Any assets owned by Oldstone Ventures, LLC, are not protected simply by virtue of the fact that [the debtor] owns Oldstone."); *In re Com. Mortg. & Fin., Co.*, 414 B.R. 389, 395 (Bankr. N.D. Ill. 2009) ("As a general rule, property of the estate includes the debtor's stock in a subsidiary, but not the assets of the subsidiary.").

Marty argues that Kerry's attempts to obtain legal title to the property awarded to her violated the automatic stay, "as that legal title became under the control of the Trustee and/or became property of the Debtor's bankruptcy estate upon entry of the Order for Relief." Debtor's

Response to Motion to Clarify, p. 4.  He contends that the State Court improperly relied on

*Posner* in holding that assets awarded to Kerry in the JDOM are not part of his bankruptcy

estate.  Citing a case from 1940, he argues that a divorce decree cannot transfer legal title.

Marty's contentions, however, ignore the change in Illinois law that occurred many years ago,

with the adoption of the Illinois Marriage and Dissolution of Marriage Act.  When a domestic

relations court divides marital property, the assets awarded to the non-debtor spouse are not

property of the estate.  As the Seventh Circuit explained:

> When [the non-debtor] filed for divorce, she and [the debtor] were each vested
> with contingent interests in the entire marital home. [The debtor] thus no longer
> owned a simple half-interest in the house. Instead, after the divorce proceeding
> was initiated, he owned a half-interest *subject to* [the non-debtor's] contingent
> interest. This qualified half-interest is what the estate acquired when [the debtor]
> filed for bankruptcy less than a year later. *Finally, once the divorce court
> awarded [the non-debtor] the entire marital home, the estate's contingent interest
> in the house disappeared. That leaves the estate without a claim.*

*In re Thorpe*, 881 F.3d 536, 540 (7th Cir. 2018) (emphasis added).  *See also In re Wolf*, Nos. 23-

1045, 23-1046, 23-1047, 23-1048, 2023 WL 6564882, at *2 (7th Cir. Oct. 10, 2023) ("When the

marital property is divided, each party's contingent interest either ripens into a full ownership

interest or vanishes.") (unpublished order) (citation and quotation omitted); *In re Zachmann*, No.

10 B 32410, 2013 WL 1316647, at *3 (Bankr. N.D. Ill. Apr. 2, 2013). ("In this case, Judge

Barbosa lifted the stay to permit the state court to equitably distribute marital property. The state

court has done so and has thus determined the extent of property of the bankruptcy estate with

respect to marital property. The state court award has the effect of determining that the stock is

not property of Lori's bankruptcy estate.").

Since Kerry's collection efforts seek only assets awarded to her in the JDOM, she is not

pursuing estate property.

17

In summary, Kerry's actions relate to the collection of a domestic support obligation. She is not attempting to collect those domestic support obligations from property of the bankruptcy estate. Therefore, although her actions appear to violate § 362(a)(1), in fact her conduct is excepted from the automatic stay under § 362(b)(2)(B). Consequently, the Motion to Enforce will be denied.

As for the Motion to Clarify, in her prayer for relief Kerry requests the entry of an order determining that the automatic stay does not apply to the contempt proceedings in the State Court. Considering the discussion above, and the denial of the Motion to Enforce, the court will grant this portion of the Motion to Clarify. The contempt proceedings are excepted from the automatic stay pursuant to § 362(b)(2)(B). Since the contempt proceedings are excepted from the stay, Kerry's request in the alternative to modify the stay *nunc pro tunc* is moot, as is her request for a waiver of the 14-day stay in Fed. R. Bankr. P. 4001(a)(3).

To the extent Kerry takes any action to collect against property of the estate, however, such actions are stayed and are subject to further motion by the Debtor. As Marty's case trustee noted at the hearing on January 3, 2024, if Marty delivers property to Kerry that the trustee later determines to be property of the estate, he will seek the appropriate relief. That issue is not before the court today.

### E. Remaining requests for relief

In addition to requesting a finding that the December 8 Order is a violation of the automatic stay, Marty also asked the court to void that order, to direct Kerry and her counsel to take immediate action to free him from incarceration, and to enter such sanctions as this court finds appropriate.

Since the court found that the December 8 Order does not violate the automatic stay, it flows from that decision that Marty's remaining requests will also be denied. The December 8 Order will not be declared to be void, since it was not entered in violation of the stay. Continued enforcement proceedings to collect a domestic support obligation from property that is not property of the estate do not violate the stay, therefore the court will not direct Kerry and her attorneys to take action to obtain Marty's release from jail. Finally, there is no basis to award sanctions under § 362(k) at this point since the entry of the December 8 Order was not a willful violation of the automatic stay.

## CONCLUSION

For all of the reasons stated above, the court will enter an order denying the Motion to Enforce. The court will also enter an order granting the Motion to Clarify in part, to the extent it requests a finding that the contempt proceedings are excepted from the automatic stay, and to authorize filing a motion in excess of 15 pages. The order will provide that the remainder of the Motion to Clarify is moot.

Date:   January 19, 2024

_____
DAVID D. CLEARY
United States Bankruptcy Judge