# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

## TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO CONVERT DEBTOR'S PENDING CHAPTER 7 CASE TO A SUBCHAPTER V CHAPTER 11 CASE PURSUANT TO SECTION 706(d)

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Debtor"), hereby objects to the Debtor's *Motion to Convert Debtor's Pending Chapter 7 Case to a Subchapter V Chapter 11 Case Pursuant to Section 706(d)* (the "Motion"). [Dkt. No. 65.] In support of this objection, the Trustee respectfully states as follows:

### Introduction

The Debtor asks the Court to convert his chapter 7 case to a case under Subchapter V of chapter 11 of the Bankruptcy Code ("Subchapter V"). In support of this relief, the Debtor argues that § 706(a) and (d) of the Bankruptcy Code provide him with a right to convert the case to chapter 11 because (i) the case has not previously been converted and (ii) the Debtor is eligible to be a debtor under Subchapter V. [Mot. at ¶¶ 12-13.] The Debtor cites no authority in support of his motion – presumably because the Debtor believes he has an absolute statutory right to convert his case. As explained in detail below, the Debtor is not entitled to convert his chapter 7 case to Subchapter V for the following reasons:

- First, the Debtor is ineligible to be a debtor under chapter 11. The Debtor's chapter 11 would be promptly dismissed or converted for "cause" under § 1112(b) because the Debtor failed to pay over $70,000 in *postpetition* domestic support obligations and because there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable

- likelihood of rehabilitation." This is tantamount to a determination that the Debtor does not qualify as a debtor under chapter 11.

    - Second, the Debtor does not qualify as a Debtor under Subchapter V because (i) his total aggregate noncontingent liquidated secured and unsecured debts exceed $7.5 million, (ii) less than 50% of the eligible debt arises from commercial or business activities, and (iii) the Subchapter V deadline to file a plan under § 1189(b) of the Bankruptcy Code expired on March 8, 2024.

Accordingly, the Debtor's motion should be denied.

## Background

### A. The Debtor's Divorce Proceedings and Domestic Support Obligations

The Debtor and Kerry Paris ("Kerry") were married in 2002 and have seven children. [*See* Dkt. No. 47, Memorandum Opinion, hereinafter, "Op.," at p. 1.] In 2016, Kerry filed a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois (the "State Court") and the contentious divorce proceedings have been ongoing for over 8 years. *Id.* On December 2, 2022, the State Court entered its *Memorandum and Order: Judgment for Dissolution of Marriage* (the "JDOM"). [JDOM, attached as **Exhibit A**.] In the JDOM, the State Court made several awards to Kerry or for her benefit including the Debtor's payment of monthly domestic support obligations in the total amount of $23,931.11, which includes monthly maintenance of $5,500, child support of $7,500 and payment of the $10,931.11 mortgage on the family home. [Op. at p. 2; Ex. A at 96-98, *Order and Rule to Show Cause*, dated November 15, 2023, attached as **Exhibit B** at ¶ 3.c.]

After the State Court entered the JDOM, the disputes between Kerry and the Debtor continued over the Debtor's non-compliance with the domestic support obligations. [Op. at p. 2-3.] Those disputes finally came to a head on December 7, 2023, when the Debtor was arrested for failing to purge his contempt by posting the sum of $1,622,850.35 with the Clerk of the Court. [*Order of Adjudication of Indirect Civil Contempt and Order of Commitment*, dated October 17, 2023, attached as **Exhibit C** at pp. 3-4.] The following day, December 8, 2023 (the "Petition

Date"), the State Court held a hearing and found, among other things, that the Debtor failed to purge his contempt and ordered that the Debtor would remain incarcerated "until he produced his life insurance policies, transferred assets awarded to Kerry in the judgment, and paid $500,000 to the [children's] 503(g) Trust" (the "December 8 Order"). [Op. at p. 3; Order, dated January 24, 2024,[1] attached as **Exhibit D** at ¶¶ 1-2.]

B.     **The Commencement of the Debtor's Chapter 7 Case**.

In an attempt to free himself from jail, the Debtor filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code during the State Court hearing on December 8. [Op. at p. 4.] The Debtor then filed an emergency motion before this Court seeking, among other things, the entry of an order voiding the December 8 Order as a violation of the automatic stay and requiring Kerry to take immediate action to free the Debtor from incarceration. [Op. at p. 1.] In response, Kerry filed a motion to clarify which sought the entry of an order that the automatic stay did not apply to the enforcement of the domestic support obligations ("DSO") owed by the Debtor or, in the alternative, modification of the stay to do so. [*Id.*] On January 19, 2024, the Court ruled that that (i) the December 8 Order did not violate the automatic stay and was not void, (ii) the continued enforcement proceedings to collect the domestic support obligations from property that is not property of the estate did not violate the stay; and (iii) Kerry and her attorneys were not obligated to take action to cause the Debtor to be released from jail. [*Id.* at p. 19.]

On January 5, 2024, the Court authorized the Debtor's release from jail after the Debtor posted a $150,000 bond. [*Corrected Remand/Commitment Order By Order of Court* (hereinafter, the "Remand Order"), attached as **Exhibit E**.] The Remand Order provides that payment of the

---

[1] The Trustee was unable to locate an entered copy of the December 8 Order. The Order dated January 24, 2024 summarizes the relief granted in the December 8 Order.

bond "does not purge the [Debtor] of his contempt for his failure to pay domestic support obligations" and the Debtor was subject to electronic home monitoring in order to ensure his appearance at the next State Court hearing. *Id.* The Trustee is informed and believes that the Detor has not purged his contempt in the State Court proceedings.

    C.    **The Debtor's Schedules and Statement of Financial Affairs**

Ira Bodenstein was appointed as the chapter 7 trustee of the debtor's bankruptcy estate (the "Estate") on the Petition Date. The initial § 341 meeting of creditors was scheduled for January 8, 2024, and the Trustee adjourned that meeting to February 7, 2024 because the Debtor indicated that the Schedules and Statement of Financial Affairs filed on the Petition Date were incomplete and needed to be amended.[2] [Dkt Nos. 5, 42.] The Trustee continued the § 341 meeting on February 7, 2024, because the Debtor had not yet amended his schedules. [Dkt. No. 46, 51.] The Debtor filed his Amended Schedules and Statement of Financial Affairs on February 27, 2024 (collectively, the "Schedules"). [Dkt. No. 70, herein after "Sched."] The Trustee did not have sufficient time to review the Schedules prior to the rescheduled February 29, 2024, § 341 meeting, so it was continued again to March 12, 2024. [Dkt. No. 63.] At the Debtor's request, the Trustee adjourned the § 341 meeting from March 12, 2024 to April 10, 2024. [Dkt. No. 82.]

    1.    *The Debtor's Assets and Liabilities*

While the Amended Schedules only identify total assets of $534,000 (Dkt. No. 73), the Debtor's schedules reflect ownership interests (through the Frank M. Paris Jr. Revocable Trust) in over 50 separate entities[3] all valued in an "unknown" amount. [Sched. A, at 4-5 Q. 19, 25.] The

---

[2] On December 28, 2023, the Debtor filed his initial schedules and Statement Financial Affairs. [Dkt. No. 38.]

[3] The Debtor did not identify all of his business connections with the 4 years prior to this Case. [Sched., at p. 57.]

Debtor's ownership structure is exceedingly complex and was designed for, among other things, "[b]usiness and liability protection" as well as to be "bankruptcy remote." [Ex. A at pp. 53-57.] As described by the Debtor, "*[t]he Maeve investment series are a sophisticated series of various [c]ompanies (alphabetically lettered from A to LL) that own: 1) cash and marketable securities; 2) real property; 3) operating companies; 4) undivided interests in real property; and 5) other companies that no longer hold real estate or assets.*" [*Id.* at 53 (emphasis original).] A copy of the Ownership Chart for the Debtor's known entities is attached as **Exhibit F**. The State Court determined that the Debtor's interests in his entities had a mean value of over $20.3 million. [Ex. A at 58.]

The Debtor identifies total liabilities in the approximate amount of $144.4 million. [Dkt. No. 73.] While he does not identify the amount of claims which arose from commercial or business activities, the Debtor's characterization of his disputed and undisputed liabilities are summarized in the following table:

| Type of Claim | Undisputed | Contingent/ Unliquidated or Disputed |
|---|---|---|
| Schedule D - Secured Claims | $ 4,793,300.00 | |
| Schedule E - Unsecured Priority Claims | | $ 1,200,000.00 |
| Schedule F - Unsecured Claims | $ 1,369,187.52 | $ 137,024,135.70 |
| **Totals** | **$ 6,162,487.52** | **$ 138,224,135.70** |

The Debtor marked as "disputed" substantially all of the claims that the State Court ordered the Debtor to pay in the divorce proceedings. [*See* Sched. E, F.] Those claims total the aggregate amount of $2,721,174.68 and are comprised of the following claims: (i) $1,285,722 awarded to Kerry for the purposes of funding the children 503(g) Trust (Ex. B at ¶ 3.c); (ii) $935,000 in

attorneys' fees and expenses awarded to Angelini Ori & Abate (*Order of Adjudication of Indirect Civil Contempt*, dated September 29, 2023, attached as **Exhibit G**, at ¶¶ 12-18); (iii) $150,548.68 in attorneys' fees and expenses awarded to Hurst, Robin & Kay (Ex. G at ¶¶ 19-24); and $349,904.00 in fees awarded to Stout Risius Ross, LLC for services rendered as a valuation consultant for Kerry (Ex. C at ¶¶ 6-19).[4] While the Debtor appealed the orders granting those awards, those appeals have all been dismissed.[5] [Notice of Appeal, dated October 26, 2023, attached as **Exhibit H**; Order in Appeal No. 1-23-1992, dated March 12, 2024, attached as **Exhibit I**.] Thus, the Debtor's noncontingent liquidated claims total an amount not less than $8,883,662.20.

2. *The Debtor's Income and Expenses*

The Debtor's Schedule I and J reflects monthly expenses exceeding income by approximately $25,241.00 per month. [Sched. I and J.] Specifically, the Debtor shows monthly income from Sedgwick Payroll Corp.[6] in the gross amount of $5,000 and total monthly expenses in the amount of $30,241.00. The monthly expenses included alimony, maintenance and support

---

[4] In addition, the JDOM also required the Debtor to deliver to Kerry (x) the Debtor's 401(k) Account #5514, which had a balance of $643,061 as of September 1, 2021, (y) the couples 50% interest in the 1464 S. Michigan Avenue condominium, and the (z) the couples 50% interest in the 828 Grace Condominium and parking space. [Ex. A at 76-79.] Upon information and belief, the Debtor complied with those obligations postpetition and the value of those noncontingent and liquidated claims are in excess of $1,000,000.

[5] The appeals were not proceedings subject to the automatic stay. *See* 11 U.S.C. §§ 362(b)(1) (excluding criminal actions or proceedings), (b)(2)(A)(ii) (excluding proceedings to establish or modify of an order for domestic support obligations) and (b)(2)(A)(iv) (proceedings for the dissolution of marriage, other than to determine property of the estate); *see also* Op. at p. 10 ("This court holds that the better reading of § 362(b)(2), which excepts '*collection* of a domestic support obligation from property that is not property of the estate' … from the automatic stay, includes *enforcement* of those domestic support obligations. This is so even when enforcement leads to a civil contempt proceeding or an order of incarceration." (emphasis original)).

[6] The State Court found that Sedgwick Payroll Corp. merely provides payroll services for certain of the Debtor's entities and has "no assets or equipment to speak of, and [has] little or no value to anyone outside of the Sedgwick Development family of companies." [Ex. A at pp. 48-49.] Accordingly, Schedule I does not disclose the source of the Debtor's income.

obligations in the amount of $13,000 and rental or home ownership expenses in the amount of $10,500. [Sched. J.]

## Argument

The Debtor asserts that he has a right to convert his chapter 7 case to chapter 11 under §§ 706(a) and (d) of the Bankruptcy Code because (i) the case has not previously been converted and (ii) the Debtor is eligible to be a debtor under Subchapter V. [Mot. at ¶¶ 12-13.] The Debtor's argument fails because he is ineligible to be a debtor under chapter 11. Even if he is eligible for chapter 11, the Debtor does not meet the specific eligibility requirements to proceed under Subchapter V.

### A. The Debtor is Ineligible to be a Debtor Under Chapter 11

Section 706(a) of the Bankruptcy Code provides, in part, that "[t]he debtor may convert a case under this chapter to a case under chapter 11 ... at any time, if the case has not been converted under section 1112 ... of this title." 11 U.S.C. § 706(a). The ability of a chapter 7 debtor to convert a case to chapter 7 is expressly limited by the language of § 706(d), which provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."11 U.S.C. § 706(d). When read together, these provisions confirm that a debtor's right to convert a case to chapter 11 is not absolute and is limited in certain circumstances. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373-74 (2007); *In re NLG, LLC*, 2023 WL 2053920, at *5 (Bankr. Del. Feb. 16, 2023).

In *Marrama*, the debtor asserted that he had an absolute right to convert his case from chapter 7 to chapter 13 under § 706(a) of the Bankruptcy Code. *Marrama*, 549 U.S. at 370. In rejecting the debtor's argument, the Supreme Court explained that when a bankruptcy court finds that a debtor's chapter 13 case would be dismissed or converted to chapter 7 for "cause," including the debtor's bad-faith conduct under 11 U.S.C. § 1307, then that was "tantamount to a ruling that

the individual does not qualify as a debtor under Chapter 13," and the chapter 7 case will not be converted. *Marrama*, 549 U.S. at 372-74.

While *Marrama* dealt with a Debtor's right to convert from chapter 7 to chapter 13, courts have held that its reasoning is equally applicable to motions to convert from chapter 7 to chapter 11. *See, e.g., In re Zamora-Quezada*, 622 B.R. 865, 877 (Bankr. S.D. Tex. 2017) ("*Marrama* has been equally applied to conversions to chapter 11 cases."); *In re Hunter*, 597 B.R. 287, 292 (Bankr. M.D.N.C. 2019) ("Though Marrama addresses a Chapter 7 debtor's conversion to Chapter 13, courts have found its analysis applicable where a Chapter 7 debtor seeks to convert to Chapter 11, reasoning that § 1112(b) serves the same purpose as § 1307(c)."); *In re Irmen*, 2008 WL 320484, at *3 (Bankr. N.D. Ill. Feb. 1, 2008) ("The reasoning of *Marrama* applies as well to a motion to convert from Chapter 7 to Chapter 11."). In *Irmen*, Judge Schmetterer succinctly explained that *Marrama* also applied to motions to convert from chapter 7 to chapter 11 because "it would be absurd to allow a debtor the absolute right to convert to Chapter 11 under § 706(a) only have that case immediately dismissed pursuant to 11 U.S.C. § 1112(b)(1)." *Irmen*, 2008 WL 320484, at *3.

To determine whether a debtor is eligible to be a debtor under chapter 11, courts examine whether "cause" exists under § 1112(b)(1) for the court to convert or dismiss a debtor's chapter 11 case. *See, e.g., NLG*, 2023 WL 2053920, at *6 (denying chapter 7 debtor's motion to convert to chapter 11 because "cause" existed under § 1112(b)(4)(A) and (M)); *In re Daughtrey*, 896 F.3d 1255, 1276 (11th Cir. 2018) (bankruptcy court properly denied chapter 7 debtors' request to convert to chapter 11 because "cause" existed to either dismiss the case or convert it back to a chapter 7 under § 1112(b)(4)(A)).[7] Section 1112(b)(4) provides a non-exhaustive list of what

---

[7] *See also In re Irmen*, 2008 WL 320484, at *3 (denying debtor's motion to convert chapter 7 case to chapter 11 because it would be dismissed for "cause" under § 1112(b)(1) based on the debtor's bad-faith); *Zamora-*

constitutes "cause" for dismissal or conversion of a chapter 11 case, and courts may find that "cause" exists for other equitable reasons as well. *See In re 5431-33 S. Wabash LLC*, 2020 WL 7214147, at *5 (Bankr. N.D. Ill. Nov. 16, 2020) (citing *In re Attack Props.*, LLC, 478 B.R. 337, 344 (N.D. Ill. 2012)).

In this case, "cause" exists under multiple sections § 1112(b)(4) for denying conversion to chapter 11 – namely the failure to pay postpetition domestic support obligations under § 1112(b)(4)(P) and continuing loss or diminution to the estate and absence of a reasonable likelihood of rehabilitation under § 1112(b)(4)(A).[8]

      1.    *The Debtor's Failure to Pay Over $70,000 in Postpetition Domestic Support Obligations to Kerry Make Him Ineligible for Chapter 11*

Section 1112(b)(4) defines "cause" to include "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1112(b)(4)(P); *see In re Rosenblum*, 609 B.R. 854, 867 (Bankr. D. Nev. 2019) (cause existed under § 1112(b)(1) to dismiss the debtor's chapter 11 case for failing to pay postpetition domestic support obligations as required under § 1112(b)(4)(P)); *In re Efron,* 529 B.R. 396 (B.A.P. 1st Cir. 2015) (affirming bankruptcy court's dismissal of debtor chapter 11 case under § 1112(B)(4)(E) and/or (P) because the debtor was not current on his domestic support obligation payments nor did his plan provide for payment of the domestic support obligations).

---

*Quezada*, 622 B.R. at 877 (denying debtor's motion to convert chapter 7 case to chapter 11 because, among other things, "cause" existed under § 1112(b)(4)(A) to disqualify the debtor from being a debtor in chapter 11); *Braunstein v. Waller*, 2012 WL 1802145, at *2 (N.D. Ill. May 16, 2012) (denying debtor's motion to convert chapter 7 case to chapter 11 because "the inevitable result of a conversion to a Chapter 11 bankruptcy in [the debtor's] case would likely have been a reconversion back to a Chapter 7 bankruptcy pursuant to 11 U.S.C. § 1112(b)(1).").

[8] While there are likely other grounds as well, the Trustee is constrained by the fact that he has yet not been able to conclude his § 341 meeting of creditors or undertake any discovery of the Debtor.

In the present case, the JDOM obligates the Debtor to pay domestic support obligations of $23,931.11 on the 1st day of every month, which is comprised of $5,500 for maintenance, $7,500 for child support of and $10,931.11 for the mortgage payment on the family home (the "<u>Monthly DSO</u>"). [Op. at p. 2; Ex. A at 96-98, Ex. B at 3.c.] The Court has already determined that the Monthly DSO are domestic support obligations as defined under the Bankruptcy Code. [Op. at pp. 2, 6, 7, 15 ("As discussed previously, there is no question that Kerry seeks to collect a domestic support obligation.") There is also no dispute that the Debtor failed to pay these obligations since the commencement of his chapter 7 case. As of March 1, 2024, the total unpaid monthly domestic support obligations that have come due after the Petition Date are approximately $72,000. Moreover, the Debtor lists his gross monthly income as $5,000 per month. [Sched., I.] If this chapter 7 case were converted to chapter 11, the failure to pay the Monthly DSO would constitute grounds for immediate conversion or dismissal to chapter 7. It would be "absurd" to allow the Debtor to convert his case to chapter 11 under § 706(a) only have that case immediately converted back pursuant to § 1112(b)(1). *Irmen*, 2008 WL 320484, at *3. Thus, the Debtor fails to show that a conversion of his case to chapter 11 would be anything other than an exercise in futility.

   2. *The Debtor is Ineligible to be a Debtor under Chapter 11 Under § 1112(b)(4)(A)*

Section 1112(b)(4) also defines "cause" to include a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The first prong of this test, continuing loss or diminution of the estate, is established where the debtor has a negative cash flow and no definite source of income. *In re Original IFPC S'holders, Inc.*, 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004) ("continuing loss" established where debtor had had "an ongoing negative cash flow resulting in a net decrease in value and no definite source of income."). The second prong is "not the technical one of whether

the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *Id.* Conversion or dismissal is generally appropriate "[w]hen visionary schemes for rehabilitation entail significant risk to creditors without any reasonable probability that the debtor can successfully rehabilitate." *Id.* at 743 (quoting *In re Great American Pyramid Joint Venture*, 144 B.R. 780, 790–91 (Bankr. W.D. Tenn.1992).

In this case, the Debtor's self-reported expenses exceed his income by $25,241 per month prior to considering any potential costs of administering an overly complex chapter 11 bankruptcy case. [Sched., I, J.] The Debtor, who controls his own income, has chosen not to pay any domestic support obligations since the Petition Date. Further, the Debtor has provided no facts – much less evidence – demonstrating that he will have the liquidity to pay his domestic support obligations or to fund the administration expenses of a chapter 11 case. Nor has he demonstrated a reasonable probability that he can successfully rehabilitate his crumbling real estate business. In fact, one of the entities he owns and controls, 301 W North Avenue LLC, just filed its own chapter 11 bankruptcy case currently pending before Judge Cassling.[9] Importantly, the secured creditor in that case has filed a lawsuit to recover $29 million on its guaranty against Martin NV II, Inc. *See BDS III Mortgage Capital G, LLC v Martin NV II, Inc.*, Case No. 24-cv-01826 (S.D.N.Y.). Martin Nevada II, Inc. is the entity that indirectly owns the investments that comprise substantially all of the Debtor's net worth. [*See* Ex. F at p. 1.] Based on the available information, it appears that the Debtor's creditors only hope of recovery is by forcing the Debtor to liquidate his assets as soon as

---

[9] The case is pending before Judge Cassling as *In re 301 W North Avenue LLC*, Case No. 24-bk-2741 (Bank. N.D. Ill). The Debtor filed the case without informing the Trustee and arguably without authority to do so. The Trustee filed a motion requesting reassignment to this Court, which is scheduled for presentment on March 26, 2024. [Case No. 24-2741; Dkt. No. 40.]

possible.

### B. The Debtor is Ineligible to be a Debtor Under Subchapter V

Even if he were eligible to convert his chapter 7 case to chapter 11, the Debtor is ineligible to be a debtor under Subchapter V. As set forth in § 1182(1)(A) of the Bankruptcy Code, to be eligible to elect Subchapter V, a debtor must be:

> a person engaged in commercial or business activities … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition … in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor.

11 U.S.C. § 1182(1)(A). The Debtor bears the burden of establishing Subchapter V eligibility. *See NetJets Aviation, Inc. v. RS Air, LLC (In re RS Air, LLC)*, 638 B.R. 403, 414 (9th Cir. BAP 2022).

In this case, the Debtor is not eligible to proceed under Subchapter V for at least three reasons. <u>First</u>, the Debtor's aggregate noncontingent liquidated secured and unsecured debts exceed the $7.5 million debt cap authorized under § 1182(1)(A). As explained above, the Debtor's aggregate noncontingent liquidated secured and unsecured debts are at least $8.9 million. *See Infra*, at p. 5. This amount includes $6.1 million of debts not listed as disputed, contingent or unliquidated in the Debtor's Schedules E and F, plus the $2.7 million owed to Kerry and the other professionals in the State Court proceedings. [Ex. B at ¶ 3.c; Ex. G, at ¶¶ 12-24; Ex. C at ¶¶ 6-19.] The fact that the Debtor identifies the State Court obligations as "disputed" does not exclude them from the Subchapter V debt limit. *See In re Hall*, 650 B.R. 595 (Bankr. M.D. Fla. 2023) ("disputed" debts are not excluded from the debt limit under § 1182 as long as the amount of the debt is readily ascertainable.) And in this case, the State Court debts are clearly liquidated but neither contingent nor subject to a bona fide dispute.

Second, nothing in the Schedules evidence that at least 50% of the $8.9 million "arose from the commercial or business activities of the debtor." 11 U.S.C. § 1182(1)(A) ("not less than 50 percent of [the eligible debt must arise] from the commercial or business activities of the debtor."). The eligible debts in this case all appear to be related to the State Court divorce proceedings, the Debtor's personal income taxes or other personal obligations including loans from an entity owned or controlled by the Debtor's father. And there is no information regarding how the proceeds of those loans were used. Thus, the Debtor has insufficient business debt to qualify under Subchapter V.

Third, cause exists to deny conversion to Subchapter V under § 1112(b)(4)(J) because the Debtor already missed the deadline for the court to hold the § 1188 status conference and the Debtor's deadline to file a chapter 11 plan under Subchapter V. Section 1188(a) of the Bankruptcy Code requires the court to conduct a status conference "not later than 60 days after the entry of the order for relief under this chapter" which may only be extended by the court "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. §§ 1188(a) and (b). Section 1189(b) of the Bankruptcy Code provides that "[t]he debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b).

Section 1112(b)(4)(J) defines "cause" for conversion or dismissal of a chapter 11 case to include the "failure to … file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(J). Section § 1112(b)(4)(J) is aways triggered whenever a debtor seeks to convert to Subchapter V after expiration of the § 1188 and § 1189 deadlines "because a plan will not have been filed within the timelines prescribed by statute." *In re Keffer*,

628 B.R. 897, 909 (Bankr. S.D.W. Va. 2021). If the debtor cannot meet the standard for extending the § 1188 and § 1189 deadlines, then § 1112(b)(4)(J) would establish "cause" under § 1112(b) to prevent conversion of the case to Subchapter V. *Id.* at 909-10. The burden of proof rests with the debtor to establish a valid basis for an extension. *In re Online King LLC*, 629 B.R. 340, 349 (Bankr. E.D.N.Y. 2021) ("Meeting that burden, however, is no small feat. It is a stringent one."). Under this heightened burden, courts have denied requests for an extension of the Subchapter V deadlines where the debtor relies on "a generalized excuse applicable to any business bankruptcy case." *Id.* at 351.

In this case, both the deadline to conduct the Subchapter V status conference and the deadline to file a Subchapter V plan have already expired. The 60-day deadline to conduct the § 1188(a) status conference occurred on February 8, 2024 and 90-day deadline under § 1189 for the Debtor to file his Subchapter V plan expired on March 8, 2024. The Debtor has not filed a motion to extend either statutory deadline. Even if the Debtor were to file such a motion, there are no circumstances here that would provide any justification to retroactively extend those deadlines.

The Debtor filed the chapter 7 case on an emergency basis in an attempt to free himself from jail (Mot. at ¶ 5), and the Court ruled on January 19, 2024 that the State Court order authorizing his incarceration did not violate the automatic stay (Op. at p. 19). At that time, the Debtor could have elected to convert the case to a Subchapter V case and timely requested an extension of the statutory deadlines under §§ 1188(a) and 1189. But he did not. Rather, the Debtor now argues for conversion to Subchapter V because (i) his "various interests are more valuable with [him] in control" and (ii) he has experienced problems with his lenders, investors and other members while in chapter 7. [Mot. at ¶¶ 6-7.] However, the Debtor acknowledges that these issues began to arise "[s]ince the filing of [his] Chapter 7 case." [Mot. at ¶ 7.] As the facts and arguments

belie any excuse for delay, the Debtor cannot meet his substantial burden of establishing that the failure to meet the Subchapter V deadlines under §§ 1188 and 1189 are "attributable to circumstances for which the debtor should not justly be held accountable." Accordingly, converting this case from chapter 7 to Subchapter V would be pointless because the Debtor cannot meet his burden of establishing eligibility as a debtor under Subchapter V.

## Conclusion

For all of the foregoing reasons, Trustee requests that the Court enter an order denying the Debtor's motion and granting such other and further relief as is just and proper.

Respectfully submitted,

Ira Bodenstein, not individually, but as
chapter 7 trustee for the bankruptcy
estate of Frank Martin Paris, Jr.

Dated: March 21, 2024  By:   /s/ Allen J. Guon
                                One of his attorneys

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-14450
aguon@cozen.com
*Counsel for Trustee*

# CERTIFICATE OF SERVICE

      Allen J. Guon, an attorney, certifies that he caused to be served a copy of this **Notice of Motion** and the attached **Trustee's Objection To Debtor's Motion To Convert Debtor's Pending Chapter 7 Case To A Subchapter V Chapter 11 Case Pursuant To Section 706(d)** on each entity shown on the list below at the address shown and by the method indicated on the list on March 21, 2024.

                                                       /s/ Allen J. Guon

## Mailing Information for Case 23-16481

## Electronic Mail Notice List through ECF System

- **Ira Bodenstein**  iratrustee@cozen.com, IL29@ecfcbis.com
- **Timothy W Brink**  tbrink@mpslaw.com, crampich@mpslaw.com
- **Scott R Clar**  sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- **Thomas C Cronin**  tcc@cronincoltd.com
- **Sean B Crotty**  scrotty@crottylaw.com, dmueller@colemanlawfirm.com;docket@crottylaw.com
- **Daniel P. Dawson**  ddawson@nisen.com, adrag@nisen.com
- **Allen J Guon**  aguon@cozen.com, allen-guon-6333@ecf.pacerpro.com;cknez@cozen.com
- **Steve Jakubowski**  sjakubowski@robbinsdimonte.com
- **Patrick S Layng**  USTPRegion11.ES.ECF@usdoj.gov
- **Ann Addis Pantoga**  apantoga@thompsoncoburn.com
- **Elizabeth E Richert**  erichert@crottylaw.com, docket@crottylaw.com;dmueller@crottylaw.com
- **Steven R Rogovin**  srogovin@mpslaw.com, crampich@mpslaw.com
- **Carolina Y. Sales**  csales@robbinsdimonte.com, mrussell@robbinsdimonte.com
- **Steven Yachik**  syachik@kelleydrye.com, KDWBankruptcyDepartment@kelleydrye.com