# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| In re: | ) | Case No. 23 B 16481 |
| --- | --- | --- |
| | ) | |
| FRANK MARTIN PARIS, JR. | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

## ORDER DENYING MOTION TO CONVERT TO CHAPTER 11

This matter comes before the court on the motion of Frank Martin Paris, Jr. ("Marty" or "Debtor") to convert his pending chapter 7 case to a case under subchapter V of chapter 11 ("Motion to Convert"). Objections were filed by Kerry Paris ("Kerry") and the chapter 7 trustee ("Trustee"). Debtor filed a reply ("Reply"). The court set the matter for evidentiary hearing. For the reasons stated below, the court will deny the Motion to Convert.

### I. BACKGROUND

Kerry and Marty were married in 2002 and had seven children. Divorce proceedings began around 2016 and have been ongoing. *See In re Paris*, 656 B.R. 225, 227 (Bankr. N.D. Ill. 2024).

The Circuit Court of Cook County ("State Court") entered a judgment for dissolution of marriage on December 2, 2022 ("JDOM"). *See* Trustee's Ex. 1. In the JDOM, the State Court made certain awards to Kerry or for her benefit. These awards include:

- Monthly maintenance in the amount of $5,500 until the youngest child graduates from eighth grade, at which time Kerry will have a duty to seek employment
- Monthly child support in the amount of $7,500
- A section 503(g) trust ("503(g) Trust") funded by Marty in the initial amount of $150,000

*See id.*; *Paris*, 656 B.R. at 227.

Marty did not comply with the JDOM and other State Court orders. In order to collect the amounts awarded, Kerry sought the intervention of the State Court. Marty was adjudicated in contempt of court on several occasions. *See Paris*, 656 B.R. at 227; Trustee's Exs. 10 (Order of Adjudication of Indirect Civil Contempt) and 11 (Order of Adjudication of Indirect Civil Contempt and Order of Commitment).

The Cook County Sheriff eventually arrested Marty pursuant to a body attachment order, and the State Court held a hearing on December 8, 2023, on the status of Marty's purge of contempt. At that hearing, the State Court judge found that Marty had not, among other failures, paid any money to purge his contempt, including overdue child support and maintenance obligations. The State Court ordered Marty remanded to the custody of the Sheriff of Cook County, stating that he would not be released until, *inter alia*, he paid $500,000 to the 503(g) Trust. *See Paris*, 656 B.R. at 228.

During that hearing, Marty filed a petition for relief under chapter 7 of the Bankruptcy Code. Shortly thereafter, he filed a motion in this court to enforce the automatic restraining provisions of section 362 of the Bankruptcy Code. *See* EOD 17 (December 11, 2023). Kerry filed a motion for order clarifying that the automatic stay does not apply or, in the alternative, to lift the stay. *See* EOD 20 (December 11, 2023). The court denied Marty's motion to enforce, and granted Kerry's motion to the extent it requested a finding that the State Court contempt proceedings were excepted from the automatic stay. *See generally Paris*, 656 B.R. 225.

On January 24, 2024, the State Court entered an order on the status of Marty's purge of contempt and other matters. It ordered that Marty "has not purged the indirect civil contempt of court leading to his remand on December 8, 2023." Trustee's Ex. 2. Although Marty paid

2

$150,000 to the 503(g) Trust, he had not paid the remaining $350,000. He was remanded to electronic home monitoring until he fully funded the 503(g) Trust. *See id*.

On March 5, 2024, Kerry filed a Petition for Adjudication of Indirect Civil Contempt and for Other Relief (Failure to Pay January, February, and March Maintenance and Child Support) ("March 2024 Petition"), asking the State Court to issue a rule against Marty, compelling him to show cause why he should not be held in indirect civil contempt for failure to comply with his child support and maintenance obligations under the JDOM. *See* Trustee's Ex. 3.

In his response, Marty admitted "that he has not paid maintenance and support from his own income for the dates alleged … but denies the allegations that support to Kerry and the children has not been paid. In fact, all maintenance and support obligations to Kerry and the children have been paid through the 503(g) Trust previously established in this case and are current as of the date of this hearing[.]" Trustee's Ex. 4. Marty argued that he was unable to pay the ordered support, which was why the trustee of the 503(g) Trust advanced those payments to Kerry.

On March 26, 2024, the State Court granted the March 2024 Petition. It held Marty in indirect civil contempt of court, ordered him to purge that contempt by paying $35,000 to the 503(g) Trust, and continued the hearing to May 21, 2024, for an in-person hearing on the "[s]tatus of [Marty's] purge of today's contempt for failure to pay maintenance and support or reimburse the 503(g) Trust for amounts advanced." Trustee's Ex. 5.

About two months later, the State Court entered another order. Among other rulings, the State Court found that "[w]ith respect to the status of [Marty's] purge of the outstanding contempt orders and remand order: … [Marty] has not purged his indirect civil contempt of

Court for his failure to pay any of the other outstanding domestic support obligations." Trustee's Ex. 6.

Marty was ordered to pay the 503(g) Trust funds that represented additional advances made in April and May. The court took the opportunity to clarify that:

> As previously ruled upon by this Court, Marty's obligation to reimburse the 503(g) Trust for amounts it advances to Kerry runs concurrent with, and in addition to, his obligation to pay his monthly child support, maintenance, mortgage and real estate taxes. Marty is required both to fund the 503(g) Trust and make his monthly support obligations pursuant to the Judgment. Payment to the 503(g) Trust is not a substitute for the payment of his monthly support obligations.

*Id.*

Meanwhile, in this court, the Trustee was appointed, and has continued a § 341 meeting of creditors from time to time. The Trustee received authorization to employ counsel and filed several motions as well as an initial report of assets.

Debtor filed this Motion to Convert on February 21, 2024. The court set the Motion to Convert for evidentiary hearing on May 6, and required parties to file witness and exhibit lists on or before May 3, 2024.

On April 29, 2024, Debtor's counsel asked the court to set two matters for hearing on an emergency basis. After receiving court approval, he filed motions to withdraw as Debtor's attorney and to reschedule the evidentiary hearing. The court granted both motions, reset the witness and exhibit list deadline for May 22 and continued the evidentiary hearing to May 29, 2024.

Kerry and the Trustee timely filed their witness and exhibit lists. Debtor, now proceeding pro se, filed nothing.

On May 29, 2024, Kerry's attorneys and the Trustee with his attorney appeared in court, in person. Debtor appeared by Zoom. Debtor stated that he had searched for replacement

4

counsel but had not yet secured representation. He requested another continuance, for an additional two weeks. If the court would not grant a continuance, Debtor asked to withdraw the Motion to Convert.

The Trustee objected to any continuance, noting that he had subpoenaed a witness to appear and testify. He requested that any withdrawal of the Motion to Convert be with prejudice, terminating Debtor's ability to bring any future motion seeking the same relief. Alternatively, the Trustee suggested that Debtor be required to make a showing of cause in any future motion to convert, or that the court reject the request to withdraw and deny the Motion to Convert. Kerry adopted the Trustee's comments.

The court declined Debtor's request to withdraw and determined that it would rule on the Motion to Convert. It allowed Kerry and the Trustee to present evidence. The Trustee did not call any witnesses, but he did request that his exhibits 1 through 12 be admitted into evidence. Debtor did not raise an objection, and the court admitted the Trustee's exhibits. Kerry asked to adopt the Trustee's exhibits. The court declined that request but noted that her exhibits were the same as the Trustee's.

Since he did not file any witness or exhibit lists and was not present in the courtroom, Debtor was precluded from presenting any evidence. In any event, when the court asked if he had anything to add to his earlier presentation, Debtor responded that he did not.

At the conclusion of the hearing, the court indicated that having reviewed the briefs it was prepared to deny the Motion to Convert. That ruling would be set forth in a written order.

## II. DISCUSSION

Debtor seeks to convert his case to chapter 11 pursuant to 11 U.S.C. § 706(a), which provides that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12,

or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable."

Section 706(d), however, puts a limitation on this nearly absolute right to convert, providing that: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

Before 2007, courts did not agree on whether chapter 7 debtors had an absolute right to convert to a reorganization case. That year, the Supreme Court provided an answer. The right to convert is limited. Bankruptcy judges may immediately deny "a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (footnote omitted).[1] If a chapter 11 case would simply be reconverted to chapter 7 "for cause" under 11 U.S.C. § 1112(b), the motion to convert may be denied.

"Cause" to convert or dismiss a chapter 11 case includes a number of factual scenarios that Congress listed in 11 U.S.C. § 1112(b)(4). One of the items that constitutes "cause" is the "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1112(b)(4)(P). Therefore, if Debtor failed to pay any postpetition domestic support obligation, that fact would constitute cause to convert a chapter 11 case. *See In re Hao*, 644 B.R. 339, 347 (Bankr. E.D. Va. 2022) ("The statute does not

---

[1] The fact situation in *Marrama* involved conversion from chapter 7 to chapter 13. It applies with the same force to cases in which a debtor seeks to convert from chapter 7 to chapter 11. *See In re Irmen*, No. 07 B 03103, 2008 WL 320484, at *3 (Bankr. N.D. Ill. Feb. 1, 2008).

have a threshold amount; any default in the payment of post-petition domestic support obligations constitutes cause to convert or dismiss the case."). If cause exists to immediately reconvert a chapter 11 case back to chapter 7, and there is no evidence that appointment of a trustee or examiner would better serve the interests of creditors or that there are unusual circumstances as described in § 1112(b)(2), conversion to chapter 11 is futile.

In the March 2024 Petition, Kerry alleged that Debtor had not paid his maintenance or child support obligations for January, February or March 2024. Debtor filed for relief under chapter 7 of the Bankruptcy Code on December 8, 2023, so all of these were postpetition domestic support obligations. *See* 11 U.S.C. § 101(14A) (defining "domestic support obligation" as including a debt owed to a former spouse or child, established by court order and "in the nature of alimony, maintenance, or support").

In his response to the March 2024 Petition, Debtor made the same argument to the State Court that he makes here – that although he had not paid maintenance and support from his own income, Kerry and their children had received payment from the 503(g) Trust. On March 26, 2024, the State Court held Marty in indirect civil contempt of court, ordered him to purge that contempt for failure to pay January, February and March maintenance and support by paying an additional $35,000 to the 503(g) Trust, and continued the hearing for status on his "purge of today's contempt *for failure to pay maintenance and support* or reimburse the 503(g) Trust for amounts advanced." Trustee's Ex. 5 (emphasis added).

On May 21, 2024, the State Court found Marty's argument to be a straw man:

> As previously ruled upon by this Court, Marty's obligation to reimburse the 503(g) Trust for amounts it advances to Kerry runs concurrent with, and in addition to, his obligation to pay his monthly child support, maintenance, mortgage and real estate taxes. *Marty is required both to fund the 503(g) Trust and make his monthly support obligations pursuant to the Judgment. Payment to*

7

> *the 503(g) Trust is not a substitute for the payment of his monthly support obligations.*

Trustee's Ex. 6 (emphasis added).

Yet, Debtor again argued in the Reply in support of his Motion to Convert "that because he has funded a trust set up in the divorce case for exactly that purpose (the Contempt Purge), that he is current in the payment of domestic support obligations." Reply, ¶ 9. Thus, drawing on the 503(g) Trust assets to cover unpaid maintenance and support amounts due, the Debtor argues, satisfied his court-ordered payment of such amounts. At the hearing, however, Debtor offered no evidence in support of this contention. The question of whether or not Kerry has been paid from the 503(g) Trust is a red herring. Debtor was obligated to make postpetition maintenance and support payments. Separately, he was required to fund the 503(g) Trust.

The plain language of § 1112(b)(4)(P) does not ask whether the ex-spouse is out of pocket, but whether *the debtor failed to pay* the obligation. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (when "the statute's language is plain, the sole function of the courts is to enforce it according to its terms") (quotation omitted); *Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.").

The State Court found, in orders entered in both March and May 2024, that Debtor failed to pay several postpetition domestic support obligations. If this case were in chapter 11, that failure would constitute "cause" to dismiss or convert the case under 11 U.S.C. § 1112(b)(4)(P). *See In re Kearney*, No. 17-12274 T11, 2020 WL 5534528, at *4 (Bankr. D.N.M. May 13, 2020) ("Failure to pay *any* domestic support obligation establishes cause under § 1112(b)(4)(P)."). Since there is cause to dismiss or convert a chapter 11 case, and since the Debtor has presented

no evidence that appointment of a trustee or examiner would better serve the interests of creditors or that there are unusual circumstances as described in § 1112(b)(2), it would be futile to grant the motion to convert from chapter 7.

Having found that the motion to convert will be denied, the court need not address the question of whether Debtor is eligible to a be a debtor under subchapter V of chapter 11. He is not eligible to be a debtor under chapter 11 at all.

### III. CONCLUSION

For the reasons stated above, **IT IS ORDERED THAT** the Motion to Convert is **DENIED**.

ENTERED:

Date: June 17, 2024

DAVID D. CLEARY
United States Bankruptcy Judge

9