| | |
|---|---|
| In re | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |
| IRA BODENSTEIN, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr., | |
| Plaintiff,<br>v. | Adv. No. |
| KERRY PARIS, | |
| Defendant. | |

## **COMPLAINT**

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Estate"), and for his Adversary Complaint (the "Complaint") against Defendant Kerry Paris (the "Defendant"), states as follows:

### **Introduction**

1.     This is an adversary proceeding filed by the Trustee, pursuant to 11 U.S.C. §§ 363(h), (i) and (j), for leave to sell property of the Estate, a vacant lot commonly known as 703 Park Avenue, River Forest, Illinois (the "Property"), free and clear of the interest of Defendant, Kerry Paris (the "Defendant"), a co-owner of the Property.

### **Jurisdiction and Venue**

2.     On December 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Illinois (the

"Bankruptcy Court"), thereby commencing the bankruptcy case, styled *In re Frank Martin Paris, Jr.*, Case No. 23-16481 (the "Bankruptcy Case").

3.      This adversary proceeding arises under the Bankruptcy Code and arises in the Bankruptcy Case.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

5.      This adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (M) and (O).

6.      If this Court determines that the application of the "core" label and the procedures of § 157(b) are invalid with respect to the Trustee's claims in this Complaint, such claims are related to the Bankruptcy Case within the meaning of 28 U.S.C. § 157(c), and the Trustee consents to this Court's determination of such claims under § 157(c)(2).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## Parties

8.      Plaintiff, Ira Bodenstein is the duly appointed chapter 7 trustee of the Estate.

9.      Defendant, Kerry Paris, the former spouse of the Debtor, is the co-owner with the Debtor as a tenant in common with a fifty percent (50%) ownership interest in the Property.

## Factual Background

10.     The Debtor and Defendant were married in 2002.

11.     In 2016, Defendant filed a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois (the "State Court"). The divorce proceedings have been ongoing for over 8 years. On December 2, 2022, the State Court entered its *Memorandum and Order: Judgment for Dissolution of Marriage*, dated December 2, 2022 (the "JDOM").

12.     In the JDOM, the State Court determined that the Property was a marital asset for the purposes of the divorce proceeding notwithstanding the fact that title was held in the name of Maeve LLC – Series U ("Maeve LLC").

13.     On October 26, 2023, the State Court entered an order "to clarify terms and/or correct scrivener's errors in the [JDOM]" (the "October 26 Order"). The October 26 Order clarified that the JDOM required that the Property be transferred out of the name of Maeve LLC and into the names of both the Debtor and Defendant, individually. In addition, the State Court placed a judicial lien upon the Property for the purpose of preventing the sale of the Property without Defendant's knowledge.

14.     On January 16, 2024, as required by the JDOM and the October 26 Order, Maeve LLC quitclaimed the Property to the Debtor and Defendant as tenants in common.

15.     On February 28, 2024, the Court entered the *Order Authorizing Trustee to Employ Citywide Realty LLC as Real Estate Broker and Approving Compensation Arrangement*, which authorized the Trustee to employ Citywide as his real estate broker in connection with the sale of the Property [Dkt. No. 75].

16.     After arms'-length negotiations, the Trustee entered into an agreement to sell the Property to Margaret R. Erlich ("Erlich") and Joshua R. Bartel ("Bartel," and collectively with Erlich, the "Buyer") for the amount of $660,000.00, subject to customary adjustments for real estate taxes (the "Purchase Price") pursuant to the terms of the *Multi-Board Residential Real Estate Contract 7.0*, dated as of March 1, 2024 (the "Contract"), as amended by the *Addendum to Real Estate Contract* (the "Addendum," and together with the Contract, the "Sale Agreement").

17.     On March 18, 2024, the Trustee filed the *Trustee's Motion for the Entry of an Order Authorizing the Sale of Real Estate and for Related Relief* (the "Sale Motion") [Dkt No.

86]. The Sale Motion provided Defendant with notice of the Trustee's intent to sell the Property free and clear of all liens, claims and encumbrances, including Defendant's interest. A copy of the Sale Motion is attached hereto as **Exhibit 1**.

18.     The Purchase Price is well in excess of the liens and encumbrances on the Property.

19.     Defendant, as a tenant in common of the Property, has objected to the sale of the Property [Dkt No. 129].

20.     Defendant has the right to purchase the interests of the Estate in the Property under § 363(i) of the Bankruptcy Code at the price at which the sale of the Property is to be consummated.

## COUNT I
### Sale of the Estate's Interest and the Interest of Defendant's in the Property
### (11 U.S.C. §§ 363(h), (i) and (j))

21.     The Trustee incorporates by reference the allegations set forth in paragraphs 1 through 20 above, as if fully restated herein.

22.     The Property is property of the Estate pursuant to § 541(a) of the Bankruptcy Code.

23.     As of the commencement of the Bankruptcy Case, the Debtor had an undivided interest in the Property as a tenant in common with the Defendant.

24.     The Property is a 65 foot wide vacant lot zoned only for a single family residence, and therefore, there is no practicable manner of partition other than a sale and division of the proceeds. Accordingly, partition of the Property in-kind among the Estate and Defendant is impracticable as it cannot be practically or legally subdivided. 11 U.S.C. §363(h)(1).

25.     The sale of the Estate's undivided interest in the Property would yield significantly less for the Estate than a sale free and clear of any interest by Defendant co-owner because the chilling effect that the sale of the undivided interest in the Property would have on any prospective buyer. 11 U.S.C. §363(h)(2).

26.     The benefit to the Estate of the sale of the Property free and clear of Defendant's interest outweighs the detriment, if any, to Defendant because, among other things (i) the Estate will receive substantial consideration from the sale after payment of all liens and encumbrances, (ii) the lot is vacant, and (iii) a sale will reduce accruing taxes on the Property.

27.     Further, Defendant's interest in the Property is protected because her interest will attach to the proceeds of the sale pursuant to § 363(j) of the Bankruptcy Code, after payment of all liens and encumbrances and the costs and expenses of the sale of the Property, not including the statutory compensation of the Trustee.

28.     The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. 11 U.S.C. §363(h)(4).

29.     Defendant does not have any defenses to bar the sale of her interest, and the Estate's interest, in the Property pursuant to 11 U.S.C. § 363(h).

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in his favor: (i) authorizing the Trustee to sell the interest of the Estate and the interest of Defendant in the Property to the Buyer pursuant to § 363(h) of the Bankruptcy Code; (ii) determining Defendant's rights to purchase the interests of the Estate in the Property under § 363(i) of the Bankruptcy Code; (iii) determining the distribution for the Estate and Defendant, subject to § 363(j) of the Bankruptcy Code; and (iv) granting such other and further relief that the Court deems just and proper.

Respectfully submitted,

Ira Bodenstein, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.

Dated: June 20, 2024

By:     /s/ Allen J. Guon
            One of his attorneys

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-14450
aguon@cozen.com

*Counsel for Plaintiff Trustee*

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

## <u>NOTICE OF MOTION</u>

To:     See Attached List

**PLEASE TAKE NOTICE** that on **April 10, 2024, at 10:00 a.m.**, I will appear before the Honorable Daivd D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois 60604 **or** electronically as described below, and present the **Trustee's Motion For The Entry Of An Order Authorizing The Sale Of Real Estate And For Related Relief**, a copy of which is attached.

**Important:  Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is **161 122 6457** and the passcode is **Cleary644**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

|  |  |
|---|---|
|  | Ira Bodenstein, not individually, but as chapter 7 trustee for the estate of Frank Martin Paris, Jr. |
| Dated: March 18, 2024 | By:     /s/ Allen J. Guon |
|  | One of his attorneys |

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-4450
aguon@cozen.com

## CERTIFICATE OF SERVICE

Allen J. Guon, an attorney, certifies that he caused to be served a copy of this **Notice of Motion** and the attached **Trustee's Motion For The Entry Of An Order Authorizing The Sale Of Real Estate And For Related Relief** on each entity shown on the list below at the address shown and by the method indicated on the list on March 18, 2024.

/s/ Allen J. Guon

## Mailing Information for Case 23-16481

## Electronic Mail Notice List

- **Paul M Bauch** pbauch@bmlawllc.com, smohan@bmlawllc.com;5242@notices.nextchapterbk.com
- **Ira Bodenstein** iratrustee@cozen.com, IL29@ecfcbis.com
- **Timothy W Brink** tbrink@mpslaw.com, crampich@mpslaw.com
- **Scott R Clar** sclar@cranesimon.com, mjoberhausen@cranesimon.com;asimon@cranesimon.com
- **Thomas C Cronin** tcc@cronincoltd.com
- **Sean B Crotty** scrotty@crottylaw.com, dmueller@colemanlawfirm.com;docket@crottylaw.com
- **Daniel P. Dawson** ddawson@nisen.com, adrag@nisen.com
- **Allen J Guon** aguon@cozen.com, allen-guon-6333@ecf.pacerpro.com;cknez@cozen.com
- **Steve Jakubowski** sjakubowski@robbinsdimonte.com
- **Patrick S Layng** USTPRegion11.ES.ECF@usdoj.gov
- **Thomas S. Leo** sleo@leolawpc.com, officemanager@leolawpc.com
- **Sonette Magnus** smagnus@thompsoncoburn.com
- **Ann Addis Pantoga** apantoga@thompsoncoburn.com
- **Elizabeth E Richert** erichert@crottylaw.com, docket@crottylaw.com;dmueller@crottylaw.com
- **Steven R Rogovin** srogovin@mpslaw.com, crampich@mpslaw.com
- **Carolina Y. Sales** csales@robbinsdimonte.com, mrussell@robbinsdimonte.com
- **Steven Yachik** syachik@kelleydrye.com, KDWBankruptcyDepartment@kelleydrye.com

**Manual Notice List (in the manner indicated)**

Frank Martin Paris, Jr.
1100 Keystone
River Forest, IL 60305
**(Via U.S. Mail)**

Howard P. Rosenberg
Atty. for Child's Representative
707 Skokie Boulevard – Suite 420
Northbrook, IL 60062
**(Via U.S. Mail)**

JPMorgan Chase Bank N.A.
Attn.: Collateral Department
601 Oakmont Lane, Suite 300
Westmont, IL 60559
**(Via U.S. Mail)**

JP Morgan Chase Bank N.A.
c/o Mike E. Dileo II
601 Oakmont Lane, Suite 300
Westmont, IL 60559
**(Via U.S. Mail)**

Department of the Treasury
Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346
**(Via U.S. Mail)**

Illinois Department of Revenue
Bankruptcy Unit
PO Box 19035
Springfield, IL 62794-9035
**(Via U.S. Mail)**

Cook County Treasurer's Office
Attention: Legal Department
118 North Clark Street, Room 112
Chicago, IL 60602
LBankruptcy@cookcountytreasurer.com
**(Via mail and Email)**

Blitt and Gains, P.C.
661 Glenn Ave.
Wheeling, IL 60060
**(Via U.S. Mail)**

Mauricio Gonzalez
Citywide Realty LLC
6614 S. Pulaski Rd.
Chicago, IL 60629
mauricio@citywide-realty.com
**(Via Email)**

Jonathan D. Groll
Jonathan D. Groll Ltd.
830 North Boulevard, Suite A
Oak Park, IL 60301
jonathan@groll-law.com
**(Via U.S. Mail and Email)**

David DeCelles
Assistant United States Attorney
219 S Dearborn, 5th Fl.
Chicago IL 60604
David.DeCelles@usdoj.gov
**(Via Email)**

Robert Lynch
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, IL 60601
robert.lynch2@illinois.gov
**(Via Email)**

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

**TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING
THE SALE OF REAL ESTATE AND FOR RELATED RELIEF**

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Debtor"), pursuant to 11 U.S.C. §§ 105(a), 363(b), (f), (h), (j) and (m) and Fed. R. Bankr. P. 2002 and 6004, hereby moves for the entry of an order authorizing the free and clear sale of the vacant real estate located at 703 Park Avenue, River Forest, Illinois (the "Real Estate") to Margaret R. Erlich ("Erlich") and Joshua R. Bartel ("Bartel," and collectively with Erlich, the "Buyer") for the amount of $660,000.00 pursuant to the terms of the *Multi-Board Residential Real Estate Contract 7.0*, dated as of March 1, 2024 (the "Contract"), as amended by the *Addendum to Real Estate Contract* (the "Addendum," and together with the Contract, the "Sale Agreement") and attached hereto as **Exhibit 1**; (ii) finding that the Buyer is a good-faith purchaser; and (iii) granting related relief. In support of the motion, the Trustee states as follows:

**JURISDICTION**

1.      On December 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code"), thereby commencing this chapter 7 bankruptcy case (the "Case") and creating the Debtor's estate (the "Estate").

2.      On the Petition Date, Ira Bodenstein was appointed as the chapter 7 trustee of the Estate.

3.      The Court has jurisdiction to hear this matter and enter a final order granting the

relief requested herein pursuant to 28 U.S.C. §§ 157(b)(2) and 1334 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue of

this proceeding and Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

### A.    The Real Estate

4.      On September 7, 2012, Maeve LLC – Series U ("Maeve-Series U") purchased the

Real Estate for the amount of $432,825.

5.      The Debtor and Kerry Paris ("Kerry") were married in 2002. In 2016, Kerry filed

a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois (the "State

Court"). The divorce proceedings have been ongoing for over 8 years. On December 2, 2022, the

State Court entered its *Memorandum and Order: Judgment for Dissolution of Marriage*, dated

December 2, 2022 (the "JDOM").[1] [Mot. to Clarify, Ex. A.] In the JDOM, the State Court

determined that the Real Estate was a marital asset for the purposes of the divorce notwithstanding

the fact that title was held in Maeve-Series U. (Mot. to Clarify, Ex. A, at pp. 59, 77-78.)

6.      On October 26, 2023, the State Court entered an order that required title to the Real

Estate be transferred to the Debtor and Kerry, individually. The State Court also placed a judicial

lien on the Real Estate so that it could not be sold without Kerry's knowledge. [Mot. to Clarify,

Ex. V, at ¶ 10.]

---

[1] On December 11, 2023, Kerry filed the *Emergency Motion of Kerry Paris for Order Clarifying that the Automatic Stay Does Not Apply or, in the Alternative, to Lift the Automatic Stay Nunc Pro Tunc, and Authorizing filing of Motion in Excess of 15 Pages* [ECF No. 17] (the "Motion to Clarify"). The references to the orders of the State Court are cited as exhibits to the Motion to Clarify.

7.  On January 16, 2024, as required by the State Court, Maeve-Series U quitclaimed the Real Estate to the Debtor and Kerry as tenants in common.

8.  Based a review of the information available to the Trustee, the only potential encumbrances against the Real Estate (other than accruing real estate taxes) are:

- Mortgage dated February 22, 2013 and recorded March 1, 2013, as document 1306046018 made by the Debtor and Kerry to JP Morgan Chase Bank N.A. ("Chase") in the amount of $1,300,000.00 (the "Mortgage");[2]

- Memorandum of Judgment recorded on August 28, 2019, as document 1933717135 in favor of the Child's Representative, Howard P. Rosenberg (the "Children's Representative") and against the Debtor and Kerry in the amount of $87,692.53;[3]

- Lis Pendens Notice recorded on November 20, 2023 as document 2332410026 filed in connection with the State Court proceedings;

- Tax lien recorded on September 22, 2017, as document 1726504118 in favor of the United States of America assessed against the Debtor and Kerry in the amount of $247,795.96;

- Tax lien recorded on March 15, 2019, as document 1907441069 in favor of the United States of America assessed against the Debtor and Kerry in the amount of $32,596.42;

- Tax lien recorded on January 4, 2021, as document 2520852 in favor of the State of Illinois in the amount of $34,566.38;

- Memorandum of Judgment recorded on October 5, 2017, as document1727841042 in favor of Portfolio Recovery Associates, LLC and against Kerry in the amount of $1,407.28.

9.  The Trustee believes the Debtor has substantial equity in the Real Estate that should be monetized for the benefit of the Estate and its creditors.

---

[2] Maeve-Series U was title holder for the Real Estate at the time the Mortgage was recorded.

[3] It is the Trustee's understanding that the Children's Representative will be releasing his recorded lien.

### B.    The Trustee's Employment of Citywide Realty

10.    On February 28, 2024, the Court entered the *Order Authorizing Trustee to Employ Citywide Realty LLC as Real Estate Broker and Approving Compensation Arrangement* (the "Employment Order"), which authorized the Trustee to employ Citywide as his real estate broker. [ECF No. 75.]

11.    Under the Employment Order, the Court authorized Citywide to provide brokerage services to the Trustee in accordance with the *Chicago Association of Realtors Exclusive Right to Sell Listing Agreement* as modified by the Rider (the "Listing Agreement"). [ECF No. 59, Ex. B.] The Listing Agreement contemplates the payment of a discounted commission to Citywide in the amount of five percent (5%) of the sale proceeds from a Court approved sale of the Real Estate. The commission may be shared with cooperating brokers representing buyers as is usual and customary in the real estate brokerage industry. Citywide is not required to file a fee application with the Court for payment of its commission and is authorized to receive payment from the sale proceeds after the closing. [ECF Nos. 59, 75.]

### C.    The Trustee's Marketing of the Real Estate

12.    Prior to listing the Real Estate for sale, Citywide undertook an analysis of comparable real estate sales for vacant properties in River Forest over the prior two years. During that period, a total of three comparable properties sold for the amounts of $362,000 (February 23, 2024), $450,000 (February 2, 2024) and $575,000 (July 22, 2022). Based on the prior sales, and as reflected in Citywide's retention application, Citywide recommend that the Trustee list the Real Estate for sale at $549,900. [ECF No. 59 at ¶ 9.]

13.    On February 29, 2024, Citywide began marketing the Real Estate for sale at the initial listing price of $549,900 in the Multiple Listing Service. Citywide also posted a "For Sale"

sign on the Real Estate. Citywide received several expression of interest immediately after marketing the Real Estate for sale.

14.     Between March 1, 2024 and March 5, 2024, Citywide received a total of four cash offers to purchase the Real Estate for amounts ranging from $500,000 to $660,000. The Trustee considered the amount of each offer as well as the potential purchasers' financial wherewithal to close the sale of the Real Estate. After consultation with Citywide, the Trustee determined that the Buyer's offer was the highest and best offer for the Real Estate.

**D.     The Sale Agreement for the Real Estate**

15.     After arms'-length negotiations, the Trustee entered into the Sale Agreement to sell the Real Estate to the Buyer for the amount of $660,000.00 (the "Purchase Price"), subject to customary adjustments for real estate taxes. The Sale Agreement provides that the Real Estate is being sold on an "AS IS" basis and with any and all faults and latent and patent defects and without any express or implied representation or warranty by the Trustee. Prior to the hearing on this motion, the Buyer will deposit the amount of $33,000.00 (the "Earnest Money") in escrow at Chicago Title Insurance Company as an earnest money deposit.

16.     The Sale Agreement is subject to the entry of an order authorizing the sale of the Real Estate pursuant to § 363(b) of the Bankruptcy Code approving the Sale Agreement and authorizing the Trustee to take such actions as are necessary to consummate the sale (the "Sale Order").

17.     The Trustee retains the right to market the Real Estate for higher and better offers until the entry of the Sale Order.

18.     Except for (i) the Trustee's performance of his obligations under the Sale

Agreement and (ii) the entry of the Sale Order, there are no other contingencies for Buyer's

performance of its obligation to pay the Purchase Price to the Trustee at closing.

19.     The Closing shall take place on or within three (3) business days after the entry of

the Sale Order. However, in the event that the Trustee reasonably believes that any of the

conditions of the Trustee will not be satisfied as of the date of the closing, the Trustee shall have

the right in his reasonable discretion to adjourn the closing upon written notice to Buyer to the

extent required to resolve any matters that are then preventing the satisfaction of such condition.

## RELIEF REQUESTED

20.     By this motion, the Trustee seeks the entry of the Sale Order, substantially in the

form attached hereto: (i) approving the Sale Agreement; (ii) authorizing the Trustee's free and

clear sale of the Real Estate; (ii) finding that the Buyer is a good-faith purchaser for value; and

(iii) granting related relief.

## BASIS FOR RELIEF

### A.     The Court Should Authorize the Sale of the Real Estate Pursuant to § 363(b) of the Bankruptcy Code

21.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). Fed. R. Bankr. P. 6004(f)(1) expressly permits sales of estate

property outside of the ordinary course of business by private sale or by auction. Fed. R. Bankr. P.

6004(f)(1); *see, e.g. In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("Section 363(b)

is not limited to sales involving competitive bidding. Bankruptcy Rule 6004, which sets forth

procedures for Section 363(b) transfers, expressly provides for private sales."); *In re Bakalis*, 220

B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through a private or public sale).

22.     "A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to 'great judicial deference' as long as a sound business reason is given." *In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (citations omitted*); see also United Retired Pilots Benefits Prot. Assn. v United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 572 (7th Cir. 2006) ("the criteria for approval [of a transaction other than in the ordinary course of business is] whether the transaction makes good business sense and does not disturb creditors' rights…."); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (sale under § 363 involves exercise of fiduciary duty and requires an "articulated business justification"). Courts generally approve sales outside of the ordinary course of business under § 363(b)(1) whenever such a sale is in the best interests of the estate. *See In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988).

23.     After Citywide listed the Real Estate on the MLS, the Trustee obtained several substantial cash offers for the Real Estate. The Trustee has determined, in consultation with Citywide, that the sale of the Real Estate on the terms set forth in the Sale Agreement represent a prudent and proper exercise of his business judgment and is supported by sound business reasons. The Purchase Price is the result of good faith, arm's length negotiations, and the Trustee believes that the Purchase Price is fair and reasonable. Time is also of the essence because real estate taxes continue to accrue on the Real Estate. Accordingly, the Trustee has demonstrated a sound business justification for the sale of the Real Estate.

**B.    The Court Should Authorize the Sale of the Real Estate Pursuant to § 363(h) and (j) of the Bankruptcy Code**

24.    The Trustee may sell both the Estate's interest – as well as that of Kerry's – pursuant to § 363(h) of the Bankruptcy Code. Section 363(h) permits the sale of property of the bankruptcy estate, under § 363(b), along with the interest of a co-owner of the property if, at the time of the commencement of the case, the debtor held an undivided interest in the property as a tenant in common, joint tenant or tenant by the entirety if the following conditions are met:

> (1)    partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2)    sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3)    the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4)    such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

25.    In this Case, § 363(h) of the Bankruptcy Code is satisfied because Kerry, as the co-owner of the Real Estate, consents to the sale. Even if Kerry did not consent, all four conditions of § 363(h) are met in this Case because (a) the Real Estate is a single vacant lot only 65 feet wide and any partition in kind of the Real Estate among the Estate and Kerry is impracticable; (b) sale of the Estate's undivided interest in the Real Estate would realize significantly less for the Estate than would the sale of the Real Estate free and clear of Kerry's interests therein; (c) the benefit to the Estate of a sale of the Real Estate free of and clear of any and all competing interests therein outweighs the detriment, if any, to Kerry; and (d) the Real Estate is not used in the production,

transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.[4]

26.     Pursuant to § 363(j) of the Bankruptcy Code, the Estate and the co-owner share in the costs of the sale *pro rata* according to their interests, excluding the compensation of the Trustee which is the obligation of the Estate. 11 U.S.C. § 363(j). In this Case, Kerry and the Estate each have a 50% interest in the Real Estate as tenants in common. Therefore, Kerry and the Estate will each receive 50% of the net sale proceeds, after payment of all costs and expenses of sale including broker's commissions and attorneys' fees, but not including any compensation of the Trustee.

**C.     The Court Should Authorize the Sale Free and Clear of Interests Pursuant to § 363(f) of the Bankruptcy Code**

27.     Under § 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any lien, claim, or interest (collectively, "Interests") in such property if, among other things:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As § 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to § 363(b), it is only necessary to meet one of the five conditions of § 363(f). The Trustee's satisfaction of any one of its five requirements will be sufficient to permit the sale of the Real Estate free and clear of Interests, subject to the permitted encumbrances.

---

[4] Further, an adversary proceeding under Fed. R. Bankr. P. 7001 is not required because Kerry consents to the sale.

28.     As set forth in paragraph 8 above, the Trustee is currently aware of several parties

that may assert secured claims against the Real Estate. The Trustee believes, however, that either

(i) the entities with liens will consent under § 363(f)(3), (ii) the price at which the Real Estate will

be sold is greater than the aggregate value of all liens on such property under § 363(f)(3), or (iii) the

liens are subject to a bona fide dispute under § 363(f)(4).[5] Moreover, all holders of the known

Interests can be compelled to accept a money satisfaction of such Interests in legal or equitable

proceedings in accordance with § 363(f)(5).

29.     The Trustee further proposes that any Interests in the Real Estate attach to the net

proceeds of the sale of the Real Estate.

**D.      The Court Should Find that the Buyer is a Good Faith Purchaser**

30.     The Trustee requests that the Court make a finding that the Buyer qualifies for

designation as a good faith purchaser. A good faith purchaser under § 363(m) of the Bankruptcy

Code has been defined in the case law to mean "one who purchases in 'good faith' and for 'value.'"

*Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269,

276 (2d Cir. 1997) (citing *Cumberland Farms Dairy, Inc. v. National Farmers' Org. (In re Abbotts

Dairies of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir. 1986)); *see Ewell v. Diebert (In re Ewell)*, 958

F.2d 276, 281 (9th Cir. 1992); *Badami v. Burgess (In re Burgess)*, 246 B.R. 352, 355-56 (B.A.P.

8th Cir. 2000). Section 363(m) applies to public sales as well as private sales that do not involve

competitive bidding. *See Wieboldt Stores*, 92 B.R. at 312 (<u>citing</u> *In re Youngstown Steel Tank Co.*,

27 B.R. 596, 598 (W.D. Pa. 1983)).

---

[5] The Trustee will retain special counsel to prosecute the sale motion if Chase does not consent to the sale
pursuant § 363(f)(3) or its Mortgage is subject to a bona fide dispute under § 363(f)(4).

31.     As the Seventh Circuit explained in *In re Rock Industries Machinery Corp.*, 572 F.2d 1195 (7th Cir. 1978), the "good faith" component of the test:

> speaks to the equity of [the bidder's] conduct in the course of sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Id.* at 1198; *see Kabro Assocs.*, 111 F.3d at 276; *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs. (In re Mark Bell)*, 992 F.2d 7, 8 (1st Cir. 1992); *In re Ewell*, 958 F.2d at 281.

32.     In this Case, the Trustee marketed the Real Estate with the assistance of Citywide and listed the Real Estate on the MLS. The Trustee received and considered offers for the Real Estate from four different parties. After selecting the Buyer's offer, the Trustee, with the assistance of counsel, negotiated the terms of the Sale Agreement. Further, neither the Trustee nor Citywide have any relationship with the Buyer. The Trustee accordingly believes the Buyer is a good faith purchaser of the Real Estate.

## **NOTICE**

33.     The Trustee has provided more than 21 days' notice of this Motion by mail, email or through the Court's CM/ECF system to the following persons: (i) counsel to the United States Trustee; (ii) the Debtor at his address and to his counsel; (iii) counsel for Kerry, (iv) counsel for the Buyer; (v) all entities reasonably known by the Trustee to have an Interest in the Real Estate (or their counsel where an entry of their appearance through counsel has been made in the case); and (vi) the parties on the ECF service list via CM/ECF electronic noticing.

34.     Bankruptcy Rules 2002(a)(2) and 6004(a) generally require that notice of a proposed sale of assets be sent to all creditors. In light of the active creditors in this Case, the Trustee submits that the notice provided is sufficient and appropriate under the circumstances and

that requiring notice to all creditors would result in unnecessary administrative expenses. Accordingly, the Trustee requests that this Court exercise its authority under Fed. R. Bankr. P. 2002(a)(2) and 9007 to limit notice of the sale to that already provided and that further notice be waived.

WHEREFORE, the Trustee requests that the Court enter an order, in substantially the form of the Sale Order attached hereto: (i) authorizing the Trustee's sale of the Real Estate free and clear of Interests; (ii) finding that the Buyer is a good-faith purchaser; and (iii) granting such other and further relief as is just and proper.

Respectfully submitted,

Ira Bodenstein, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.

Dated: March 18, 2024

By:    /s/ Allen J. Guon
           One of his attorneys

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-14450
aguon@cozen.com
*Proposed Counsel for Trustee*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case Number: 23-16481 |
| | ) | |
| FRANK MARTIN PARIS, JR., | ) | Chapter: 7 |
| | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |
| Debtor(s) | ) | |

**ORDER AUTHORIZING THE SALE OF 703 PARK AVENUE FREE AND CLEAR OF INTERESTS AND GRANTING RELATED RELIEF**

This matter having come before the Court upon the motion (the "Motion") of Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Debtor"), pursuant to §§ 105(a), 363(b), (f), (h), (j) and (m) of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and Rules 2002(a), 6004(a) and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting the entry of an order: (i) authorizing the free and clear sale of the real property located at 703 Park Avenue, River Forest, Illinois (the "Property") to Margaret R. Erlich ("Erlich") and Joshua R. Bartel ("Bartel," and collectively with Erlich, the "Buyer") pursuant to the terms of the Multi-Board Residential Real Estate Contract 7.0, dated as of March 1, 2024 (the "Contract"), as amended by the Addendum to Real Estate Contract (the "Addendum," and together with the Contract, the "Sale Agreement") and attached to the Motion as Exhibit 1; (ii) finding that the Buyer is a good-faith purchaser; and (iii) granting related relief; the Court having heard the statements of counsel presented in support of the relief requested in the Motion at a hearing before the Court on April 3, 2024 ("Sale Hearing"); Kerry Paris ("Kerry"), the co-owner of the Real Estate having consented to the sale; and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate and her creditors (the "Estate"), and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation; IT IS HEREBY FOUND AND DETERMINED THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.

B. The Court has jurisdiction to hear and decide the Motion, and exclusive in rem jurisdiction over the Property, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.

C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary under Bankruptcy Rule 9014, the Court expressly finds that there is no reason for delay in the implementation of this Order, and expressly directs that this Order be effective immediately upon entry.

D. The disclosures made by the Trustee in the Motion regarding the proposed sale were and are adequate under the applicable Bankruptcy Rules.

E. As evidenced by the certificate of service of the Motion that actual written notice of the Motion, the hearing, and the deadline for objections to the Motion has been afforded to the following parties: (i) counsel to the United States Trustee; (ii) the Debtor at his address and to his counsel; (iii) counsel for Kerry, (iv) the Children's Representative; (v) JPMorgan Chase Bank, N.A.; (vi) counsel for the Buyer; (vi) all entities reasonably known by the Trustee to have an Interest in the Property (or their counsel where an entry of their appearance through counsel has been made in the case); (vii) the creditors that filed proofs of claim in the case; and (viiii) the parties on the ECF service list via CM/ECF electronic noticing.

F. Limited notice of the Motion was proper, timely, adequate, and sufficient under the circumstances, was provided in accordance with §§ 363(b), (f), (h), (j) and (m) of the Bankruptcy Code and Bankruptcy Rules 2002(a), 6004(a), and 9007, and no other or further notice is required.

G. There is a sound business purpose for the sale of the Real Estate to Buyer by the Trustee outside of the ordinary course of business. The consideration to be paid by Buyer pursuant to the Sale Agreement: (i) is fair and reasonable and (ii) constitutes reasonably equivalent value and fair consideration. Consummation of the transaction contemplated in the Sale Agreement will provide the highest and best value for the Real Estate, and is in the best interests of the Estate. The decision to enter into the Sale Agreement and consummate the transactions contemplated thereunder was based on sound business judgment, in compliance with the Trustee's duties.

H. The transactions contemplated under the Sale Agreement were negotiated at arm's length, without collusion, and in good faith for purposes of § 363(m) of the Bankruptcy Code. The Buyer is a good faith purchaser and is therefore entitled to all of the protections afforded under § 363(m) of the Bankruptcy Code. The Trustee and Buyer have not engaged in any conduct that would permit the Sale Agreement or any transaction contemplated thereunder to be avoided under § 363(n) of the Bankruptcy Code.

I. The consummation of the sale pursuant to the Sale Agreement will be a legal, valid, and effective sale of the Real Estate, and will vest Buyer with all right, title, and interest of the Estate in and to the Real Estate free and clear of all claims, liens, encumbrances and other interests (all of the foregoing, but specifically excluding the Permitted Exceptions (defined below) with respect to the Real Estate (the "Interests"). The transfer of the Real Estate shall remain subject to all the permitted exceptions identified in the Sale Agreement (the "Permitted Exceptions").

J. With respect to any party asserting any Interest in the Real Estate, the sale complies with at least one of the requirements of § 363(f) of the Bankruptcy Code, and with respect to each Interest in the Real Estate: (a) applicable non-bankruptcy law permits the sale free and clear of such Interest; (b) the holder of such Interest has consented to the sale; (c) such Interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Real Estate; (d) such Interest is the subject of a bona fide dispute; or (e) the holder of such Interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest.

K. Any holders of Interests that may object are adequately protected by having their Interests, if any, attach to the sale proceeds with the same validity, priority and effect and to the same extent that existed immediately prior to the consummation of the sale and in all cases subject to any and all rights, claims and defenses that the Debtor may have with respect thereto.

L. The Trustee is authorized to sell both the Estate's and Kerry's interests in the Real Estate pursuant

to § 363(h) of the Bankruptcy Code without the need for an adversary proceeding because (i) Kerry has consented to the sale and (ii) the sale otherwise satisfies the conditions of § 363(h) of the Bankruptcy Code.

M. Any party with any Interest in the Real Estate who did not object to the Motion, or who withdrew its objection to the Motion, is deemed to have consented to the sale pursuant to § 363(f)(2) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is granted as set forth herein.

2. All objections and responses to the Motion, if any, are hereby resolved in accordance with the terms of this Order. To the extent such objections or responses were not otherwise overruled, withdrawn, waived, settled, or resolved, they, and all reservations of rights included therein, are hereby overruled and denied.

3. The Sale Agreement and all transactions contemplated thereunder are approved in all respects pursuant to § 363(b) of the Bankruptcy Code. The Trustee is authorized to perform his obligations under, and consummate the transactions contemplated by the Sale Agreement and all other agreements and documents related to and contemplated thereby, and to take such other actions as are necessary or appropriate to effectuate such transactions.

4. Except as expressly permitted or otherwise specifically provided for in the Sale Agreement or this Order, pursuant to § 363(f) of the Bankruptcy Code, the Real Estate shall be transferred to the Buyer, and as of the date ("Closing Date") of the closing of the transactions contemplated in the Sale Agreement ("Closing"), shall be free and clear of all Interests with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have as against the Real Estate, subject to any claims and defenses the Trustee and the Estate may possess with respect thereto.

5. Pursuant to § 363(h) of the Bankruptcy Code, as of the Closing, the Real Estate shall be transferred to the Buyer, shall be free and clear of the co-ownership Interests of Kerry.

6. The Trustee is authorized to pay after Closing, without further Court order, all sale related costs and expenses, including, but not limited to, closing costs, real estate taxes, title insurance, recording fees and commissions due to Citywide Realty, LLC from the proceeds of the sale of the Real Estate (the "Sale Costs"). The Sale Costs, plus and additional amount reserved for attorneys' fees and expenses incurred by the Estate in connection with the sale of the Real Estate and the transactions contemplated herein are collectively referred to as "Sale Expenses.

7. Pursuant to § 363(j) of the Bankruptcy Code, the Trustee is authorized to pay to Kerry after Closing, without further Court order, fifty percent (50%) of the proceeds from the sale received by the Estate after deduction and reservation for all Sale Expenses. The Sale Expenses shall be reconciled by the Trustee and Kerry after the Trustee's attorneys fees and expenses are approved by the Court and paid to the appropriate party without further Court order.

8. The transfer of the Real Estate to the Buyer pursuant to the Sale Agreement shall constitute a legal, valid and effective transfer of the Real Estate, and shall vest the Buyer with all right, title and interest of

the Estate in and to the Real Estate free and clear of all Interests, other than the Permitted Encumbrances.

9. On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their Interests in the Real Estate, if any, as such Interests may have been recorded or may otherwise exist.

10. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Real Estate shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Real Estate or otherwise, then (a) the Trustee is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Real Estate, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Real Estate of any kind or nature whatsoever.

11. The consideration provided by Buyer for the Real Estate under the Sale Agreement is fair and reasonable, and the sale of the Real Estate shall not be subject to avoidance under § 363(n) of the Bankruptcy Code.

12. The transactions contemplated by the Sale Agreement are undertaken by the Buyer in good faith, as that term is used in § 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to the Buyer, unless such authorization is duly stayed pending such appeal prior to the Closing. The Buyer is a purchaser in good faith of the Real Estate, and the Buyer is entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

13. The failure to specifically include any particular provisions of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety. In the event of a conflict between this Order and the Sale Agreement, this Order shall control.

14. Except as expressly set forth in the Sale Agreement, the Trustee is transferring the Real Estate "As Is and Where Is" and the Trustee makes no, and disclaims any, representation or warranty to Buyer or any other party with respect to the transaction contemplated by the Sale Agreement, including, without limitation, the extent to which the Estate has any right or interest in any of the Real Estate, any warranty of merchantability or fitness for a particular purpose, or any other warranty or representation regarding the Real Estate.

15. The Sale Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further Court order, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor or the Estate.

16. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Sale Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the

Debtor is a party, and to adjudicate, if necessary, any and all disputes or actions concerning or relating in any way to the sale.

17. Pursuant to Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry and the Trustee and Buyer are authorized to close the sale under the Sale Agreement immediately upon entry of this Order.

Enter:

Dated:                                            United States Bankruptcy Judge

**Prepared by:**
Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-4450
aguon@cozen.com

# EXHIBIT A

# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0

1 **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties."
2 Buyer Name(s) *[PLEASE PRINT]* **Margaret R. Erlich , Joshua R. Bartel**
3 Seller Name(s) *[PLEASE PRINT]* **Owner of Record**
4 **If Dual Agency applies, check here ☐ and complete Optional Paragraph 29.**

5 **2. THE REAL ESTATE:** Real Estate is defined as the property, all improvements, the fixtures and Personal Property
6 included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with
7 approximate lot size or acreage of **65 x 201** commonly known as:

8 **703 Park Ave**            **River Forest**      **IL**      **60305**    **Cook**
9 Address                              City                              State      Zip        County
10 Permanent Index Number(s): **15121030290000**    ☐ Single Family Attached ☐ Single Family Detached ☐ Multi-Unit
11 If Designated Parking is Included: # of space(s) _____, identified as space(s) # _____, location _____
12 *[CHECK TYPE]* ☐ deeded space, PIN: _____    ☐ limited common element ☐ assigned space.
13 **If Designated Storage is Included:** # of space(s) _____; identified as space(s) # _____; location _____
14 *[CHECK TYPE]* ☐ deeded space, PIN: _____    ☐ limited common element ☐ assigned space.

15 **3. FIXTURES AND PERSONAL PROPERTY AT NO ADDED VALUE:** All of the fixtures and included Personal Property
16 are owned by Seller and to Seller's knowledge are in operating condition on Date of Acceptance, unless otherwise
17 stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing, and well systems
18 together with the following items at no added value by Bill of Sale at Closing *[CHECK OR ENUMERATE APPLICABLE ITEMS]*:

| | | | |
|---|---|---|---|
| 19 __ Refrigerator | __ Wine/Beverage Refrigerator | __ Light Fixtures, as they exist | __ Fireplace Gas Log(s) |
| 20 __ Oven/Range/Stove | __ Sump Pump(s) | __ Built-in or attached shelving | __ Smoke Detectors |
| 21 __ Microwave | __ Water Softener (unless rented) | __ All Window Treatments & Hardware | __ Carbon Monoxide Detectors |
| 22 __ Dishwasher | __ Central Air Conditioning | Satellite Dish | __ Invisible Fence System, Collar & Box |
| 23 __ Garbage Disposal | __ Central Humidifier | __ Wall Mounted Brackets (AV/TV) | __ Garage Door Opener(s) |
| 24 __ Trash Compactor | __ Central Vac & Equipment | __ Security System(s) (unless rented) | with all Transmitters |
| 25 __ Washer | __ All Tacked Down Carpeting | __ Intercom System | __ Outdoor Shed |
| 26 __ Dryer | __ Existing Storms & Screens | __ Electronic or Media Air Filter(s) | __ Outdoor Playset(s) |
| 27 __ Attached Gas Grill | __ Window Air Conditioner(s) | __ Backup Generator System | __ Planted Vegetation |
| 28 __ Water Heater | __ Ceiling Fan(s) | __ Fireplace Screens/Doors/Grates | __ Hardscape |

29 **Other Items Included at No Added Value:** _____
30 **Items Not Included:** _____
31 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
32 operating condition at Possession except: _____
33 A system or item shall be deemed to be in operating condition if it performs the function for which it is intended,
34 regardless of age, and does not constitute a threat to health or safety.
35 **If Home Warranty applies, check here ☐ and complete Optional Paragraph 32.**

36 **4. PURCHASE PRICE AND PAYMENT:** The Purchase Price is $ **660,000** . After the payment of Earnest
37 Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing in
38 "Good Funds" as defined by law.

39    a)  **CREDIT AT CLOSING:** *[IF APPLICABLE]* Provided Buyer's lender permits such credit to show on the final
40 settlement statement or lender's closing disclosure, **and if not, such lesser amount as the lender permits**, Seller
41 agrees to credit $ **--** to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

42    b)  **EARNEST MONEY:** Earnest Money of $ **25,000** shall be tendered to Escrowee on or before **2**
43 Business Days after Date of Acceptance. Additional Earnest Money, if any, of $ **--** shall be tendered
44 by **--** , 20 ___. Earnest Money shall be held in trust for the mutual benefit of the Parties by

*Buyer Initial* [signature MB] *Buyer Initial* [signature JRB]        *Seller Initial* _____ *Seller Initial* _____
*Address:* **703 Park Ave, River Forest, IL 60305**                      *v7.0*
*Page 1 of 13*

45   *[CHECK ONE]*: ❑ Seller's Brokerage; ❑ Buyer's Brokerage; ☑ As otherwise agreed by the Parties, as "Escrowee".

46   **In the event the Contract is declared null and void or is terminated, Earnest Money shall be disbursed pursuant to Paragraph 26.**

47   c)   **BALANCE DUE AT CLOSING:** The Balance Due at Closing shall be the Purchase Price, plus or minus

48   prorations, less Earnest Money paid, less any credits at Closing, and shall be payable in Good Funds at Closing.

49   **5.  CLOSING:** Closing shall be on <u>1 week after acceptance</u>, 20 ____ or at such time as mutually agreed by the Parties in

50   writing. Closing shall take place at the escrow office of the title insurance company, its underwriter, or its issuing

51   agent that will issue the Owner's Policy of Title Insurance, whichever is situated nearest the Real Estate.

52   **6.  POSSESSION:** Unless otherwise provided in Optional Paragraph 35, Seller shall deliver possession to Buyer at

53   Closing. Possession shall be deemed to have been delivered when Seller and all occupants (if any) have vacated

54   the Real Estate and delivered keys to the Real Estate to Buyer or to the office of the Seller's Brokerage.

55   **7.  FINANCING:** *[INITIAL ONLY ONE OF THE FOLLOWING SUBPARAGRAPHS a, b, or c]*

56   ____ ____ ____ ____   a)  ~~LOAN CONTINGENCY: Not later than forty-five (45) days after Date of Acceptance or five~~

57   **(5) Business Days prior to the date of Closing**, whichever is earlier, ("Loan Contingency Date") Buyer shall

58   provide written evidence from Buyer's licensed lending institution confirming that Buyer has received loan

59   approval subject only to "at close" conditions, matters of title, survey, and matters within Buyer's control for a loan

60   as follows: *[CHECK ONE]* ❑ fixed; ❑ adjustable; *[CHECK ONE]* ❑ conventional; ❑ FHA; ❑ VA; ❑ USDA;

61   ❑ other _____ loan for ____ % of the Purchase Price, plus private mortgage insurance (PMI),

62   if required, with an interest rate (initial rate if an adjustable rate mortgage used) not to exceed ____ % per annum,

63   amortized over not less than ____ years. Buyer shall pay discount points not to exceed ____ % of the loan amount.

64   Buyer shall pay origination fee(s), closing costs charged by lender, and title company escrow closing fees.

65   If Buyer, having applied for the loan specified above, is unable to provide such loan approval and serves Notice to

66   Seller not later than the Loan Contingency Date, this Contract shall be null and void. If Buyer is unable to provide

67   such written evidence not later than the date specified herein or by any extension date agreed to by the Parties,

68   Seller shall have the option of declaring this Contract terminated by giving Notice to Buyer. If prior to the Seller

69   serving such Notice to terminate, Buyer provides written evidence of such loan approval, this Contract shall remain

70   in full force and effect.

71   Upon the expiration of ten (10) Business Days after Date of Acceptance, if Buyer has failed to make a loan

72   application and pay all fees required for such application to proceed and the appraisal to be performed, Seller shall

73   have the option to declare this Contract terminated by giving Notice to Buyer not later than five (5) Business Days

74   thereafter or any extension thereof agreed to by the Parties in writing.

75   **A Party causing delay in the loan approval process shall not have the right to terminate under this**

76   **subparagraph. In the event neither Party elects to declare this Contract terminated as specified above, or as**

77   **otherwise agreed, then this Contract shall continue in full force and effect without any loan contingencies.**

78   **Unless otherwise provided in Paragraph 30, this Contract is not contingent upon the sale and/or closing of**

79   **Buyer's existing real estate.** Buyer shall be deemed to have satisfied the financing conditions of this subparagraph

80   if Buyer obtains a loan approval in accordance with the terms of this subparagraph even though the loan is

81   conditioned on the sale and/or closing of Buyer's existing real estate.

82   If Buyer is seeking FHA, VA, or USDA financing, **required amendments and disclosures shall be attached to this**

83   ~~Contract. If VA, the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP), shall be paid by Buyer.~~

84   ____ ____ ____ ____   b)  **CASH TRANSACTION WITH NO MORTGAGE:** *[ALL CASH]* If this selection is made, Buyer will pay

85   at Closing, in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer,

86   that Buyer has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above

87   representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to

88   Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds

*Buyer Initial* _____   *Buyer Initial* _____         *Seller Initial* _____   *Seller Initial* _____

*Address:* **703 Park Ave, River Forest, IL 60305** _____   *v7.0*

Page 2 of 13

89    to close. Buyer understands and agrees that, so long as Seller has fully complied with Seller's obligations under this
90    Contract, any act or omission outside of the control of Seller, whether intentional or not, that prevents Buyer from
91    satisfying the Balance Due at Closing, shall constitute a material breach of this Contract by Buyer. The Parties shall
92    share the title company escrow closing fee equally. **Unless otherwise provided in Paragraph 30, this Contract shall**
93    **not be contingent upon the sale and/or closing of Buyer's existing real estate.**

94    ~~_____ c) **CASH TRANSACTION, MORTGAGE ALLOWED.** If this selection is made, Buyer will pay at closing,~~
95    ~~in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer, that Buyer~~
96    ~~has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above~~
97    ~~representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to~~
98    ~~Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds~~
99    ~~to close. Notwithstanding such representation, Seller agrees to reasonably and promptly cooperate with Buyer so that~~
100   ~~Buyer may apply for and obtain a mortgage loan or loans including but not limited to providing access to the Real~~
101   ~~Estate to satisfy Buyer's obligations to pay the Balance Due at Closing. Such cooperation shall include the performance~~
102   ~~in a timely manner of all of Seller's pre-closing obligations under this Contract. **This Contract shall NOT be contingent**~~
103   ~~**upon Buyer obtaining financing.** Buyer understands and agrees that, so long as Seller has fully complied with Seller's~~
104   ~~obligations under this Contract, any act or omission outside of the control of Seller, whether intentional or not, that~~
105   ~~prevents Buyer from satisfying the Balance Due at Closing shall constitute a material breach of this Contract by Buyer.~~
106   ~~Buyer shall pay the title company escrow closing fee if Buyer obtains a mortgage; provided however, if Buyer elects~~
107   ~~to close without a mortgage loan, the Parties shall share the title company escrow closing fee equally. **Unless otherwise**~~
108   ~~**provided in Paragraph 30, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing**~~
109   ~~**real estate.**~~

110   **8. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
111   *[CHECK ONE]* ❑ has ☑ has not received a completed Illinois Residential Real Property Disclosure;
112   *[CHECK ONE]* ☑ has ❑ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home;"
113   *[CHECK ONE]* ❑ has ☑ has not received a Lead-Based Paint Disclosure;
114   *[CHECK ONE]* ☑ has ❑ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions;"
115   *[CHECK ONE]* ❑ has ☑ has not received the Disclosure of Information on Radon Hazards.

116   **9. PRORATIONS:** The requirements contained in this paragraph shall survive the Closing. Proratable items shall
117   be prorated to and including the Date of Closing and shall include without limitation, general real estate taxes,
118   rents and deposits (if any) from tenants; Special Service Area or Special Assessment Area tax for the year of Closing
119   only; utilities, water and sewer, pre-purchased fuel; and Homeowner or Condominium Association fees (and
120   Master/Umbrella Association fees, if applicable). Accumulated reserves of a Homeowner/Condominium
121   Association(s) are not a proratable item.

122   a)   The general real estate taxes shall be prorated to and including the date of Closing based on __**100**__ % of
123   the most recent ascertainable full year tax bill. All general real estate tax prorations shall be final as of Closing,
124   except as provided in Paragraph 23. If the amount of the most recent ascertainable full year tax bill reflects a
125   homeowner, senior citizen, disabled veteran or other exemption, a senior freeze or senior deferral, then Seller
126   has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental
127   entity, before or after Closing, to preserve said exemption(s). **The proration shall not include exemptions to**
128   **which the Seller is not lawfully entitled.**

129   ~~b)   Seller represents, if applicable, that as of Date of Acceptance Homeowner/Condominium Association(s)~~
130   ~~fees are $ _____ per _____ (and, if applicable, Master/Umbrella Association fees are~~
131   ~~$ _____ per _____). Seller agrees to pay prior to or at Closing the remaining balance of any~~
132   ~~special assessments by the Association(s) confirmed prior to Date of Acceptance.~~

*Buyer Initial* [signature] *Buyer Initial* [signature]          *Seller Initial* _____ *Seller Initial* _____
*Address:* **703 Park Ave, River Forest, IL 60305** _____ *v7.0*

133    c) ~~Special Assessment Area or Special Service Area installments due after the year of Closing shall not be~~
134    ~~proratable items and shall be paid by Buyer, unless otherwise provided by ordinance or statute.~~

135 ~~**10. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective~~
136 ~~Parties, by Notice, may:~~

137    a)   Approve this Contract; or

138    b)   Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or

139    c)   Propose modifications to this Contract, except for the Purchase Price, which proposal shall be conclusively
140    deemed a counteroffer notwithstanding any language contained in any such proposal purporting to state the
141    proposal is not a counteroffer. If after expiration of ten (10) Business Days after Date of Acceptance written
142    agreement has not been reached by the Parties with respect to resolution of all proposed modifications, either
143    Party may terminate this Contract by serving Notice, whereupon this Contract shall be immediately deemed
144    terminated; or

145    d)   Offer proposals specifically referring to this subparagraph d) which shall not be considered a counteroffer.
146    Any proposal not specifically referencing this subparagraph d) shall be deemed made pursuant to
147    subparagraph c) as a modification. If proposals made with specific reference to this subparagraph d) are not
148    agreed upon, **neither** Buyer nor Seller may declare this contract null and void, and this contract shall remain
149    in full force and effect.

150 **If Notice of disapproval or proposed modifications is not served within the time specified herein, the**
151 **provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force**
152 **and effect. If Notice of termination is given, said termination shall be absolute and the Contract rendered null**
153 **and void upon the giving of Notice, notwithstanding any language proffered by any Party purporting to permit**
154 ~~**unilateral reinstatement by withdrawal of any proposal(s).**~~

155 **11. WAIVER OF PROFESSIONAL INSPECTIONS:** *[INITIAL IF APPLICABLE]* _____ Buyer acknowledges
156 the right to conduct inspections of the Real Estate and hereby waives the right to conduct any such inspections of
157 the Real Estate, and further agrees that the provisions of Paragraph 12 shall not apply.

158 ~~**12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** *[NOT APPLICABLE IF PARAGRAPH 11 IS INITIALED]*~~
159 Buyer may conduct at Buyer's expense (unless payment for such expense is otherwise required by governmental
160 regulation) any or all of the following inspections of the Real Estate by one or more licensed or certified inspection
161 services: home, radon, environmental, lead-based paint, lead-based paint hazards or wood-destroying insect
162 infestation, or any other inspections desired by Buyer in the exercise of reasonable due diligence. Seller agrees to
163 make all areas of the Real Estate accessible for inspection(s) upon reasonable notice and to have all utilities turned
164 on during the time of such inspections. Buyer shall indemnify Seller and hold Seller harmless from and against
165 any loss or damage caused by any acts of Buyer or any person performing any inspection on behalf of Buyer.

166    a)   The request for repairs shall cover only the major components of the Real Estate, limited to central heating
167    and cooling system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings,
168    floors, appliances and foundation. A major component shall be deemed to be in operating condition, and
169    therefore not defective within the meaning of this paragraph, if it does not constitute a current threat to health
170    or safety, and performs the function for which it is intended, regardless of age or if it is near or at the end of its
171    useful life. Minor repairs, routine maintenance items and painting, decorating or other items of a cosmetic
172    nature, no matter the cost to remedy same, do not constitute defects, are not a part of this contingency and shall
173    not be a basis for the Buyer to cancel this Contract. **A request by Buyer for credits or repairs in violation of**
174    **the terms of this subparagraph shall allow Seller to declare this Contract terminated and direct the return**
175    ~~**of Buyer's Earnest Money.** If radon mitigation is performed, Seller shall pay for any retest.~~

176 b) Buyer shall serve Notice upon Seller or Seller's attorney of any major component defects disclosed by any
177 inspection for which Buyer requests resolution by Seller within five (5) Business Days (ten (10) calendar
178 days for a lead-based paint or lead-based paint hazard inspection) after Date of Acceptance. **Buyer shall not send**
179 **any portion of the inspection report with the Notice provided under this subparagraph unless such**
180 **inspection report, or any part thereof, is specifically requested in writing by Seller or Seller's attorney.** If
181 after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by
182 the Parties with respect to resolution of all inspection issues, either Party may terminate this Contract by
183 serving Notice to the other Party, whereupon this Contract shall be immediately deemed terminated.

184 c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
185 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller within
186 five (5) Business Days after Date of Acceptance, this Contract shall be null and void. Said Notice shall not
187 include any portion of the inspection reports unless requested by Seller.

188 d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a**
189 **waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain**
190 **in full force and effect.**

191 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
192 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
193 Days after Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice with proof**
194 **of same to Seller within the time specified, this Contract shall be null and void. If Notice is not served within**
195 **the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in**
196 **full force and effect.**

197 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
198 located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to**
199 **Seller within ten (10) Business Days after Date of Acceptance or by the Loan Contingency Date, whichever is**
200 **later, Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
201 Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

202 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** *[IF APPLICABLE]* The Parties agree that the terms
203 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting
204 terms, and shall apply to property subject to the Illinois Condominium Property Act and the Common Interest
205 Community Association Act or other applicable state association law ("Governing Law").

206 a) Title when conveyed shall be good and merchantable, subject to terms and provisions of the Declaration of
207 Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all amendments; public and
208 utility easements including any easements established by or implied from the Declaration/CCRs or
209 amendments thereto; party wall rights and agreements; limitations and conditions imposed by the Governing
210 Law; installments due after the date of Closing of general assessments established pursuant to the Declaration/CCRs.

211 b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for
212 all special assessments confirmed prior to Date of Acceptance.

213 c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
214 Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement relative to
215 payment thereof. Absent such agreement either Party may declare the Contract null and void.

216 d) Seller shall, within ten (10) Business Days from Date of Acceptance, apply for those items of disclosure
217 upon sale as described in the Governing Law, and provide same in a timely manner, but no later than the time
218 period provided for by law. This Contract is subject to the condition that Seller be able to procure and provide
219 to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to purchase created by the

*Buyer Initial* _____ *Buyer Initial* _____      *Seller Initial* _____ *Seller Initial* _____
*Address:* **703 Park Ave, River Forest, IL 60305** _____ *v7.0*
*Page 5 of 13*

220　~~Declaration/CCRs. In the event the Condominium Association requires the personal appearance of Buyer or~~
221　~~additional documentation, Buyer agrees to comply with same.~~

222　~~e)　In the event the documents and information provided by Seller to Buyer disclose that the existing~~
223　~~improvements are in violation of existing rules, regulations or other restrictions or that the terms and~~
224　~~conditions contained within the documents would unreasonably restrict Buyer's use of the Real Estate or~~
225　~~would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then~~
226　~~Buyer may declare this Contract null and void by giving Notice to Seller within five (5) Business Days after the~~
227　~~receipt of the documents and information required by this paragraph, listing those deficiencies which are~~
228　~~unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have waived~~
229　~~this contingency, and this Contract shall remain in full force and effect.~~

230　~~f)　Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured~~

231　**16.　THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
232　merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
233　appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
234　otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to:
235　covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not
236　interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and payable
237　at the time of Closing.

238　**17.　MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**

239　a)　The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
240　closing inspection or disclosure requirement, municipal Transfer Tax or other similar ordinances. Cost of
241　transfer taxes, inspection fees, and any repairs required by an inspection pursuant to municipal ordinance shall
242　be paid by the Party designated in such ordinance unless otherwise agreed to by the Parties.

243　b)　The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
244　Revenue Code, the Foreign Investment in Real Property Tax Act (FIRPTA), and the Real Estate Settlement
245　Procedures Act of 1974, as amended.

246　**18.　TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
247　customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
248　commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a
249　title company licensed to operate in the State of Illinois, issued on or subsequent to Date of Acceptance, subject
250　only to items listed in Paragraph 16 and shall cause a title policy to be issued with an effective date as of Closing.
251　The requirement to provide extended coverage shall not apply if the Real Estate is vacant land. The commitment
252　for title insurance furnished by Seller will be presumptive evidence of good and merchantable title as therein
253　shown, subject only to the exceptions therein stated. **If the title commitment discloses any unpermitted**
254　**exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to**
255　**Buyer, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title**
256　**insurer commit to either insure against loss or damage that may result from such exceptions or survey matters**
257　**or insure against any court-ordered removal of the encroachments.** If Seller fails to have such exceptions waived
258　or insured over prior to Closing, Buyer may elect to take title as it then is with the right to deduct from the Purchase
259　Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish to Buyer at Closing an Affidavit
260　of Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
261　Insurance Policy.

262　~~**19.　PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a~~
263　~~condominium, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms~~

264 ~~to the current Minimum Standard of Practice for boundary surveys, is dated not more than six (6) months prior to~~
265 ~~the date of Closing, and is prepared by a professional land surveyor licensed to practice land surveying under the~~
266 laws of the State of Illinois. The Plat of Survey shall show visible evidence of improvements, rights of way,
267 easements, use and measurements of all parcel lines. The land surveyor shall set monuments or witness corners at
268 all accessible corners of the land. **All such corners shall also be visibly staked or flagged.** The Plat of Survey shall
269 include the following statement placed near the professional land surveyor's seal and signature: "This professional
270 service conforms to the current Illinois Minimum Standards for a boundary survey." A Mortgage Inspection, as
271 defined, is not a boundary survey and is not acceptable.

272 **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the Real
273 Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
274 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
275 Earnest Money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
276 condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
277 Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace
278 damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall
279 be applicable to this Contract, except as modified by this paragraph.

280 **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean condition.
281 All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at
282 Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate, fixtures and
283 included Personal Property prior to Possession to verify that the Real Estate, improvements and included Personal
284 ~~Property are in substantially the same condition as of Date of Acceptance, normal wear and tear excepted.~~

285 **22. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing.
286 Seller represents that with respect to the Real Estate, Seller has no knowledge of, nor has Seller received any written
287 notice from any association or governmental entity regarding:

288   a)  zoning, building, fire or health code violations that have not been corrected;
289   b)  any pending rezoning;
290   c)  boundary line disputes;
291   d)  any pending condemnation or Eminent Domain proceeding;
292   e)  easements or claims of easements not shown on the public records;
293   f)  any hazardous waste on the Real Estate;
294   g)  real estate tax exemption(s) to which Seller is not lawfully entitled; or
295   h)  any improvements to the Real Estate for which the required initial and final permits were not obtained.
296 Seller further represents that:
297 *[INITIALS]* _____ There *[CHECK ONE]* ❏ are ☑ are not improvements to the Real Estate which are not
298 included in full in the determination of the most recent tax assessment.
299 *[INITIALS]* _____ There *[CHECK ONE]* ❏ are ☑ are not improvements to the Real Estate which are eligible
300 for the home improvement tax exemption.
301 *[INITIALS]* _____ There *[CHECK ONE]* ❏ is ☑ is not an unconfirmed pending special assessment affecting
302 the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
303 *[INITIALS]* _____ The Real Estate *[CHECK ONE]* ❏ is ☑ is not located within a Special Assessment Area or
304 Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
305 All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
306 matters that require modification of the representations previously made in this Paragraph 22, Seller shall

Buyer Initial _____   Buyer Initial _____   Seller Initial _____   Seller Initial _____
Address: **703 Park Ave, River Forest, IL 60305** _____   v7.0

307 promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
308 terminate this Contract by Notice to Seller and this Contract shall be null and void.

309 **23. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
310 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
311 escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
312 Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes shall
313 be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after proration
314 shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's obligation
315 after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly upon
316 demand.

317 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal holidays.
318 Business Hours are defined as 8 a.m. to 6 p.m. Chicago time. In the event the Closing or Loan Contingency Date
319 described in this Contract does not fall on a Business Day, such date shall be the next Business Day.

320 **25. ELECTRONIC OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
321 executing, negotiating, finalizing, and amending this Contract, and delivery thereof by one of the following
322 methods shall be deemed delivery of this Contract containing original signature(s). An acceptable facsimile
323 signature may be produced by scanning an original, hand-signed document and transmitting same by electronic
324 means. An acceptable digital signature may be produced by use of a qualified, established electronic security
325 procedure mutually agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an
326 established, mutually acceptable electronic method, such as creating a PDF ("Portable Document Format")
327 document incorporating the digital signature and sending same by electronic mail.

328 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
329 Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
330 refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
331 competent jurisdiction."

332 In the event either Party has declared the Contract null and void or the transaction has failed to close as provided
333 for in this Contract and if Escrowee has not received joint written direction by the Parties or such court order, the
334 Escrowee may elect to proceed as follows:

335   a)  Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
336       prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee intends
337       to disburse in the absence of any written objection. If no written objection is received by the date indicated in
338       the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice to the Parties.
339       **If any Party objects in writing** to the intended disbursement of Earnest Money then Earnest Money shall be
340       held until receipt of joint written direction from all Parties or until receipt of an order of a court of competent jurisdiction.

341   b)  Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
342       resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds deposited
343       with the Court the amount necessary to reimburse Escrowee for court costs and reasonable attorney's fees
344       incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to reimburse Escrowee
345       for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify Escrowee for additional
346       costs and fees incurred in filing the Interpleader action.

347 **27. NOTICE:** Except as provided in Paragraph 30 c) 2) regarding the manner of service for "kick-out" Notices, all
348 Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
349 any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:

350   a)  By personal delivery; or

*Buyer Initial* _____  *Buyer Initial* _____   *Seller Initial* _____  *Seller Initial* _____
*Address:* **703 Park Ave, River Forest, IL 60305** _____ *v7.0*

Page 8 of 13

351   b)   By mailing to the addresses recited herein on Page 13 by regular mail and by certified mail, return receipt
352   requested. Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or

353   c)   By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
354   Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted during
355   non-business hours, the effective date and time of Notice is the first hour of the next Business Day after transmission; or

356   d)   By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
357   attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
358   transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective date
359   and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may opt out
360   of future e-mail Notice by any form of Notice provided by this Contract; or

361   e)   By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
362   following deposit with the overnight delivery company.

363   f)   If a Party fails to provide contact information herein, as required, Notice may be served upon the Party's
364   Designated Agent in any of the manners provided above.

365   g)   The Party serving a Notice shall provide courtesy copies to the Parties' Designated Agents. Failure to provide
366   such courtesy copies shall not render Notice invalid.

367   **28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the Parties
368   are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to collect
369   reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

370   **THE FOLLOWING NUMBERED PARAGRAPHS ARE A PART OF THIS CONTRACT ONLY IF INITIALED BY THE PARTIES.**

371   *[INITIALS]* ____ ____ ____ ____   **29. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
372   consented to _____ *[LICENSEE]* acting as a Dual Agent in providing brokerage services on
373   their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in
374   this Contract.

375   ____ ____ ____ ____   **30. SALE OF BUYER'S REAL ESTATE:**

376   a)   **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:

377   1)   Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:

378   _____ .
379   Address                                              City                    State              Zip

380   2)   Buyer *[CHECK ONE]* ❏ has ❏ has not entered into a contract to sell Buyer's real estate.
381   If Buyer has entered into a contract to sell Buyer's real estate, that contract:
382   a)   *[CHECK ONE]* ❏ is ❏ is not subject to a mortgage contingency.
383   b)   *[CHECK ONE]* ❏ is ❏ is not subject to a real estate sale contingency.
384   c)   *[CHECK ONE]* ❏ is ❏ is not subject to a real estate closing contingency.

385   3)   Buyer *[CHECK ONE]* ❏ has ❏ has not publicly listed Buyer's real estate for sale with a licensed real estate broker
386   and in a local multiple listing service.

387   4)   If Buyer's real estate is not publicly listed for sale with a licensed real estate broker and in a local multiple
388   listing service, Buyer *[CHECK ONE]*:
389   a)   ❏ Shall publicly list real estate for sale with a licensed real estate broker who will place it in a local
390   multiple listing service within five (5) Business Days after Date of Acceptance.
391   *[FOR INFORMATION ONLY]* Broker: _____
392   Broker's Address: _____ Phone: _____
393   b)   ❏ Does not intend to list said real estate for sale.

394   b)   **CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**

395   1)   This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that is
396   in full force and effect as of _____, 20 ____. Such contract should provide for a closing date not
397   later than the Closing Date set forth in this Contract. **If Notice is served on or before the date set forth in this**
398   **subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this Contract shall**
399   **be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's real estate is not**
400   **served on or before the close of business on the date set forth in this subparagraph, Buyer shall be deemed**
401   **to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force**
402   **and effect.** (If this paragraph is used, then the following paragraph **must** be completed.)

403   2)   In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 30 b)
404   1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real estate
405   prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of Buyer's real
406   estate on or before _____, 20 ____. **If Notice that Buyer has not closed the sale of Buyer's real**
407   **estate is served before the close of business on the next Business Day after the date set forth in the preceding**
408   **sentence, this Contract shall be null and void. If Notice is not served as described in the preceding sentence,**
409   **Buyer shall have deemed to have waived all contingencies contained in this Paragraph 30, and this Contract**
410   **shall remain in full force and effect.**

411   3)   If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph
412   30 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 30 b) 1)), Buyer shall, within three
413   (3) Business Days of such termination, notify Seller of said termination. **Unless Buyer, as part of said Notice,**
414   **waives all contingencies in Paragraph 30 and complies with Paragraph 30 d), this Contract shall be null and**
415   **void as of the date of Notice. If Notice as required by this subparagraph is not served within the time**
416   **specified, Buyer shall be in default under the terms of this Contract.**

417   c)   **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
418   Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:

419   1)   If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in Paragraph
420   30 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have ____ hours after Seller
421   gives such Notice to waive the contingencies set forth in Paragraph 30 b), subject to Paragraph 30 d).

422   2)   Seller's Notice to Buyer (commonly referred to as a "kick-out" Notice) shall be in writing and shall be served
423   on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out" Notice should
424   be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies
425   shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all
426   Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
427   a) By personal delivery effective at the time and date of personal delivery; or
428   b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be
429   effective at 10 a.m. on the morning of the second day following deposit of Notice in the U.S. Mail; or
430   c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4 p.m. Chicago
431   time on the next delivery day following deposit with the overnight delivery company, whichever first occurs.

432   3)   If Buyer complies with the provisions of Paragraph 30 d) then this Contract shall remain in full force and effect.

433   4)   If the contingencies set forth in Paragraph 30 b) are NOT waived in writing within said time period by Buyer,
434   this Contract shall be null and void.

435   5)   Except as provided in Paragraph 30 c) 2) above, all Notices shall be made in the manner provided by Paragraph
436   27 of this Contract.

437   6)   Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or representative.

*Buyer Initial* _____ *Buyer Initial* _____          *Seller Initial* _____ *Seller Initial* _____
*Address:* **703 Park Ave, River Forest, IL 60305** _____ *v7.0*

438     d) **WAIVER OF PARAGRAPH 30 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
439     Paragraph 30 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
440     money in the amount of $ _____ in the form of a cashier's or certified check within the time specified.
441     **If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be deemed**
442     **ineffective and this Contract shall be null and void.**

443     e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations
444     contained in Paragraph 30 at any time, and Buyer agrees to cooperate in providing relevant information.

445 ____ ____ ____ ____ **31. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
446 into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
447 _____, 20 ____. **In the event the prior contract is not cancelled within the time specified, this Contract**
448 **shall be null and void. If prior contract is subject to Paragraph 30 contingencies, Seller's notice to the purchaser**
449 **under the prior contract should not be served until after Attorney Review and Professional Inspections provisions**
450 **of this Contract have expired, been satisfied or waived.**

451 ____ ____ ____ ____ **32. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost of
452 $ _____. Evidence of a fully pre-paid policy shall be delivered at Closing.

453 ____ ____ ____ ____ **33. WELL OR SANITARY SYSTEM INSPECTIONS:** Seller shall obtain at Seller's expense a well
454 water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria and
455 nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental Health
456 Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to Closing, stating
457 that the well and water supply and the private sanitary system are in operating condition with no defects noted. Seller
458 shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of
459 remedying a defect or deficiency and the cost of landscaping together exceed $3,000, and if the Parties cannot reach
460 agreement regarding payment of such additional cost, this Contract may be terminated by either Party. Additional
461 testing recommended by the report shall be obtained at the Seller's expense. If the report recommends additional
462 testing after Closing, the Parties shall have the option of establishing an escrow with a mutual cost allocation for
463 necessary repairs or replacements, or either Party may terminate this Contract prior to Closing. Seller shall deliver a
464 copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to Closing.

465 ____ ____ ____ ____ **34. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 12, within
466 ten (10) Business Days after Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written report, dated
467 not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the appropriate state
468 regulatory authority in the subcategory of termites, stating that there is no visible evidence of active infestation by
469 termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the report discloses
470 evidence of active infestation or structural damage, Buyer has the option within five (5) Business Days of receipt of the
471 report to proceed with the purchase or to declare this Contract null and void.

472 ____ ____ ____ ____ **35. POSSESSION AFTER CLOSING:** Possession shall be delivered no later than 11:59 p.m. on the
473 date that is *[CHECK ONE]* ❑ ____ days after the date of Closing or ❑ _____, 20 ___ ("the Possession Date").
474 Seller shall be responsible for all utilities, contents and liability insurance, and home maintenance expenses until
475 delivery of possession. Seller shall deposit in escrow at Closing with an escrowee as agreed, the sum of $ _____
476 (if left blank, two percent (2%) of the Purchase Price) and disbursed as follows:

477     a) The sum of $ _____ per day for use and occupancy from and including the day after Closing to
478     and including the day of delivery of Possession if on or before the Possession Date;

479     b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
480     the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

481     c)  The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have
482      been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
483      deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

484    **36. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As Is"
485   condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect
486   to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those known
487   defects, if any, disclosed by Seller. Buyer may conduct at Buyer's expense such inspections as Buyer desires. In that
488   event, Seller shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller
489   and hold Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
490   performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is unacceptable**
491   **to Buyer and Buyer so notifies Seller within five (5) Business Days after Date of Acceptance, this Contract shall be**
492   **null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and Buyer shall not be obligated**
493   **to send the inspection report to Seller absent Seller's written request for same. Failure of Buyer to notify Seller or**
494   **to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and**
495   **this Contract shall remain in full force and effect.** Buyer acknowledges that the provisions of Paragraph 12 and the
496   warranty provisions of Paragraph 3 do not apply to this Contract. Nothing in this paragraph shall prohibit the exercise
497   of rights by Buyer in Paragraph 33, if applicable.

498  ____ ____ ____ ____  **37. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
499  Estate by _____ Buyer's Specified Party, within five (5) Business Days after Date
500  of Acceptance. In the event Buyer's Specified Party does not approve of the Real Estate and Notice is given to Seller
501  within the time specified, this Contract shall be null and void. If Notice is not served within the time specified, this
502  provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.

503  ____ ____ ____ ____  **38. ATTACHMENTS:** The following attachments, if any, are hereby incorporated into this Contract
504  *[IDENTIFY BY TITLE]*: _____
505  _____.

506  ____ ____ ____ ____  **39. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
507  Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and with
508  such additional terms as either Party may deem necessary, providing for one or more of the following *[CHECK APPLICABLE BOXES]*:

509  ❑ Articles of Agreement for Deed    ❑ Assumption of Seller's Mortgage    ❑ Commercial/Investment
510    or Purchase Money Mortgage    ❑ Cooperative Apartment    ❑ New Construction
511  ❑ Short Sale    ❑ Tax-Deferred Exchange    ❑ Vacant Land
512  ❑ Multi-Unit (4 Units or fewer)    ❑ Interest Bearing Account    ❑ Lease Purchase

513 THE PARTIES ACKNOWLEDGE THAT THIS CONTRACT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND IS SUBJECT TO THE
514 COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN ALL ILLINOIS CONTRACTS.

515 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.

516 THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL MULTI-
517 BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0.

518 3/1/2024
519 Date of Offer _____   DATE OF ACCEPTANCE _____

520 *Melia*
521 Buyer Signature _____   Seller Signature _____

522 *Joshua R. Bartel*
523 Buyer Signature _____   Seller Signature _____

524 **Margaret R. Erlich , Joshua R. Bartel**
525 Print Buyer(s) Name(s) *[REQUIRED]*   Print Seller(s) Name(s) *[REQUIRED]*

526 **533 N. Grove Ave.**
527 Address *[REQUIRED]*   Address *[REQUIRED]*

528 **Oak Park IL 60302**
529 City, State, Zip *[REQUIRED]*   City, State, Zip *[REQUIRED]*

530
531 Phone _____ E-mail _____   Phone _____ E-mail _____

532 *FOR INFORMATION ONLY*

533 **Laura Maychruk Real Estate 90258   478027559**   **Citywide Realty LLC   84818   481011607**
534 Buyer's Brokerage   MLS #   State License #   Seller's Brokerage   MLS #   State License #

535 **911 S. Lombard   Oak Park 60304**   **6614 S Pulaski Rd   Chicago   60629**
536 Address   City   Zip   Address   City   Zip

537 **Laura Maychruk   901259   471021717**   **Mauricio Gonzalez   110478   471008132**
538 Buyer's Designated Agent   MLS #   State License #   Seller's Designated Agent   MLS #   State License #

539 **(708) 205-7044**   **(773) 498-2524   (773) 498-2496**
540 Phone   Fax   Phone   Fax

541 laura@maychrukrealestate.com;laura@maychrukrealestate.com   **mauricio@citywide-realty.com**
542 E-mail   E-mail

543
544 Buyer's Attorney   E-mail   Seller's Attorney   E-mail

545
546 Address   City   State   Zip   Address   City   State   Zip

547
548 Phone   Fax   Phone   Fax

549
550 Mortgage Company   Phone   Homeowner's/Condo Association (if any)   Phone

551
552 Loan Officer   Phone/Fax   Management Co./Other Contact   Phone

553
554 Loan Officer E-mail   Management Co./Other Contact E-mail

555 Illinois Real Estate License Law requires all offers be presented in a timely manner; Buyer requests verification that this offer was presented.
556 **Seller rejection:** This offer was presented to Seller on _____, 20 _____ at ___:___ a.m./p.m. and rejected on _____
557 _____, 20 _____ at ___:___ a.m./p.m. _____ _____ *[SELLER INITIALS]*

558 © 2018 Illinois Real Estate Lawyers Association. All rights reserved. *Unauthorized duplication or alteration of this form or any portion thereof is prohibited.* Official form available at www.irela.org
559 (website of Illinois Real Estate Lawyers Association). Approved by the following organizations, December 2018: Belvidere Board of REALTORS® · Chicago Association of REALTORS® · Chicago Bar Association
560 · DuPage County Bar Association · Heartland REALTOR® Organization · Grundy County Bar Association · Hometown Association of REALTORS® · Illinois Real Estate Lawyers Association · Illini Valley
561 Association of REALTORS® · Kane County Bar Association · Kankakee-Iroquois-Ford County Association of REALTORS® · Mainstreet Organization of REALTORS® · McHenry County Bar Association ·
562 North Shore-Barrington Association of REALTORS® · North Suburban Bar Association · Northwest Suburban Bar Association · Oak Park Area Association of REALTORS® · REALTOR® Association of
563 the Fox Valley, Inc. · Three Rivers Association of REALTORS · Will County Bar Association ·

DocuSign Envelope ID: ED152B54-996A-4B90-8DA5-D9BF1A0C5A03

## ADDENDUM TO REAL ESTATE CONTRACT

This Addendum to Real Estate Contract (this "Addendum") is made a part of that certain Multi-Board Residential Real Estate Contract 7.0 (the "Contract") dated as of March 1, 2024 by and among **Ira Bodenstein, not individually, but solely in his capacity as the chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.** ("Seller"), **Margaret R. Erlich**, an individual ("Erlich"), **Joshua R. Bartel**, an individual ("Bartel," and collectively with Erlich, the "Buyer") for the purchase of the property commonly known as 703 Park Avenue, River Forest, Illinois 60305 (the "Real Estate"). Seller and Buyer shall collectively be referred to as the "Parties" and each a "Party."

## Recitals

A.      On December 8, 2023 (the "Petition Date"), Frank Martin Paris, Jr. (the "Debtor") filed a voluntary petition for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), as Case No. 23-16481, thereby commencing the Debtor's bankruptcy case (the "Case").

B.      On the Petition Date, the Office of the United States Trustee appointed Ira Bodenstein as the chapter 7 trustee of the Debtor's bankruptcy estate (the "Estate").

C.      On March 1, 2024, Buyer signed the Contract to Purchase the Real Estate from Seller.

## Agreement

**For good and valuable consideration**, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

1.      **Recitals Incorporated**. The Recitals set forth above are hereby incorporated in full, and made a part of, this Agreement.

2.      **Effect of Addendum**. In the event of any conflict between this Addendum and the Contract or any other addenda thereto, the terms of this Addendum shall prevail and shall be controlling. The Contract and this Addendum and any addenda, riders or amendments thereto may be collectively referred to as the "Agreement." Capitalized terms not defined in this Addendum shall have the meanings ascribed to them in the Contract.

3.      **Court Approval**. The effectiveness of the Agreement is subject to the entry of an order of the Court pursuant to section 363(b) of the Bankruptcy Code approving the Agreement and authorizing the Trustee to take such actions as are necessary to complete the transaction contemplated herein (the "Sale Order"). Neither Seller nor the Estate will be liable to Buyer absent the entry of the Sale Order. Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining the Sale Order, including furnishing affidavits or other documents or information, to be filed with the Court. Seller retains the right to market the property for higher and better offers until the entry of the Sale Order.

4.      **Earnest Money**. Immediately following the execution of this Addendum, an escrow will be opened by the Parties with Chicago Title Insurance Company ("Escrow Agent"). Within two (2) Business Days after the execution of this Addendum, Buyer will deposit earnest money in the amount of Thirty-Three Thousand Dollars and No Cents ($33,000.00) ("Earnest Money") with the Escrow Agent in order to secure Buyer's performance under the Agreement. At Closing, the Earnest Money will be applied in partial satisfaction of the Purchase Price.

5.      **No Contingencies**. Notwithstanding anything in the Agreement to the contrary, except for (i) Seller's performance of its obligations under the Agreement and (ii) the entry of the Sale Order, there

are no other contingencies for Buyer's performance of its obligation to pay the Purchase Price to Seller at Closing.

6. **Time of the Essence**. The Parties agree that time is of the essence as to the closing date and to all dates specified the Agreement.

7. **Closing**. The Closing shall take place on or within three (3) business days after the entry of the Sale Order. The Closing shall be held in the offices of Seller's attorney or agent or at a place designated and approved by Seller. Notwithstanding anything herein to the contrary, at any time and from time to time on or prior to the Closing, in the event that Seller reasonably believes that any of the conditions of Seller will not be satisfied as of the date of the Closing, Seller shall have the right in his reasonable discretion to adjourn the Closing upon written notice to Buyer to the extent required to resolve any matters that are then preventing the satisfaction of such condition.

8. **Condition of Real Estate**. Buyer is aware that Seller has never occupied the Real Estate and that Seller has no knowledge of the condition of the Real Estate and therefore Paragraph 22 of the Contract is deleted in its entirety. IT IS UNDERSTOOD AND AGREED THAT THE REAL ESTATE IS BEING SOLD AND CONVEYED HEREUNDER "AS IS, WHERE IS" AND WITH ANY AND ALL FAULTS AND LATENT AND PATENT DEFECTS WITHOUT ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY BY SELLER. SELLER HAS NOT MADE AND DOES NOT MAKE AND HEREBY SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND OR CHARACTER WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE REAL ESTATE, ITS CONDITION (INCLUDING WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE), ITS COMPLIANCE WITH ENVIRONMENTAL LAWS OR OTHER LAWS, ITS ENVIRONMENTAL CONDITION, AVAILABILITY OF ACCESS, INGRESS OR EGRESS, RIGHT TO POSSESSION OR USE, INCOME TO BE DERIVED THEREFROM OR EXPENSES TO BE INCURRED WITH RESPECT THERETO, THE OBLIGATIONS, RESPONSIBILITIES OR LIABILITIES OF THE OWNER THEREOF, OR ANY OTHER MATTER OR THING RELATING TO OR AFFECTING THE REAL ESTATE, AND SELLER HEREBY DISCLAIMS AND RENOUNCES ANY OTHER REPRESENTATION OR WARRANTY.

BUYER ACKNOWLEDGES AND AGREES THAT BUYER IS ENTERING INTO THIS AGREEMENT WITHOUT RELYING UPON ANY SUCH REPRESENTATION, WARRANTY, STATEMENT OR OTHER ASSERTION, ORAL OR WRITTEN, MADE BY SELLER OR ANY REPRESENTATIVE OF SELLER OR ANY OTHER PERSON ACTING OR PURPORTING TO ACT FOR OR ON BEHALF OF SELLER WITH RESPECT TO THE REAL ESTATE, BUT RATHER IS RELYING UPON ITS OWN EXAMINATION AND INSPECTION OF THE REAL ESTATE. BUYER REPRESENTS THAT IT IS A KNOWLEDGEABLE BUYER OF REAL ESTATE AND THAT IT IS RELYING SOLELY ON ITS OWN EXPERTISE AND THAT OF ITS CONSULTANTS IN PURCHASING THE REAL ESTATE. WITHOUT LIMITING THE GENERALITY OF THE DISCLAIMERS, AGREEMENTS AND ACKNOWLEDGMENTS CONTAINED HEREIN, BUYER FURTHER ACKNOWLEDGES THAT SELLER HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING (A) THE TRUTH, ACCURACY, AUTHENTICITY OR COMPLETENESS OF ANY DOCUMENTS PROVIDED BY SELLER TO BUYER, THE TITLE COMMITMENT, TITLE POLICY, SURVEY OR ENVIRONMENTAL SITE ASSESSMENT; OR (B) THE QUALIFICATIONS OR EXPERTISE OF THE RESPECTIVE PARTIES CONDUCTING THE ENVIRONMENTAL SITE ASSESSMENT OR ANY OF THE DOCUMENTS.

UPON THE CLOSING AND THE PURCHASE OF THE REAL ESTATE, BUYER AGREES THAT BUYER SHALL BE SOLELY RESPONSIBLE FOR COMPLYING WITH, AND AGREES TO WAIVE AND RELEASE THE INDEMNIFIED PARTIES FROM ANY AND ALL CLAIMS (OTHER THAN CLAIMS OF FRAUD OR INTENTIONAL MISREPRESENTATION), DEMANDS,

2

DocuSign Envelope ID: ED152854-996A-4B98-8DA5-D9BF1A9C5AC9

LIABILITIES AND OBLIGATIONS OF WHATSOEVER KIND OR NATURE, DIRECT OR INDIRECT, AND WHETHER CONTINGENT, CONDITIONAL OR OTHERWISE, THAT ARE KNOWN OR UNKNOWN, ARISING UNDER, PURSUANT TO, FROM OR BY REASON OF OR IN CONNECTION WITH ANY AND ALL FEDERAL, STATE AND LOCAL LAWS, STATUTES, ORDINANCES, RULES, REGULATIONS, PERMITS OR STANDARDS, INCLUDING, BUT NOT LIMITED TO, THOSE RELATING TO ENVIRONMENTAL PROTECTION; INFECTIOUS, HAZARDOUS OR SOLID WASTES OR HAZARDOUS SUBSTANCES (INCLUDING, BUT NOT LIMITED TO, PETROLEUM, PETROLEUM PRODUCTS, CONSTITUENTS, DERIVATIVES, AND WASTES; ASBESTOS AND ASBESTOS CONTAINING MATERIALS AND WASTES; POLYCHLORINATED BIPHENYLS AND WASTES; RADON; RADIOACTIVE MATERIALS; MOLD; CHEMICALS; ORGANIC SOLVENTS; AND METALS) OR ANY SUBSTANCES OR MATERIALS NOW OR IN THE FUTURE SUBJECT TO REGULATION AT, ON OR ABOUT THE REAL ESTATE. THE TERMS AND CONDITIONS OF THIS SECTION SHALL EXPRESSLY SURVIVE THE CLOSING, SHALL NOT MERGE WITH THE PROVISIONS OF ANY CLOSING DOCUMENT AND SHALL BE INCORPORATED INTO THE DEED TO BE DELIVERED BY SELLER AT CLOSING. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT THE PROVISIONS OF THIS SECTION WERE A MATERIAL FACTOR IN THE DETERMINATION OF THE PURCHASE PRICE FOR THE REAL ESTATE.

9. **Disclosure Statement**. Buyer acknowledges that it is acquiring the Real Estate through a sale by a chapter 7 trustee pursuant to 11 U.S.C. § 363(b) in the Case. Accordingly, to the fullest extent allowed by law, Seller, shall be exempt from completing, providing or filing any disclosure statement with respect to the Real Estate.

10. **Personal Property**. No personal property is being sold pursuant to this Agreement.

11. **Closing Costs and Adjustments**. Buyer and Seller agree to prorate real estate taxes for the Real Estate through the Closing based on 100% of the most recent ascertainable full year tax bill. All pro-rations completed at Closing shall be final, binding and conclusive between the Parties and Seller shall not be responsible for any amounts due, paid or to be paid after Closing. Buyer acknowledges and agrees that no funds will be held in escrow for utility bills including but not limited to electric, water, sewer, gas or water disposal unless required by law. Recording fees, escrow fees and other customary closing costs with the exception of transfer taxes shall be paid by either Seller and/or Buyer in the manner customary for real estate transactions in Chicago. All other costs and expenses, including any costs, expenses or transfer tax imposed by any state or local entity not otherwise addressed herein, shall be paid by Buyer.

12. **Survey**. Buyer shall pay the cost of any survey. No survey shall be provided by Seller. Buyer shall take the Real Estate subject to any issues, or problems which an inspection of the premises or an accurate survey would disclose.

13. **Title**. Seller shall give and Purchaser shall accept such title as Seller's title insurance company shall be willing to insure in accordance with its standard form of title policy, subject to standard exceptions, easements, restrictions, non-delinquent taxes and assessments of record and to any matters provided for in the Agreement (the "Permitted Exceptions"). The cost of owner's title insurance will be purchased and issued through Seller's attorney or agent. The cost of any lender's title insurance shall be at Buyer's expense.

14. **Deed**. The deed to be delivered at Closing shall be a trustee's quit claim deed conveying to Buyer fee simple title to the Real Estate free and clear of all liens, charges and encumbrances created by or through the Seller or Debtor, except for the Permitted Exceptions.

15. **Real Estate Commission**. Seller shall pay a real estate commission pursuant to the listing agreement between Seller and Seller's listing broker.

DocuSign Envelope ID: ED152854-B96A-4B9B-8DA5-D9BF1A8C5A03

16. **Remedies for Default**. In the event of Buyer's default, material breach of misrepresentation of any fact under the terms of the Agreement, Seller, at its option, may retain the Earnest Money and any other funds paid by Buyer not as liquidated damages but to apply to its damages and/or invoke any other remedy expressly set forth in the Agreement or allowed for by law and Seller is automatically released from the obligation to sell the Real Estate to Buyer and neither Seller nor its representatives, agents, attorneys, successors or assigns shall be liable to Buyer for any damages of any kind as a result of Seller's failure to sell and convey the Real Estate. In the event of Seller's default, the Earnest Money shall be refunded to Buyer as liquidated damages. In such event, Buyer acknowledges that the return of Buyer's Earnest Money can adequately and fairly compensate Buyer. Upon return of the Earnest Money to Buyer, the Agreement shall be terminated, and Buyer and Seller shall have no further liability, obligation or responsibility to each other. Buyer agrees that Seller shall not be liable to Buyer for any special, consequential or punitive damages whatsoever, whether in contract, tort (including negligence and strict liability) or any other legal or equitable principle. Seller shall only be in default under the Agreement if Buyer delivers written notice to Seller detailing the default and Seller fails to cure such default within twenty (20) calendar days of receipt of such written notice (or such longer period of time as may be necessary, providing that Seller diligently pursues such cure). If Seller is in default hereunder or if Seller terminates the Agreement as provided under the provisions herein, Buyer shall be entitled to the return of the Earnest Money as Buyer's sole and exclusive remedy at law or in equity.

17. **Indemnification**. Buyer agrees to indemnify and fully protect, defend and hold Seller, its officers, directors, employees, shareholders, servicers, representatives, agents, attorneys tenants, brokers, successors and assigns harmless from and against any and all claims, costs, liens, loss, damages, attorneys' fees and expenses of every kind and nature that may be sustained by or made against Seller, its officers, directors, employees, shareholders, servicers, representatives, agents, attorneys, tenants, brokers, successors or assigns, resulting from or arising out of: (a) inspections or repairs made by Buyer or its agents, employees, contractors, successors or assigns; (b) the imposition of any fine or penalty imposed by any governmental entity resulting from Buyer's failure to timely obtain any permits, approvals, repairs or inspection, or to comply with all applicable laws, rules or ordinances and regulations; (c) claims for amounts due and owing by Seller for taxes, general or special assessments, homeowners association dues or assessments, or any items prorated at Closing; and (d) Buyer or Buyer's tenants, agents, or representatives use or occupancy of the Real Estate prior to the Closing.

18. **Eminent Domain**. In the event that Seller's interest in the Real Estate or any part thereof shall have been taken by eminent domain or shall be in the process of being taken on or before the Closing date, either party may terminate the Agreement and the Earnest Money shall be returned to Buyer and neither party shall have any further rights or liabilities hereunder.

19. **Survival**. Delivery of the Deed to the Real Estate to Buyer by Seller shall be deemed to be full performance and discharge of all of Seller's obligations under the Agreement.

20. **Severability**. The invalidity, illegality, or enforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision of the Agreement, all of which shall remain in full force and effect.

21. **Assignment of Agreement**. Buyer shall not assign the Agreement without the express written consent of Seller. Seller may assign the Agreement at his sole discretion without prior notice to or consent of Buyer.

22. **Entire Agreement**. The Agreement, including any disclosure of information, forms or notice required by law, constitutes the entire agreement between Buyer and Seller concerning the subject matter hereof and supersedes all previous communications, understandings, representations, warranties, covenants and agreements, whether written or oral and there are no oral, or other written agreements between Buyer and Seller. No oral promises, representations (express or implied), warranties, or agreements made by Seller or broker or any person acting on behalf of Seller shall be deemed valid or binding upon

4

Seller unless expressly included in the Agreement. All negotiations are merged in the Agreement. Seller shall not be obligated either by any other written or verbal statements made by Seller, Seller's representatives, or any real estate agent.

23. **Modification**. No provision, term or clause of the Agreement shall be revised, modified, amended or waived except by an instrument in writing signed by Buyer and Seller.

24. **Counterparts**. This Addendum may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original, but all of which, when taken together, shall constitute one Addendum. This Addendum may be delivered by facsimile.

25. **Force Majeure**. No party shall be responsible for delays or failure of performance resulting from acts of God, riots, acts of war, epidemics, power failures, acts of terrorism, earthquakes or other disasters, providing such delay or failure of performance could not have been prevented by reasonable precautions and cannot reasonably be circumvented by such party through use of alternate sources, workaround plans or other means.

26. **Attorney Review**. Buyer acknowledges that Buyer has had the opportunity to consult with its legal counsel regarding the Agreement. Accordingly, the terms of the Agreement are not to be construed against any party because that party drafted the Agreement or construed in favor of any Party because that Party failed to understand the legal effect of the provisions of the Agreement.

27. **Captions**. All captions, headings, paragraph and subparagraph numbers and letters are solely for reference purposes and shall not be deemed to be supplementing, limiting, or otherwise varying the text of the Addendum.

28. **Controlling Law and Jurisdiction**. This Addendum has been made and entered into under the laws of the State of Illinois and those laws shall control the interpretation of this Addendum. The Parties agree that the Court shall retain exclusive jurisdiction over all matters relating to this Addendum and the Agreement.

**SELLER**:

**Ira Bodenstein**, not individually, but solely in his capacity as the chapter 7 trustee of the bankruptcy estate of Frank Martin Paris, Jr.

_____

**BUYER**:

**Margaret R. Erlich**, individually

DocuSigned by:

_[signature]_ 3/5/2024

FDB84941ECAB47D...

**Joshua R. Bartel**, individually

DocuSigned by:

_Joshua R. Bartel_ 3/5/2024

3FC44BEEF5E7425...

LEGAL\68940947\1