| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

**REPLY IN SUPPORT OF TRUSTEE'S MOTION TO USE THE DEBTOR'S OWNERSHIP INTERESTS IN MARTIN NV II, INC. TO FILE A CHAPTER 7 PETITION ON BEHALF OF MARTIN NV II, INC.**

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Debtor"), hereby files this reply (the "Reply") in support of the *Trustee's Motion for the Entry of an Order (I) Authorizing the Trustee to Use Debtor's Ownership Interest In and Control Over Martin NV II, Inc. to File a Chapter 7 Petition on Behalf of Martin NV II, Inc. and (II) Approving Shortened and Limited Notice* [Dkt. No. 191][1] and in opposition to the objections (the "Objections") filed by the Debtor and Keystone & Stewart, LLC ("Keystone," and together with the Debtor, the "Objectors"). [Dkt Nos. 221, 222.][2] In support of this Reply, the Trustee respectfully states as follows:

## Introduction

The Objections constitute a brazen attempt by insiders to wrest control of Estate property and usurp all its value to the detriment of the Debtor's creditors. The Objectors do not challenge that the Trustee controls the majority of the voting shares of Martin NV II, Inc. ("Martin NV") or that Martin NV indirectly owns all of the Debtor's operating businesses and real estate assets. Nor

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the motion.

[2] In its Objection, Keystone adopted the arguments raised by the Debtor and the arguments made in *Keystone & Stuart, LLC's Motion to Modify Automatic Stay*, dated August 8, 2024 (the "Stay Relief Motion") [Dkt. No. 219.]

do they dispute that BDS III's $32 million judgment poses a substantial risk to the Estate's ability to recover any value from Martin NV. On top of that, Keystone, an entity wholly owned by the Debtor's father, demands that the Court modify the automatic stay so it can foreclose on a minority interest in Martin NV stock.[3] Those facts alone justify the Trustee's business judgment to vote Martin NV's shares in favor of a chapter 7 bankruptcy case.

While no creditor other than Keystone objects to the motion, the Objectors wrongly suggest that the Trustee's decision to use the Debtor's ownership interest to file a chapter 7 for Martin NV lacks an articulated business justification. The Debtor's Objection is irrelevant to the Court's analysis because the Debtor will *never* receive a distribution from the Estate and therefore has no standing to object to the motion. Even if he had standing, the sum and substance of the Debtor's argument is that a proper use of the Trustee's business judgment is to abandon the Martin NV stock to him because it has "no value and is burdensome." [Debtor Obj., at p. 5.] Keystone joins the Debtor's argument and seeks to modify the stay in this Case so it can foreclose on its minority interest in the purportedly valueless stock. [Keystone Obj, at ¶¶ 6-7.] The Objections are meritless because the Trustee is entitled to extract whatever value there is in Martin NV for the benefit of the Estate and its many creditors – including over $1 million in unpaid domestic support obligations. This constitutes a proper purpose of the Trustee's use of Estate property pursuant to § 363(b) of the Bankruptcy Code. The Objections should be viewed for what they are – a transparent attempt to strip the Estate of the entity that owns substantially all of the Debtor's business interests that the State Court previously valued at approximately $20.3 million. Accordingly, the Objections should be overruled.

---

[3] In its Stay Relief Motion, Keystone acknowledges the risk that BDS III's judgment poses to the Estate's interest in Martin NV and asserts that the judgment constitutes "compelling" cause to modify the automatic stay for Keystone's benefit. [Dkt. No. 219, at ¶ 7.]

## Additional Background

As reflected in the Debtor's Schedules, the Debtor, through the *First Amendment and Restatement of Trust Agreement Establishing the Frank Martin Partin, Jr. Revocable Trust Frank Martin Paris, Jr., Grantor* ("FMP Trust"),[4] owns and/or controls interests in over 50 entities including in Martin NV. [Dkt. No. 70, ## 19, 25; hereinafter "Sched."]. A copy of the FMP Trust is attached as **Exhibit C**.[5] Based on the stock certificates produced by the Debtor, Martin NV has 1,000 voting and 99,000 non-voting shares of common stock issue and outstanding. The FMP Trust owns all 1,000 voting shares of Martin NV (Certificate V-1) and 85,509 non-voting shares of Martin NV (Certificate dated January 1, 2022). The Frank Martin Paris, Jr. Children's Trust (the "Children's Trust"), a trust established for the benefit of the Debtor's children owns the remaining 4,680 non-voting shares of Martin NV (Certificates NV-2, NV-4, NV-6, and certificate dated January 1, 2022). A copy of the outstanding Stock Certificates is attached as **Exhibit D**.[6]

Keystone, a private lender wholly owned by the Debtor's father, Frank Martin Paris, Sr., loaned the Debtor $650,000 (the "Keystone Loan") to purge his contempt after the Debtor was taken into custody by the Sheriff of Cook County on May 21, 2018. [JDOM at p. 59-60, attached as **Exhibit E**.] To secure the Keystone Loan, the Debtor and the FMP Trust entered into Stock Pledge Agreement and pledged 49% of the shares of the voting common stock (490 shares) and

---

[4] The Debtor is the settlor, the trustee and the beneficiary of the FMP Trust. [**Ex. C**, at pp. 1-2.] The Debtor also has the right to amend or revoke the FMP Trust at any time. [*Id.*, at Art. 1.1.] The trust is governed by Illinois law. [*Id.*, at Art. 13.8.] All of the Debtor's rights and interests in and to the trust became property of the Estate upon the filing of his chapter 7 petition. *See, e.g., In re Johnson*, 513 B.R. 333, 342-43 (Bankr. S.D. Ill. 2014) (debtor's equitable interests as beneficiary of revocable trust become estate property along with ability to amend, revoke and to exercise rights in trust assets). Based on the terms of the FMP Trust and applicable law, the Trustee has the right to vote the Debtor's shares of Martin NV and to take the applicable steps to cause Martin NV file a chapter 7 bankruptcy petition.

[5] Exhibits A and B are attached to the Trustee's motion.

[6] Based on the stock certificates produced by the Debtor, the FMP Trust owns approximately 85% of Martin NV on the Petition Date. Presumably, the missing certificates reflect transfers to the Children's Trust.

49% of the nonvoting common stock (43,859) of Martin NV. [**Ex. E**, at pp. 61-62; Stay Relief Mot., at p. 16.] In connection with the Keystone Loan, the FMP Trust also entered into an Option Contract which granted Keystone an option to purchase 2% of Martin NV's voting and non-voting common stock in the event of a default by the Debtor under the Keystone Loan documents. [**Ex. E.**, at pp. 61-62.] The Option Contract expired by its own terms on July 31, 2019, which was extend for an additional 90 days (i.e., October 29, 2019) upon the Debtor's default under the Keystone Loan. *Id.* The State Court held that the Debtor had been in default of the Keystone Loan since July 2018 and that:

> There was no evidence that Keystone & Stuart ever exercised their right to purchase the additional Martin NV, Inc. stock as provided for in the Stock Option that would give Keystone & Stuart, LLC, a Fifty-One percent (51%) interest in Martin NV II, Inc. had they perfected their rights under the Note and Stock Pledge Agreement."[7]

**Ex. C**, a p. 62. Accordingly, the FMP Trust is the sole owner of 100% of all issued and outstanding <u>voting</u> shares in Martin NV.

**Argument**

The Trustee's motion should be granted because the Trustee has provided an articulated business justification for his decision to vote the Martin NV shares to file a chapter 7 bankruptcy case. Simply put, the Trustee's business judgment is rational in light of BDS III's judgment and Keystone's pending Lift Stay Motion.

---

[7] Keystone failed to attach a copy of the original stock certificates that purportedly secure the Keystone Loan to the Lift Stay Motion. [*See* Lift Stay Mot., at p. 17.] Keystone is unperfected to the extent that Keystone failed to file a UCC-1 and is not in possession of the original stock certificates. *See* 810 ILCS 5/9-312 and 5/9-314.

## A. Debtor Lacks Standing to Object to the Trustee's Motion

As an initial matter, however, the Debtor's Objection is meritless because the Debtor lacks standing object to the motion. The Debtor has pled himself out of an objection by arguing that the Martin NV stock has no value. Every party seeking to invoke federal jurisdiction bears the burden of establishing its standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Federal courts consider both constitutional and prudential limitations when analyzing a party's standing. *FMC Corp. v. Boesky*, 852 F.2d 981, 987-98 (7th Cir. 1988). Bankruptcy standing, which is a form of prudential standing, "is narrower than Article III standing." *See, e.g., In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) n.1; *In re Ray*, 597 F.3d 871, 874 (7th Cir. 2010). To establish bankruptcy standing, an objector must "have a pecuniary interest in the outcome of the bankruptcy proceedings." *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998); *In re Resource Tech.*, 624 F.3d 376, 382-83 (7th Cir. 2010). Chapter 7 debtors rarely have standing to object to a bankruptcy court order "because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." *Cult Awareness*, 151 F.3d at 607. This prudential limitation "reflect[s] the need for economy and efficiency in the bankruptcy system." *Ray*, 597 F.3d at 874.

This is the Debtor's problem here. The Debtor lacks bankruptcy standing to object to the Trustee's motion because the Debtor does not have the slightest prospect of any distribution from the Estate, and therefore, has no "pecuniary interest" in the outcome of the Case. *Cult Awareness*, 151 F.3d at 607. The Debtor cannot receive a distribution from the Estate unless there is a surplus after the Trustee pays all creditors in full under 11 U.S.C. § 726(a)(6). *See, e.g., In re Stinnett*, 465 F.3d 309, 315-16 (7th Cir. 2006); *Cult Awareness*, 151 F.3d at 607-08; *In re Adams*, 424 B.R. 434, 435 (Bankr. N.D. Ill. 2010).

There is not even the slightest chance of a surplus Estate for the Debtor – and the Debtor does not pretend otherwise in his Objection. Nowhere in the Objection contend that he will receive a distribution from the Estate. The Debtor's own schedules disclose assets valued at a mere $534,800.00 against liabilities of $144,386,623.22, **a deficit of more than $148.5 million**. [Dkt Nos. 73, Summary of Assets and Liabilities, attached as **Exhibit F**]. The Debtor will never receive a distribution from this Estate and has "no stake" in the outcome of this motion. *See, e.g., Stinnett*, 465 F.3d at 315-16 (debtor lacked standing to challenge tax lien where schedules showed that there was "no reasonable probability" of a surplus estate); *Adams*, 424 B.R. at 436-37 (debtors lacked standing to object to Trustee's proposed sale in a non-surplus estate even if a higher sale price would reduce nondischargeable claims against the debtors). Accordingly, the Debtor has no standing to object to the Trustee's motion.

B. **The Trustee's Decision to Vote the Martin NV Shares is Supported by an Articulated Business Decision**

As set forth in the motion, § 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts approve the use or sale of estate property where the trustee has demonstrated "articulated business justification." *See, e.g., Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir.1991). The Seventh Circuit has clarified that a trustee's business justification warrants court approval if the use of estate property "makes good business sense" meaning that the estate's "creditors as a whole should benefit." *United Retired Pilots Benefits Prot. Assn. v United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 572 (7th Cir. 2006) (citing *Schipper*, 933 F.2d at 515. The Seventh Circuit has clarified that a trustee's business justification warrants court approval if the use of estate property "makes good business sense" meaning that the estate's "creditors as a whole should benefit." *United Retired Pilots*

*Benefits Prot. Assn. v United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 572 (7th Cir. 2006) (citing *Schipper*, 933 F.2d at 515. Under this deferential business judgment test, when analyzing a trustee's proposed sale or use of property under § 363(b) of the Bankruptcy Code:

> The business judgment test, as it is sometimes called, differs from the business judgment rule under corporate law. The bankruptcy court reviews the trustee's business judgment to determine independently whether the judgment is a reasonable one. At the same time, the court should not substitute its judgment for the trustee's. A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to great judicial deference as long as a sound business reason is given.

*In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (internal quotations and citations omitted).[8] The trustee bears the burden of demonstrating a sound business justification. Id. (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983). A party objecting to a sale, in turn, must produce "some evidence respecting its objections." *Id.*

A trustee's decision to vote the stock of a corporation owed by the bankruptcy estate constitutes "use" of estate property requiring approval under § 363(b) of the Bankruptcy Code. *See In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 136, 140-41 (D. Maine 1991). In *Auto Recyclers*, the chapter 11 trustee of a parent corporation voted the stock in a subsidiary to elect himself the sole director and then caused the subsidiary to file bankruptcy. *Id.*, at 140. The court held that voting shares of the debtor constituted a "use" of the stock outside of the ordinary course of business that required approval under § 363(b). *Id*. Although the trustee failed to obtain prior approval, the court nevertheless authorized the trustee's actions *nunc pro tunc* and refused to

---

[8] In his objection, the Debtor makes this exact mistake by suggesting that the "business judgement rule" rather than the "business judgment test" applies to the Trustee. [Debtor's Obj, at p. 3.] As explained by *Efoora*, this is plainly incorrect. *Effora*, 472 B.R. at 488. Thus, the Debtors citation to *In re Classica Grp.*, 2006 WL 2818820, at *7 (Bankr. D.N.J. Sept. 29, 2006), which restates the New Jersey version of the business judgment rule for corporate directors and officers, is entirely inapplicable. Martin NV is a Nevada corporation, and therefore, New Jersey law does not apply in any event.

dismiss the subsidiaries' bankruptcy case because the Trustee acted in a manner to consistent with his duty to protect and maximize the value of estate assets. *Id.*, at 141-42.

Here, the Trustee has a sound business justification to cause Martin NV to file a chapter 7 bankruptcy and has more than adequately justified his decision. BDS III has the right to execute on its $32 million judgment and secure its claims ahead of all other creditors of Estate. Keystone seeks to strip the value of the Estate' equity interests in Martin NV from the Estate's creditors by foreclosing on its asserted pledge of Martin NV's stock. In response to those challenges, the Trustee intends to vote the shares of Martin NV and cause it to file a chapter 7 case to protect the Estate's interests in Martin NV's assets for the benefit of the Estate's creditors. *See* 11 U.S.C. § 704(a) (the duties of a chapter 7 trustee include the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."). This use of Estate property is unquestionably consistent with his duties under the Bankruptcy Code. *See Consolidated Auto*, 123 B.R. at 140-41 (trustee's decision to vote a company stock pledged to secured lender to preserve estate assets was an appropriate use of estate property outside of the ordinary course of business).

Notwithstanding the fact that the Debtor lacks standing to object, the Debtor provides absolutely no rational basis to challenge the Trustee's articulated business justification to file a bankruptcy case for Martin NV. Rather than providing any evidence supporting his arguments, the Debtor simply proclaims that the Trustee's concern that Martin NV will be saddled with a $32 million judgment "shows that the MNV2 Stock has no value to the [Estate]" and "[i]nstead of seeking to vote the stock of MNV2 to authorize a Chapter 7 case, the Trustee should be filing a motion to abandon this asset on the ground that it has no value and is burdensome." [Debtor Obj. at 5.] That is a conclusion, not an argument – and an unsupported one at that. *See, e.g., Hess v.*

*Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Waiver aside, it is clear why the Debtor argues the Trustee must abandon the Martin NV stock – the Debtor wants to regain complete control of his 50 entities that the State Court determined had a value of over $20.3 million. [**Ex. E**, at 58.] Moreover, whether or not Martin NV is insolvent is irrelevant to whether the Trustee has sound justification to file a bankruptcy case for Martin NV. To the contrary, what is relevant is that Martin NV has both assets and creditors and a chapter 7 filing, along with the protection of the automatic stay, will preserve those assets for distribution to creditors. *In re Am. Telecom Corp.*, 304 B.R. 867, 870 (Bankr. N.D. Ill. 2004) (the purpose of a corporate chapter 7 "is the fair and orderly liquidation of assets to creditors"); *see also Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) ("The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured."). A chapter 7 bankruptcy for Martin NV unquestionably implicates those purposes.

The bottom line is that two insiders, the Debtor and Keystone, want to continue to control all of these entities outside of the bankruptcy at the expense of his creditors. The Trustee's rational business judgment to vote the Martin NV shares to file a chapter 7 for Martin NV is an appropriate mechanism for the Trustee to capture whatever value exists for the Estate's creditors.

## **Conclusion**

For all of the foregoing reasons, Trustee requests that the Court enter an order granting the motion and such other and further relief as is just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Ira Bodenstein, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr. |
| Dated: August 20, 2024 | By:   /s/ Allen J. Guon<br>    One of his attorneys |

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-14450
aguon@cozen.com
*Counsel for Trustee*

# CERTIFICATE OF SERVICE

      Allen J. Guon, an attorney, certifies that he caused to be served a copy of this **Notice of Motion** and the attached **Reply In Support Of Trustee's Motion To File A Chapter 7 Petition On Behalf Of Martin NV II, Inc.** on each entity shown on the list below at the address shown and by the method indicated on the list on August 20, 2024.

                                                          /s/ Allen J. Guon

## Mailing Information for Case 23-16481

## Electronic Mail Notice List through ECF System

- **Paul M Bauch**    pbauch@bmlawllc.com, smohan@bmlawllc.com;5242@notices.nextchapterbk.com
- **Ira Bodenstein**    iratrustee@cozen.com, IL29@ecfcbis.com
- **Timothy W Brink**    tbrink@mpslaw.com, crampich@mpslaw.com
- **Cheryl A Considine**    bankruptcy@hsbattys.com, bk-4hsbm@gmail.com,hbm@ecf.courtdrive.com
- **Thomas C Cronin**    tcc@cronincoltd.com
- **Sean B Crotty**    sbc@cronincoltd.com, admin@cronincoltd.com
- **Daniel P. Dawson**    ddawson@nisen.com, adrag@nisen.com
- **David DeCelles**    david.decelles@usdoj.gov
- **William J Factor**    wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bsass@wfactorlaw.com;wfactor@ecf.courtdrive.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com
- **John J Foley**    jack@foleylitigation.com
- **Allen J Guon**    aguon@cozen.com, allen-guon-6333@ecf.pacerpro.com;cknez@cozen.com
- **Thomas Herz Jr.**    tgahlaw@yahoo.com
- **Steve Jakubowski**    sjakubowski@robbinsdimonte.com, steve.jakubowski.lp@gmail.com
- **Cari A Kauffman**    ckauffman@sormanfrankel.com, dfrankel@sormanfrankel.com
- **Patrick S Layng**    USTPRegion11.ES.ECF@usdoj.gov
- **Thomas S. Leo**    sleo@leolawpc.com, paralegal@leolawpc.com
- **Robert Lynch**    robert.lynch2@illinois.gov, robert.lynch@ilag.gov
- **Sonette Magnus**    smagnus@thompsoncoburn.com
- **Ann Addis Pantoga**    apantoga@thompsoncoburn.com
- **Robert Radasevich**    rradasevich@nge.com, ewilson@nge.com,ecfdocket@nge.com
- **Steven R Rogovin**    srogovin@mpslaw.com, crampich@mpslaw.com
- **Carolina Y. Sales**    csales@robbinsdimonte.com, mrussell@robbinsdimonte.com;jtronina@robbinsdimonte.com
- **Ariel Weissberg**    ariel@weissberglaw.com, Hava@weissberglaw.com;rakesh@weissberglaw.com;oleh@weissberglaw.com;6010998420@filings.docketbird.com
- **Jacob Wright**    jwright@dahlfirm.com

- **Steven Yachik** syachik@kelleydrye.com, KDWBankruptcyDepartment@kelleydrye.co