**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>FRANK MARTIN PARIS, JR.,<br><br>                   Debtor. | Chapter 7<br><br>Case No. 23-16481<br><br>Hon. David D. Cleary |
| IRA BODENSTEIN, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.,<br><br>                   Plaintiff,<br>   v.<br><br>CONOR DE II, INC.; MAEVE MANAGER, INC., FRANK MARTIN PARIS, SR.; and ARTHUR PARIS,<br><br>                   Defendants. | Adv. No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Estate"), and for his Complaint for Declaratory Judgment and Injunctive Relief (the "Complaint") against Defendants Conor DE II, Inc. ("Conor II"), Maeve Manager, Inc. ("Maeve Manager"), Frank Martin Paris, Sr. ("Frank") and Arthur Paris ("Arthur," and together with Conor II, Maeve Manager, and Frank, the "Defendants") states as follows:

### INTRODUCTION

1.     The Trustee brings this adversary proceeding seeking: (a) a judicial declaration that (i) the Debtor's voting and management interests in Conor II and Maeve Manager (collectively, the "Manager Entities") are property of the Estate under 11 U.S.C. § 541(a), (ii) the Estate retained all of its voting and management interests in the Manager Entities that the Debtor held as of the commencement of his bankruptcy case, and (iii) any provision in the Manager Entities' Certificates of Incorporation that purports to strip the voting and management interests from the

Estate upon the commencement of the bankruptcy case are void pursuant to 11 U.S.C. §§ 541(a) and 541(c)(1); and (b) injunctive relief under 11 U.S.C. § 105(a) and § 362(a)(3) enjoining any attempt by Defendants to interfere with the Estate's voting and management interests in the Manager Entities.

## JURISDICTION AND VENUE

2. On December 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"),[1] in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), thereby commencing the bankruptcy case styled *In re Frank Martin Paris, Jr.*, Case No. 23-16481 (the "Bankruptcy Case").

3. This adversary proceeding has been initiated under Fed. R. Bank. P. 7003 for the purpose of obtaining a declaratory judgment under Fed. R. Bank. P. 7001(9) and/or an injunction or other equitable relief pursuant to Fed. R. Bank. P. 7001(7).

4. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334(b) because it arises under and is related to the Bankruptcy Case.

5. This adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

6. If this Court determines that the application of the "core" label and the procedures of 28 U.S.C. § 157(b) are invalid with respect to the Trustee's claims in this Complaint, such claims are related to the Bankruptcy Case within the meaning of 28 U.S.C. § 157(c), and the Trustee consents to this Court's determination of such claims under 28 U.S.C § 157(c)(2).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

---

[1] All references to § refer to sections of the Bankruptcy Code unless otherwise indicated.

## THE PARTIES

8. Plaintiff, Ira Bodenstein is the duly appointed chapter 7 trustee of the Estate. As of the commencement of the Bankruptcy Case, the Estate owned 300 Common A voting shares of Conor II (the "Conor II A Shares") and 300 Common A voting shares of Maeve Manager (the "Maeve Manager A Shares").

9. As of the commencement of the Bankruptcy Case, the Estate's interest in the Conor II A Shares and the Maeve Manager A Shares constituted all of the voting shares in Conor II and Maeve Manager, respectively.

10. Defendant, Conor II is a Delaware corporation and the 99% owner of Martin NV I, Inc., a Nevada corporation.

11. Defendant, Maeve Manager is a Delaware corporation and a 1% member and the manager of Maeve LLC.

12. Defendant Frank Martin Paris, Sr. resides in River Forest, Illinois. Frank is the Debtor's father. As of the Petition Date, Frank owned 600 Common B non-voting shares of Conor II (the "Conor II B Shares") and 600 Common B non-voting shares of Maeve Manager (the "Maeve Manager B Shares").

13. Defendant, Arthur Paris resides in River Forest, Illinois. Arthur is the Debtor's brother. Arthur asserts an ownership interest in the Conor II B Shares as the assignee of Frank.

## FACTUAL BACKGROUND

### A. The Commencement of the Debtor's Chapter 7 Bankruptcy Case

14. The Debtor and Kerry Paris ("Kerry") were married in 2002. In 2016, Kerry filed a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois (the "State Court"). The divorce proceedings have been ongoing for over 8 years. On December 2, 2022, the

State Court entered its *Memorandum and Order: Judgment for Dissolution of Marriage*, dated December 2, 2022 (the "JDOM").

15. The disputes between Kerry and the Debtor over the Debtor's non-compliance with his domestic support obligations continued long after the State Court entered the JDOM. Those disputes finally came to a head on December 7, 2023, when the Debtor was arrested for failing to purge his contempt by posting the sum of $1,622,850.35 with the Clerk of the State Court.

16. In an attempt to free himself from jail, the Debtor filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code on the Petition Date.

B. **The State Court's Findings Regarding the Debtor's Business Interests**

17. The Debtor carries on his business activities through dozens of entities that are comprised of investment holding companies, real estate holding companies, operating companies and management companies. A copy of the Ownership Chart for the Debtor's known entities is attached as **Exhibit A**.

18. The State Court found that the ownership structure of his various businesses was exceedingly complex and was designed for, among other things, "[b]usiness and liability protection" as well as to be "bankruptcy remote." [JDOM, at pp. 53-57.] As described by the Debtor, "*[t]he Maeve investment series are a sophisticated series of various [c]ompanies (alphabetically lettered from A to LL) that own: 1) cash and marketable securities; 2) real property; 3) operating companies; 4) undivided interests in real property; and 5) other companies that no longer hold real estate or assets.*" [*Id.*, at 53 (emphasis original).]

19. The State Court determined that the value of Debtor's interests in his business entities were "substantial" and had a mean value of over $20.3 million. [JDOM, at 58.] The State

Court also found that the Debtor "controls and dictates both his salary and whether any annual distributions are made for dividends, bonuses and the like." [*Id.*, at 65.]

C. **The Debtor's Revocable Trust**

20. The Debtor, through the *First Amendment and Restatement of Trust Agreement Establishing the Frank Martin Paris, Jr. Revocable Trust Frank Martin Paris, Jr., Grantor* (the "FMP Trust"), owns and/or controls interests in over 50 entities. The Debtor is the settlor, the trustee and the beneficiary of the FMP Trust and has the right to right to amend or revoke the FMP Trust at any time. A copy of the FMP Trust is attached as **Exhibit B**.

21. The Debtor's equitable interests as a beneficiary of the FMP Trust became property of the Estate as of the commencement of the Bankruptcy Case.

22. As of the Petition Date, the FMP Trust owned an 85% ownership interest in Martin NV II, Inc. ("Martin NV II").

23. The Frank Martin Paris, Jr. Children's Trust, a trust established for the benefit of the Debtor's children, owns the remaining 15% of Martin NV II.

24. Martin NV II, though a series of intermediate entities, indirectly owns the businesses that comprise substantially all of the Debtor's net worth.

D. **The Manager Entities Control Most of Debtor's Business Interests**

25. While the Debtor owned substantially all of his business interests through the FMP Trust and Martin NV II, the Debtor controlled most of those interests through his control over the Manager Entities.

1. *Conor II Controls Martin NV I, Conor I and Jack Enterprises*

26. Conor II was formed under the laws of Delaware on October 20, 2009. Upon its formation, Conor II issued all of the Conor II A Shares to the FMP Trust and issued all of the

Conor II B Shares to Frank. The Conor II A Shares have voting rights and the Conor II B Shares have no voting rights. A copy of the Conor II's Certificate of Incorporation and Subscription Agreement is attached hereto as **Exhibit C**.

27.     As of the Petition Date, the FMP Trust owned the Conor II A Shares and Frank owned the Conor II B Shares.

28.     Accordingly, the Debtor, though the FMP Trust, controlled all of the voting and management rights in Conor II as of the commencement of the Bankruptcy Case.

29.     Conor II is the sole shareholder of Martin NV I, Inc., a Nevada corporation ("Martin NV I").

30.     Martin NV I, in turn, is the sole shareholder of Conor DE I, Inc., a Delaware corporation ("Conor I").

31.     Conor I owns a 1% interest in Jack Enterprises Limited Partnership, a Delaware limited partnership ("Jack Enterprises") and is its sole General Partner. A copy of the Certificate of Limited Partnership of Jack Enterprises Limited Partnership is attached as **Exhibit D**.

32.     Section 10.1 of the Agreement of Limited Partnership of Jack Enterprises Limited Partnership (the "Jack Enterprises Limited Partnership Agreement") provides that, Conor I, as the General Partner, has "full, exclusive and complete discretion in the management and control of the business and affairs of the Partnership and shall make all decisions affecting the Partnership's business and affairs." A copy of the Jack Enterprises Limited Partnership Agreement is attached hereto as **Exhibit E**.

33.     Jack Enterprises owns 99% of Maeve LLC, a Delaware limited liability company. The remaining 1% of Maeve LLC is owned by the FMP Trust.

34. The FMP Trust's control of the voting and management interests in Conor II means that the Debtor, through the FMP Trust, also controlled Martin NV I, Conor I and Jack Enterprises as of the commencement of the Bankruptcy Case.

    2. *Maeve Manager Controls Maeve LLC and Each Maeve LLC Series*

        a. *Maeve LLC and the Maeve LLC Series*

35. Maeve LLC was formed under the laws of Delaware on December 29, 2009. A copy of the Maeve LLC Certificate of Incorporation is attached hereto as **Exhibit F**.

36. The Amended and Restated Operating Agreement of Maeve, LLC (the "Maeve Operating Agreement") provides for segregated membership interests, assets, and operations into independent series (each a "Series"). A copy of the Maeve Operating Agreement is attached as **Exhibit G**.

37. Each Series within Maeve LLC is managed by a "Series Manager," which has "full and complete authority, power and discretion to manage and control the business, affairs and properties of the applicable Series." **Ex. G**, § 3.1(b).

38. Jack Enterprises owns 99% of each Maeve Series and the remaining 1% of each Maeve Series is owned by the FMP Trust. **Ex. G**, at pp. 112-147.

39. The Maeve Series own, either directly or indirectly, substantially all of the Debtor's operating entities, real estate assets and other business interests. *See* **Exs. A and G.**

        b. *Maeve Manager Manages Maeve LLC and Each Maeve Series*

40. Maeve Manager was formed under the laws of Delaware on December 28, 2009. Upon its formation, Maeve Manager issued all of the Maeve Manager A Shares to the FMP Trust and issued all of the Maeve Manager B Shares to Frank. The Maeve Manager A Shares have voting

rights and the Maeve Manager B Shares have no voting rights. A copy of the Maeve Manager's Certificate of Incorporation and Subscription Agreement is attached hereto as **Exhibit H**.

41. As of the Petition Date, the FMP Trust owned the Maeve Manager A Shares and Frank owned the Maeve Manager B Shares.

42. Maeve Manager is the Manager of Maeve LLC and the Series Manager for each Series within Maeve LLC. **Ex.G**, at pp. 76-111.

43. Accordingly, Debtor, through the FMP Trust, controlled all of the voting and management interests in Maeve Manager as of the commencement of the Bankruptcy Case.

44. The FMP Trust's control of the voting and management interests in Maeve Manager means that the Debtor, through the FMP Trust, also controlled each Series within Maeve LLC as of the commencement of the Bankruptcy Case.

### E. The Transfer of Control Provisions in the Manager Entities' Certificates of Incorporation

45. As of the Petition Date, the Debtor, through the FMP Trust, owned the Conor II A Shares and the Maeve Manager A Shares, which constitutes all of the voting shares in the Manager Entities. The Debtor's ownership of all of the "A Shares" of the Manager Entities enabled the Debtor to have full voting and management control of the Manager Entities.

46. The Debtor's voting and management control of the Manager Entities also enabled the Debtor to have full management and control over Martin NV I, Conor I, Jack Enterprises, Maeve LLC and each Maeve Series.

47. The Certificates of Incorporation for both Manager Entities contain the following identical provisions (collectively, the "Transfer of Control Provisions"):

> Any issued and outstanding shares of the class of Common B stock shall automatically convert into issued and outstanding shares of the class of Common A stock, on the basis that each One (1) issued and outstanding share of Common B stock shall automatically convert into

> One (1) issued and outstanding share of Common A stock, upon any occurrence of the "Frank M. Paris, Jr. Non-Ownership of Common A Stock Condition" (as such term is hereinafter defined). The term, "Frank M. Paris, Jr. Non-Ownership of Common A Stock Condition", shall refer to, at any time, Frank M. Paris, Jr. not being, either individually or in a fiduciary capacity for the benefit of himself. his children, and/or their descendants, if any, including without limitation, as a trustee or as a custodian for the benefit of himself, his children, and/or their descendants, if any, the sole owner of all the issued and outstanding shares of the class of Common A stock in the corporation. The officers of the corporation are authorized to take all necessary action to convert the shares of Common B stock into shares of Common A stock as described above, including without limitation, filing any necessary documents to authorize additional shares of Common A stock and issuing new stock certificates to evidence the additional shares of Common A stock.

**Exs. C and H**. The Transfer of Control Provision in the Conor II Certificate of Incorporation is referred to as the "Conor II Transfer of Control Provision." The Transfer of Control Provision in the Maeve Manager Certificate of Incorporation is referred to as the "Maeve Manager Transfer of Control Provision."

### F. Arthur Paris' Attempt to Assert Control Over the Manager Entities

48. On September 20, 2024, Arthur filed *Arthur Paris' Motion for an Order Confirming that the Stay Does Not Bar Him from Calling a Shareholders' Meeting for Certain Non-Debtor Entity to Elect a New Director and, in the Alternative, for Relief from the Stay* in the Bankruptcy Case. [ECF 249, hereinafter the "Stay Relief Motion").] In the Stay Relief Motion, Arthur seeks, among other things, an order of the Bankruptcy Court finding that the automatic stay under 11 U.S.C § 362(a) does not prevent him from voting Conor II A Shares to install a new director for Conor II. Alternatively, Arthur seeks relief from the automatic stay to allow him to vote the Conor II A Shares to install a new director for Conor II. [*Id.*].

49. Arthur concedes that the Conor II A Shares became property of the Estate upon the commencement of the Bankruptcy Case "and, as a result, [the Debtor] no longer owns such shares." [*Id.*, at ¶ 3, 19.]

50. While conceding that the Estate owns the Conor II A Shares, Arthur asserts that pursuant the Conor II Transfer of Control Provision, the Conor II B Shares became an equivalent number of Conor II A Shares automatically as of the commencement of the Bankruptcy Case – *i.e.*, all 600 Conor II B Shares became 600 Conor II A Shares upon the commencement of the Bankruptcy Case. [*Id.*, at ¶¶ 3, 18, 19.] Arthur accordingly claims he owns 66.6% of all Conor II A Shares while the Estate's interest in Conor II A Shares was reduced to 33.3%. [Id., at ¶¶ 18, 19, 28.]

51. Arthur further asserts that, pursuant to the Conor II Transfer of Control Provision, Arthur automatically obtained the majority of the voting rights and complete control over the management of Conor II upon the commencement of the Bankruptcy Case.

52. Arthur's Stay Relief Motion, if granted by the Bankruptcy Court, would prevent the Trustee from exercising any control over Conor II, Martin NV I, Conor I and Jack Enterprises.

### G. The Transfer of Control Provisions are Void under § 541 and the Estate's Interests Are Protected from Interference by § 362(a)(3)

53. Since the Petition Date, the Trustee has been investigating the Debtor's financial dealings and numerous business interests. As part of his investigation, given the State Court's substantial valuation of the Debtor's business interests, the Trustee has been investigating whether the Debtor's businesses have value that can be monetized for the benefit of the Estate and its creditors.

54. The Debtor's business operations are complicated. For that reason, the Trustee obtained Court approval to employ Development Specialists, Inc. as his financial advisor to assist

him in identifying and valuing assets of the Estate including all legal and equitable interests that the Debtor owned and controlled as of the Petition Date.

55. On August 8, 2024, the Trustee served Rule 2004 subpoenas on multiple entities controlled by the Debtor to obtain financial information concerning the Debtor's business interests. To date, neither the Debtor nor the respondents have complied with the Rule 2004 subpoenas.

56. In the meantime, Arthur filed the Stay Relief Motion alleging that the Estate no longer has voting or management control over Conor II based on the Conor II Transfer of Control Provision.

57. The Trustee asserts that the Transfer of Control Provisions are void under §§ 541(a) and 541(c)(1) and that any attempt to enforce the Transfer of Control Provisions constitute an act to exercise control over property of the Estate that should be enjoined in violation of § 362(a)(3).

58. In order to preserve the Estate's interests, the Trustee seeks a declaration that all legal and equitable interests of the Debtor as of the commencement of the Bankruptcy Case, including all voting and management interest, in the Manager Entities, are property of the Estate. The Trustee also seeks to enjoin Defendants from interfering with the Estate's voting and management interests in the Manager Entities.

## COUNT I
**(Declaratory Judgment Regarding Conor DE II, Inc. Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. §§ 541(a) and (c)(1))**

59. The Trustee incorporates by reference the allegations set forth in paragraphs 1 through 57 above, as if fully restated herein.

60. The Debtor's filing of a voluntary petition under chapter 7 of the Bankruptcy Code created the Estate under § 541(a). Under § 541(a)(1), the Estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Pursuant to § 541(c)(1),

the Debtor's interest in property became property of the Estate notwithstanding any provision in an agreement or applicable nonbankruptcy law that purports to restrict or condition transfer of such interest by the Debtor.

61. On the Petition Date, the Debtor had legal and equitable interests in the Conor II A Shares which included full voting and management control over Conor II.

62. Upon the commencement of the Bankruptcy Case, all of the Conor II A Shares became property of the Estate along with the Debtor's voting rights and management control over Conor II incident to the ownership of those shares.

63. Pursuant to § 541(c)(1), the Debtor's property interests as of the commencement of the Bankruptcy Case became Estate property despite any provision in the Conor II Certificate of Incorporation that purports to restrict or condition the transfer of such interest by the Debtor.

64. The Conor II Transfer of Control provision violates § 541(c)(1) because it operates as a contractual restriction on the transfer of the Debtor's voting and managerial interests in Conor II by (i) reducing the Debtor's 100% voting interests in Conor II to 33% and (ii) striping the Debtor of control over the management of Conor II. Thus, the Conor II Transfer of Control provision purports to prevent the transfer of the Debtor's property rights and interests to the Estate.

65. The Conor II Transfer of Control Provision directly conflicts with §§ 541(c)(1)(A) and is, therefore, void.

66. An actual controversy exists between the Trustee and Defendants.

67. A prompt judicial determination of the parties respective rights and duties is necessary and appropriate under the circumstances and warrants a judicial declaration under 28 U.S.C. § 2201.

## COUNT II
### (Declaratory Judgment Regarding Maeve Manager, Inc. Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. §§ 541(a) and (c)(1))

68. The Trustee incorporates by reference the allegations set forth in paragraphs 1 through 57 above, as if fully restated herein.

69. The Debtor's filing of a voluntary petition under chapter 7 of the Bankruptcy Code created the Estate under § 541(a). Under § 541(a)(1), the Estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Pursuant to § 541(c)(1), the Debtor's interest in property became property of the Estate notwithstanding any provision in an agreement or applicable nonbankruptcy law that purports to restrict or condition transfer of such interest by the Debtor.

70. On the Petition Date, the Debtor had legal and equitable interests in the Maeve Manager A Shares which included full voting and management control over Maeve Manager.

71. Upon the commencement of the Bankruptcy Case, all of the Maeve Manager A Shares became property of the Estate along with the Debtor's voting rights and management control over Maeve Manager incident to the ownership of those shares.

72. Pursuant to § 541(c)(1), the Debtor's property interests as of the commencement of the Bankruptcy Case became Estate property despite any provision in the Maeve Manager Certificate of Incorporation that purports to restrict or condition the transfer of such interest by the Debtor.

73. The Maeve Manager Transfer of Control provision violates § 541(c)(1) because it operates as a contractual restriction on the transfer of the Debtor's voting and managerial interests in Maeve Manager by (i) reducing the Debtor's 100% voting interests in Maeve Manager to 33% and (ii) striping the Debtor of control over the management of Maeve Manager. Thus, the Maeve

Manager Transfer of Control provision purports to prevent the transfer of the Debtor's property rights and interests to the Estate.

74. The Maeve Manager Transfer of Control Provision directly conflicts with §§ 541(c)(1) and is, therefore, void.

75. An actual controversy exists between the Trustee and Defendants.

76. A prompt judicial determination of the parties respective rights and duties is necessary and appropriate under the circumstances and warrants a judicial declaration under 28 U.S.C. § 2201.

## COUNT III
**(Injunctive Relief Under 11 U.S.C. §§ 105(a))**

77. The Trustee incorporates by reference the allegations set forth in paragraphs 1 through 75 above, as if fully restated herein.

78. Section 362(a) immediately imposed an automatic stay upon the commencement of the Bankruptcy Case and prohibited all entities from taking certain actions against the Debtor, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

79. Section 105(a) authorizes the Court to enter any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. The Bankruptcy Court is authorized to enjoin actions against non-debtors when it is satisfied that any such action would adversely impact the Estate and/or defeat or impair its jurisdiction over the Bankruptcy Case.

80. An injunction staying any attempt to exercise control over the Estate's voting and management interests in the Manager Entities via the Transfer of Control Provisions pursuant to §§ 105(a) and 362(a)(3) is necessary to: (a) preserve and protect assets of the Estate; (b) prevent harm to the Estate by interfering with the Trustee's efforts to administer the Estate in an efficient

and equitable manner and to maximize creditor recoveries; and (c) prevent substantial confusion with respect to the management and control over the Manager Entities and the Debtor's other business interests.

81. The Trustee has a substantial likelihood of success in demonstrating that the Transfer of Control Provisions are void and unenforceable under §§ 541(a) and 541(c)(1) warranting injunctive relief.

82. Enjoining Defendants serves the public interest by ensuring the orderly administration of the Estate and equitable treatment of all of the Estate's creditors as contemplated by the Bankruptcy Code.

83. If Defendants' attempts to exercise control over the Estate's property interests in the Manger Entities are allowed to proceed, the Estate will be irreparably harmed as Defendants will be interfering with the Trustee's administration of the Estate. Allowing Defendants to exercise control over the Estate's interests in the Manager Entities would impair the jurisdiction of the Bankruptcy Court and its administration of the Bankruptcy Case because Defendants would be taking control over property of the Estate – *i.e.*, the voting and management interests in the Manager Entities as well as Martin NV I, Conor I, Jack Enterprises, Maeve Manager and each Maeve Series.

84. The harm to the Estate caused by Defendants' attempt to exercise control over the Manager Entities interferes with the Trustee's administration of the Estate and outweighs the interests of Defendants in enforcing the Transfer of Control Provisions, which were void *ab initio* as of the commencement of the Bankruptcy Case.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

(a) on Count I, declare that the Conor II Transfer of Control Provision is void and unenforceable under §§ 541(a) and 541(c)(1);

(b) on Count II, declare that the Maeve Manager Transfer of Control Provision is void and unenforceable under §§ 541(a) and 541(c)(1);

(c) on Count III, enjoin Defendants from enforcing the Transfer of Control Provisions during the pendency of the Bankruptcy Case pursuant to §§ 105(a) and 362(a)(3); and

(d) on all Counts, granting the Trustee such other and further relief as is just and proper.

Respectfully submitted,

Ira Bodenstein, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.

Dated: October 8, 2024     By:    /s/ Allen J. Guon
                                                               One of his attorneys

Allen J. Guon
COZEN O'CONOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-14450
aguon@cozen.com
*Counsel for Plaintiff Trustee*