# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

## NOTICE OF MOTION

To: See Attached List

**PLEASE TAKE NOTICE** that on **October 23, 2024, at 10:30 a.m**., I will appear before the Honorable Daivd D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois 60604 **or** electronically as described below, and present the **Trustee's Motion For Turnover**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is **161 122 6457** and the passcode is **Cleary644**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

|   |   |
|---|---|
| | Ira Bodenstein, not individually, but as chapter 7 trustee for the estate of Frank Martin Paris, Jr. |
| Dated: October 15, 2024 | By:  /s/ Allen J. Guon  <br> One of his attorneys |

LEGAL\73511823\1

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-4450
aguon@cozen.com

## CERTIFICATE OF SERVICE

Allen J. Guon, an attorney, certifies that he caused to be served a true copy of **Notice of Motion** and **Trustee's Motion For Turnover** upon the Electronic Mail Notice List through the ECF System (unless otherwise indicated) which sent notification of such filing via electronic means on October 15, 2024.

/s/ Allen J. Guon

## Mailing Information for Case 23-16481

**Electronic Mail Notice List**

- **Hall Adams**   hall@adamslegal.net
- **Paul M Bauch**   pbauch@bmlawllc.com, smohan@bmlawllc.com;5242@notices.nextchapterbk.com
- **Ira Bodenstein**   iratrustee@cozen.com, IL29@ecfcbis.com
- **Adam Brief**   Ustpregion11.es.ecf@usdoj.gov
- **Timothy W Brink**   tbrink@mpslaw.com, crampich@mpslaw.com
- **Cheryl A Considine**   bankruptcy@hsbattys.com, bk-4hsbm@gmail.com,hbm@ecf.courtdrive.com
- **Thomas C Cronin**   tcc@cronincoltd.com
- **Sean B Crotty**   sbc@cronincoltd.com, admin@cronincoltd.com
- **Daniel P. Dawson**   ddawson@nisen.com, adrag@nisen.com
- **David DeCelles**   david.decelles@usdoj.gov
- **William J Factor**   wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bsass@wfactorlaw.com;wfactor@ecf.courtdrive.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com
- **John J Foley**   jack@foleylitigation.com
- **Allen J Guon**   aguon@cozen.com, allen-guon-6333@ecf.pacerpro.com;cknez@cozen.com
- **Thomas Herz Jr.**   tgahlaw@yahoo.com
- **Steve Jakubowski**   sjakubowski@robbinsdimonte.com, steve.jakubowski.lp@gmail.com
- **Cari A Kauffman**   ckauffman@sormanfrankel.com, dfrankel@sormanfrankel.com
- **Thomas S. Leo**   sleo@leolawpc.com, paralegal@leolawpc.com
- **Robert Lynch**   robert.lynch2@illinois.gov, robert.lynch@ilag.gov

- **Sonette Magnus** smagnus@thompsoncoburn.com
- **Ann Addis Pantoga** apantoga@thompsoncoburn.com
- **Robert Radasevich** rradasevich@nge.com, ewilson@nge.com,ecfdocket@nge.com
- **Steven R Rogovin** srogovin@mpslaw.com, crampich@mpslaw.com
- **Carole G. Ruzich** carole@griffingallagher.com
- **Carolina Y. Sales** csales@robbinsdimonte.com, mrussell@robbinsdimonte.com;jtronina@robbinsdimonte.com
- **Ariel Weissberg** ariel@weissberglaw.com, Hava@weissberglaw.com;rakesh@weissberglaw.com;oleh@weissberglaw.com;6010998420@filings.docketbird.com
- **Jacob Wright** jwright@dahlfirm.com
- **Steven Yachik** syachik@kelleydrye.com, KDWBankruptcyDepartment@kelleydrye.com

**Manual Notice List (in the manner indicated)**

**Via Email**
Frank Martin Paris, Jr.
1525 W. Homer, Suite 400
Chicago, IL 60642
mparis@sedgwickproperties.com

**Via Email**
Patrick O'Malley
Taylor Caruso
Development Specialists, Inc.
10 South LaSalle Street, Suite 3300
Chicago, Illinois 60603
Pomalley@DSIConsulting.com
tcaruso@DSIConsulting.com

**Via First Class Mail and Email**
Thomasina Dodd
Account Representative II | Specialty Area – Bankruptcy
GM Financial
P.O. Box 1510
Cockeysville, MD 21030-7510
thomasina.dodd@gmfinancial.com

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

## TRUSTEE'S MOTION FOR TURNOVER

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Debtor"), pursuant to 11 U.S.C. §§ 521(a), 542(a) and 704(a)(1), requests the entry of an order requiring the Debtor to turnover to the Trustee the Debtor's 2019 Cadillac Escalade ESV (the "Escalade"). In support of the Motion, the Trustee respectfully states as follows:

## BACKGROUND

1. On December 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code"), thereby commencing this chapter 7 bankruptcy case (the "Case") and creating the Debtor's estate (the "Estate").

2. On February 21, 2024, the Debtor filed a motion to convert his pending chapter 7 case to a case under subchapter V of chapter 11. [Dkt. No. 65.] The Court denied the Debtor's motion on the basis that conversion to chapter 11 would be futile as reflected in the *Order Denying Motion to Convert to Chapter 11*, dated June 17, 2024. [Dkt. No. 177.]

3. On June 12, 2024, the Trustee issued his initial report of assets and requested that notice be sent to creditors fixing the time for filing claims. [Dkt. No. 173.]

4. The Trustee has not yet concluded the § 341 meeting of creditors. The continued § 341 meeting will be scheduled once the Debtor complies with his obligation to produce the records requested by the Trustee.

5. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 157(b)(2) and 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue of this proceeding and motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(E).

## BACKGROUND

6. The Debtor is an individual whose Estate includes, among other assets, the ownership of the Escalade. A copy of the *Certificate of Title of A Vehicle* is attached as **Exhibit A**.

7. The Debtor failed to list the Escalade in his Schedule A/B. [*See* Dkt. No. 38, 70.]

8. The Escalade is the Debtor's possession, custody, or control.

9. The Trustee obtained a copy of the *Retail Installment Contract* reflecting the Debtor's acquisition and financing of the Escalade on June 29, 2020. A copy of the Retail Installment Contact is attached as **Exhibit B**.

10. As of September 14, 2024, the balance due AmeriCredit Financial Services d/b/a GM Financial ("GM Financial") under the Retail Installment Contract was $25,031.58.

11. Based on the Trustee's investigation, the Debtor has equity in the Escalade and the Debtor continues to use the Escalade without compensation to the Estate.

12. The Trustee, through his counsel, offered to sell the equity in the Escalade to the Debtor for a payment in the total amount of $10,000. In response, the Debtor's counsel said that

the Debtor would obtain a CarMax appraisal of the Escalade. To date, neither the Debtor nor his counsel have provided a CarMax appraisal of the Escalade to the Trustee.

13. The Debtor's failure to respond has been prejudicial to the Trustee's administration of the Estate.

## RELIEF REQUESTED

14. By this Motion, the Trustee seeks the entry of an order, pursuant to §§ 521(a), 542(a) and 704(a)(1) of the Bankruptcy Code, requiring and directing the Debtor to turn over the Escalade to the Trustee at a car dealership to be chosen by the Trustee, at a time and date to be chosen by the Trustee, upon the entry of this Order. The Trustee will provide a minimum of two (2) days' notice to the Debtor of the date, time and location for the turnover of the Escalade.

15. The Trustee intends to sell the Escalade for the benefit of the Debtor's creditors.

## BASIS FOR RELIEF

16. Property of the Estate must be turned over to the Trustee. 11 U.S.C. § 542(a); s*ee also Thompson v. General Motors Acceptance Corp.*, *LLC*, 566 F.3d 699, 704 (7th Cir. 2009) (turnover under § 542(a) is compulsory). Section 542(a) of the Bankruptcy Code provides that "an entity ... in possession, custody, or control ... of property that the trustee may use, sell, or lease … shall deliver to the trustee, and account for, such property or the value of such property." 11 U.S.C. § 542(a).

17. Section 521 of the Bankruptcy Code sets forth many of the debtor's duties to cooperate with a chapter 7 trustee. Section 521(a)(4) of the Bankruptcy Code imposes a mandatory duty of the Debtor to "surrender to the trustee all property of the estate." 11 U.S.C. § 521(a)(4). Further, § 521(a)(3) of the Bankruptcy Code requires the debtor to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties [under the Bankruptcy Code]."

18. Section 704(a) of the Bankruptcy Code sets forth a chapter 7 trustee's duties. Section 704(a)(1) provides that the trustee "shall … collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a)(1). Here, the Debtor is in possession of certain property of the Estate—namely, the Escalade—which the Trustee has a duty to collect and reduce to money. 11 U.S.C. § 704(a)(1). While the Trustee previously offered to allow the Debtor to keep the Escalade in exchange for the Debtor's payment of the difference between value of the vehicle and the balance due GM Financial, the Debtor has neither obtained the CarMax appraisal nor made a counteroffer to the Trustee. Accordingly, the Debtor should be ordered to immediately turn over to the Trustee the Escalade so that the Trustee can sell the Escalade for the benefit of the Debtor's creditors.

19. The Trustee will separately pay GM Financial for the balance due under the Retail Installment Contract at the time of sale.

WHEREFORE, the Trustee respectfully requests that the Court enter an order: (i) directing the Debtor to turn over the Escalade to the Trustee as set forth in this motion; and (ii) providing such other and further relief as the Court deems appropriate under the circumstances.

    Respectfully submitted,

    Ira Bodenstein, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.

Dated: October 15, 2024    By:    /s/ Allen J. Guon
    One of his attorneys

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-4450
aguon@cozen.com
*Counsel for Trustee*

# EXHIBIT A

# STATE OF ILLINOIS

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO |
|---|---|---|---|---|---|
| 1GYS4JKJ9KR331810 | 2019 | CADILLAC | ESCALADE | UTILITY | 20213696891 |
| 1GYS4JKJ9KR331810 | | | | | |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ FT | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 07/31/20 | 21088 | | | 06/29/20 | ORIGINAL |
| | 21088 | | | USED | |

LEGEND(S)
ACTUAL MILEAGE

MAILING ADDRESS

GM FINANCIAL
PO BOX 1510
COCKEYSVILLE MD 21030-7510

OWNER(S) NAME AND ADDRESS
MARTIN F PARIS JR
711 PARK AVE
RIVER FOREST IL 60305-1705

FIRST LIENHOLDER NAME AND ADDRESS
GM FINANCIAL
PO BOX 1510
COCKEYSVILLE MD 21030-7510

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged

_____ By _____ Date _____
Firm Name                Signature of Authorized Agent

_____ By _____ Date _____
Firm Name                Signature of Authorized Agent

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State
Secured Party                                    Address

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

▶ ODOMETER READING [NO TENTHS]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller
Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO
R5139251



*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

---

MUST BE COMPLETED BY SELLER | DO NOT DETACH UNTIL SOLD / NOTICE OF SALE | SEE INSTRUCTIONS ON REVERSE



CADILLAC          2019                1GYS4JKJ9KR331810
Vehicle Make      Vehicle Year        Vehicle Identification Number (VIN)          Date

_____        _____
Name of Seller (Current Registered Owner)   Name of Buyer

_____        _____
Complete Address of Seller                  Complete Address of Buyer

City          State          ZIP            City          State          ZIP

Under penalties of perjury I hereby certify that the foregoing is true and correct under the laws of the United States

_____        _____
Seller's Signature                          Printed Name of Seller                   Date

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens except as noted, and has been transferred to the following printed name and address

Name of Purchaser _____ Street _____ City _____ State _____ Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING [NO TENTHS]
- [ ] 1 The mileage stated is in excess of its mechanical limits.
- [ ] 2 The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No _____

Agent's Signature _____ Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent _____ Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING [NO TENTHS]
- [ ] 1 The mileage stated is in excess of its mechanical limits
- [ ] 2 The odometer reading is not the actual mileage WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No. _____

Agent's Signature _____ Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent _____ Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

Name of Purchaser _____ Street _____ City _____ State _____ Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING [NO TENTHS]
- [ ] 1. The mileage stated is in excess of its mechanical limits
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No _____

Agent's Signature _____ Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent _____ Printed Name (same as signature)

## FOURTH REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address

Name of Purchaser _____ Street _____ City _____ State _____ Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ ODOMETER READING [NO TENTHS]
- [ ] 1 The mileage stated is in excess of its mechanical limits
- [ ] 2 The odometer reading is not the actual mileage WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No _____

Agent's Signature _____ Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent

Signature of Buyer/Agent _____ Printed Name (same as signature)

## LAST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

▶ ODOMETER READING [NO TENTHS]
- [ ] 1 The mileage stated is in excess of its mechanical limits
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No _____

Agent's Signature _____ Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature)

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title

# EXHIBIT B

# LAW 553-IL-eps 1/20

## RETAIL INSTALLMENT CONTRACT
## SIMPLE FINANCE CHARGE

Contract Number:

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| MARTIN F PARIS JR<br>711 PARK AVE<br>RIVER FOREST, IL 60305<br>COOK CO | N/A | ETTLESON CADILLAC BUICK GMC<br>6201 South Lagrange Rd.<br>Hodgkins, IL 60525 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit for the deferred payment price under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. If any amount remains unpaid fifteen days after the final payment due date, we will assess finance charges on the unpaid balance at the Annual Percentage Rate shown in the Truth-in-Lending Disclosures. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2019 | CADILLAC ESCALADE ESV | 21088 | 1GYS4JKJ9KR331810 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural ☐ _N/A_ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 6.90 % | $ 15,177.25 | $ 66,685.31 | $ 81,862.56 | $ 81,862.56 |

**Returned Check Charge:** If any check or other draft you give us is dishonored, or any electronic payment is returned unpaid, you will pay us a charge of $25 or, at our option, an amount in excess of $25 for our costs and expenses, including reasonable attorney's fees incurred in collection of the check or draft. We will make written demand on you if we elect to pursue a nonlitigated collection action against you for our costs and expenses in excess of $25.

### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1,136.98 | MONTHLY beginning 08/13/20 |
| N/A | $ N/A | N/A |
|  |  | N/A |

**APPLICABLE LAW**
Federal law and the law of the state of Illinois apply to this contract.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $ _N/A_** and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __10__ or 5% of the part of the payment that is late, whichever is greater.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### FOR USED VEHICLES ONLY
Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.

**ATTENTION CONSUMER: SIGN HERE ONLY IF THE SELLER HAS TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM OR PROBLEMS AND YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN CONSUMIDOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO SEGÚN ESTOS TÉRMINOS:**

1. N/A    2. N/A    3. N/A

X N/A _____ N/A          X N/A _____ N/A
Buyer Signs          (Date)          Co-Buyer Signs          (Date)

Buyer Signs X [signature]          Co-Buyer Signs X N/A          LAW 553-IL-eps 1/20 v1   Page 1 of 5

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ 5,059.31 sales tax) $ 66,059.31 (1)

2. Total Downpayment =
   Trade-In _____ N/A _____
           (Year)    (Make)    (Model)

   | | |
   |---|---|
   | Gross Trade-In Allowance | $ N/A |
   | Less Pay Off Made By Seller to N/A | $ N/A |
   | Equals Net Trade In | $ N/A |
   | + Cash | $ N/A |
   | + Other N/A | $ N/A |
   | + Other N/A | $ N/A |
   | + Other N/A | $ N/A |
   | (If total downpayment is negative, enter "0" and see 4K below) | $ 0.00 (2) |

3. Unpaid Balance of Cash Price (1 minus 2) $ 66,059.31 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):

   A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
   Life $ N/A Term N/A
   Disability $ N/A Term N/A $ N/A
   
   B. Vendor's Single Interest Insurance Paid to Insurance Company $ N/A
   C. Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   D. Optional Gap Contract $ N/A
   E. Official Fees Paid to Government Agencies
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
      to N/A for N/A $ N/A
   F. Government Taxes Not Included in Cash Price $ N/A
   G. Government License and/or Registration Fees
      LICENSE AND/OR REG FEES $ 151.00
   H. Optional ERT Fee Paid To ETTLESON CADILLAC BUICK GMC $ 25.00
   I. Government Certificate of Title Fees $ 150.00
   J. To Seller for Documentary Fee $ 300.00

   DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $300, WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

   K. Other Charges (Seller must identify who is paid and describe purpose)
   to N/A for Prior Credit or Lease Balance $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A
   to N/A for N/A $ N/A

   Total Other Charges and Amounts Paid to Others on Your Behalf $ 626.00 (4)

5. Amount Financed (3 + 4) $ 66,685.31 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS _____

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A
                    Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

Buyer Signs X [signature]    Co-Buyer Signs X N/A

---

**INSURANCE.** YOU MAY BUY THE PHYSICAL DAMAGE INSURANCE THIS CONTRACT REQUIRES FROM ANYONE YOU CHOOSE WHO IS ACCEPTABLE TO US. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us.

You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is checked on page 1.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A
N/A

**CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.** Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance
☐ N/A                          N/A
  Type of Insurance           Term
Premium $ N/A
Insurance Company Name N/A
                              N/A
Home Office Address N/A
                              N/A

☐ N/A                          N/A
  Type of Insurance           Term
Premium $ N/A
Insurance Company Name N/A
                              N/A
Home Office Address N/A
                              N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the optional credit insurance and the other insurance checked above.

X _____ N/A
Buyer Signature           Date

X _____ N/A
Co-Buyer Signature        Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

You understand that Seller or its affiliates, or any holder of the contract or its affiliates, may receive consideration or something of value in connection with the sale of insurance purchased with this retail installment contract.

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   Fifteen days after the final installment is due as originally scheduled or deferred, we will compute and charge interest on any balance remaining unpaid, including any unpaid default charges or deferment charges, at the Annual Percentage Rate shown on page 1 of this contract.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract, on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. You agree to name us on your insurance policy as an additional insured and as loss payee. The insurance must cover our interest in the vehicle. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   Unless you provide us with evidence of the insurance coverage required by this contract, we may buy insurance at your expense to protect our interests in the vehicle. This insurance may, but need not, protect your interests. The coverage that we buy may not pay any claim that you make or any claim that is made against you in connection with the vehicle. You may later cancel any insurance we buy, but only after providing us with evidence that you have obtained insurance as required by this contract. If we buy insurance for the vehicle, you will be responsible for the costs of that insurance, including finance charges and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. We may add the costs of the insurance to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.
   If we buy insurance, the charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the rate we are charging when we buy the insurance.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right the law gives you to reinstate this contract. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information during credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay our reasonable attorney's fee as the law allows. If a judgment is entered against you, you will pay any court costs the court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.
   f. **We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

Buyer Signs X [signature]   Co-Buyer Signs X _____

LAW 553-IL-eps 1/20 v1   Page 3 of 5

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**

   If the vehicle you purchased is a new vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.

   If the vehicle you purchased is a used vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no express warranties on the vehicle, and there will be no implied warranties of fitness for a particular purpose. The vehicle is subject to an implied warranty of merchantability, but only to the extent required by Illinois law. The implied warranty of merchantability expires at midnight of the 15th calendar day after delivery of the vehicle or until the vehicle is driven 500 miles after delivery, whichever is earlier. This implied warranty of merchantability does not extend to damage that occurs after the sale that results from: (1) off-road use; (2) racing; (3) towing; (4) abuse; (5) misuse; (6) neglect; (7) failure to perform regular maintenance; and (8) failure to maintain adequate oil, coolant, and other required fluids or lubricants.

   The above provisions do not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

   **Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**

   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM: (1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

---

Buyer Signs   Co-Buyer Signs X N/A

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business use.
If a payment is not received in full within ____N/A____ days after it is due, you will pay a late charge of $____N/A____ or ____N/A____ % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _(signed)_ Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

### Notice to the buyer.
1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

### RETAIL INSTALLMENT CONTRACT

Buyer Signs X _(signed)_ Date 06/29/20 Co-Buyer Signs X N/A Date N/A
Buyer Printed Name MARTIN F PARIS JR Co-Buyer Printed Name
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A Title

**Co-Buyer** A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the buyer, or (3) will be listed as an owner of the vehicle's title. By signing above, the co-buyer confirms that the co-buyer will actually receive possession of the vehicle or will use it, or that the co-buyer is a parent or spouse of the buyer, or will be listed as an owner on the vehicle's title.

**Guarantor** A guarantor is a person who may be responsible for paying the entire debt if we cannot collect the amount owed from the buyer and any co-buyer.

Guarantor Signs X N/A Date N/A Address N/A
I hereby guarantee the collection of the described amount (on page 1 of this contract) upon failure of the seller named herein to collect said amount from the buyer named herein. I also consent to the Creditor having a security interest in the vehicle.

**Other Owners** An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this Contract.

Other Owner Signs X N/A Date N/A Address N/A

Seller signs ETTLESON CADILLAC BUICK GMC By X _(signed)_ Title

## NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION

Seller assigns its interest in this contract to GM FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse [X] Assigned without recourse ☐ Assigned with limited recourse
Seller ETTLESON CADILLAC BUICK GMC
By X _(signed)_ Title

**LAW** FORM NO. 553-IL-eps (REV. 1/20)
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM.
CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-IL-eps 1/20 v1 Page 5 of 5

 **GM FINANCIAL**

4001 Embarcadero Drive
Arlington, Texas 76014

GMF Application #: 932999125
Please fax completed form to (877) 912-9660

## ASSIGNMENT

This ASSIGNMENT is attached to and expressly made a part of that certain Retail Installment Contract pertaining to the sale and financing of a motor vehicle (the "Contract") more particularly described as follows:

**Date of Contract**  **Seller**  **Buyer(s)**

Ettleson Cadillac Buick GMC  Paris, Martin

FOR VALUE RECEIVED, the Seller identified above ("Seller") hereby sells, assigns and transfers to AmeriCredit Financial Services, Inc. d/b/a GM Financial*, its successors and assigns ("GM Financial"), Seller's entire right, title and interest in and to the Contract and authorizes GM Financial to do every act and thing necessary to collect and discharge obligations arising out of or incident to the Contract. The Assignment of the Contract shall be WITHOUT RECOURSE to the Seller unless noted below. Seller acknowledges that, notwithstanding anything to the contrary contained in said Contract, including references in the Contract to assignees other than GM Financial, if any, this Assignment shall be effective to transfer Seller's rights in the Contract to GM Financial.

_____
**Dealer-Seller**

_____   ___6/29/2020___
**By**                               **Date**

Assignment of the Contract shall be WITHOUT RECOURSE unless noted below.

Dealer-Seller and GM Financial must initial._____

* Assignment is to the following entities in the following states:

GM Financial of Arizona    -    Arizona
GM Financial of Wisconsin  -    Wisconsin

Revision Date: 10/02/13                Form 405 – Assignment to Retail Installment Contract