**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

## NOTICE OF MOTION

To:     See Attached List

      **PLEASE TAKE NOTICE** that on **December 18, 2024, at 11:00 a.m**., I will appear before the Honorable Daivd D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the United States Courthouse, 219 S. Dearborn Street, Chicago, Illinois 60604 **or** electronically as described below, and present the **Joint Motion of the Trustee and Debtor to (I) Approve Settlement Stipulation, (II) Dismiss the Chapter 7 Bankruptcy Case; and (III) Grant Related Relief**, a copy of which is attached.

      **Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

      **To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

      **To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

      **Meeting ID and passcode**. The meeting ID for this hearing is **161 122 6457** and the passcode is **Cleary644**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

      **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

Ira Bodenstein, not individually, but as
chapter 7 trustee for the estate of Frank
Martin Paris, Jr.

Dated: November 27, 2024        By:    /s/ Allen J. Guon         
                                                  One of his attorneys

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-4450
aguon@cozen.com


## CERTIFICATE OF SERVICE

Allen J. Guon, an attorney, certifies that he caused to be served a copy of this **Notice of Motion** and the attached **Joint Motion of the Trustee and Debtor to (I) Approve Settlement Stipulation, (II) Dismiss the Chapter 7 Bankruptcy Case; and (III) Grant Related Relief** on each entity shown on the list below at the address shown and by the method indicated on the list on November 27, 2024.

/s/ Allen J. Guon

## Mailing Information for Case 23-16481

**Electronic Mail Notice List**

- **Hall Adams**    hall@adamslegal.net
- **Paul M Bauch**    pbauch@bmlawllc.com, smohan@bmlawllc.com;5242@notices.nextchapterbk.com
- **Ira Bodenstein**    iratrustee@cozen.com, IL29@ecfcbis.com
- **Adam Brief**    Ustpregion11.es.ecf@usdoj.gov
- **Timothy W Brink**    tbrink@mpslaw.com, crampich@mpslaw.com
- **Cheryl A Considine**    bankruptcy@hsbattys.com, bk-4hsbm@gmail.com,hbm@ecf.courtdrive.com
- **Thomas C Cronin**    tcc@cronincoltd.com
- **Sean B Crotty**    sbc@cronincoltd.com, admin@cronincoltd.com
- **Daniel P. Dawson**    ddawson@nisen.com, adrag@nisen.com
- **David DeCelles**    david.decelles@usdoj.gov
- **William J Factor**    wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bsass@wfactorlaw.com;wfactor@ecf.courtdrive.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com
- **John J Foley**    jack@foleylitigation.com
- **Allen J Guon**    aguon@cozen.com, allen-guon-6333@ecf.pacerpro.com;cknez@cozen.com
- **Thomas Herz Jr.**    tgahlaw@yahoo.com
- **Steve Jakubowski**    sjakubowski@robbinsdimonte.com, steve.jakubowski.lp@gmail.com
- **Cari A Kauffman**    ckauffman@sormanfrankel.com, dfrankel@sormanfrankel.com
- **Thomas S. Leo**    sleo@leolawpc.com, paralegal@leolawpc.com

- **Robert Lynch**   robert.lynch2@illinois.gov, robert.lynch@ilag.gov
- **Sonette Magnus**   smagnus@thompsoncoburn.com
- **Ann Addis Pantoga**   apantoga@thompsoncoburn.com
- **Lars A Peterson**   lpeterson@wfactorlaw.com, bsass@wfactorlaw.com;lpeterson@wfactorlaw.com
- **Robert Radasevich**   rradasevich@nge.com, ewilson@nge.com,ecfdocket@nge.com
- **Steven R Rogovin**   srogovin@mpslaw.com, crampich@mpslaw.com
- **Carole G. Ruzich**   carole@griffingallagher.com
- **Carolina Y. Sales**   csales@robbinsdimonte.com, mrussell@robbinsdimonte.com;jtronina@robbinsdimonte.com
- **Ariel Weissberg**   ariel@weissberglaw.com, Hava@weissberglaw.com;rakesh@weissberglaw.com;oleh@weissberglaw.com;6010998420@filings.docketbird.com
- **Jacob Wright**   jwright@dahlfirm.com
- **Steven Yachik**   syachik@kelleydrye.com, KDWBankruptcyDepartment@kelleydrye.com

**Manual Notice List** (Via U.S. Mail, unless otherwise indicated)

Patrick O'Malley
Development Specialists, Inc.
10 South LaSalle Street, Suite 3300
Chicago, IL  60603
Pomalley@DSIConsulting.com
(Via Email)

Beerman, LLP
161 N. Clark St. #3000
Chicago, IL 60601

315 W. North Ave., L.P.
c/o Robert Radasevich
Two N. LaSalle Street, Suite 1700
Chicago, IL 60602

Peter O'Brien, Sr.
c/o Robert Radasevich
Two N. LaSalle Street, Suite 1700
Chicago, IL 60602

Illinois Department of Revenue - Bankruptcy
PO Box 19305
Springfield, IL 62794-9305

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Illinois Department of Revenue - Bankruptcy
PO Box 19305
Springfield, IL 62794-9305

Capital One, N.A.
by AIS InfoSource LP as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118

Stout Risius Ross, LLC
One South Wacker Drive, 38th Fl
Chicago, IL 60606

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, TX 75001

PeopleFirst Bank
c/o Carole G. Ruzich
Griffin & Gallagher, LLC
10001 S. Roberts Road
Palos Hills, IL 60465

Keystone & Stuart LLC
6859 SE Marina Way
Stuart, FL 34996

Angelini, Ori & Abate, LLC
155 N. Michigan Ave., #400
Chicago, IL 60601

AmeriCredit Financial Services, Inc.
 dba GM Finance
P O Box 183853
Arlington, TX 76096

Endurance Assurance Corporation
T. Scott Leo
The Law Offices of T. Scott Leo, P.C.
100 N. LaSalle Ste 514
Chicago, IL 60602

BDS III Mortgage Capital G LLC
c/o Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

Kerry Paris
Sean B Crotty
c/o Cronin & Co., Ltd.
120 N. LaSalle St., 20th Floor
Chicago, IL 60602

Cronin & Co., Ltd.
120 North LaSalle Street
20th Floor
Chicago, IL 60602

Republic Bank of Chicago
Steven R. Rogovin, c/o Meltzer, Purtill & Stelle
125 South Wacker Drive, Suite 2900
Chicago, IL 60606

Beverly Bank & Trust Company N.A.
c/o Sonette Magnus, Thompson Coburn LLP
One US Bank, 27th Floor
St. Louis, MO 63101

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

**JOINT MOTION OF THE TRUSTEE AND THE DEBTOR TO: (I) APPROVE SETTLEMENT STIPULATION; (II) DISMISS THE CHAPTER 7 BANKRUPTCY CASE; AND (III) GRANT RELATED RELIEF**

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. and the Debtor Frank Martin Paris, Jr. (the "Debtor," and together with the Trustee, the "Movants") pursuant to 11 U.S.C. § 707(a), Fed. R. Bankr. P. 1017(a), 2002(a), 9006(c), 9007 and 9019(a) and Local Bankruptcy Rule 1017-3, requests the entry of an order (i) approving the settlement stipulation reached between the Trustee, the Debtor, Arthur Paris ("Arthur") and Keystone & Stuart, LLC ("K&S," and together with the Trustee, the Debtor and Arthur, the "Parties"), and memorialized in the *Stipulation Resolving Debtor's Chapter 7 Bankruptcy Case* (the "Stipulation") a copy of which is attached hereto as **Exhibit 1**; (ii) dismissing the Debtor's chapter 7 bankruptcy case and all related adversary proceedings; (iii) granting related relief. In support of this motion, Movants respectfully states as follows:

**JURISDICTION**

1.  On December 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code"), thereby commencing this chapter 7 bankruptcy case (the "Bankruptcy Case") and creating the Debtor's estate (the "Estate"). As of the Petition Date, substantially all of the Debtor's property became property of the Estate pursuant to § 541 of the Bankruptcy Code.

2.      On the Petition Date, Ira Bodenstein was appointed as the chapter 7 trustee of the Estate.

3.      The Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 157(b)(2) and 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue of this proceeding and Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) and (O).

## BACKGROUND

### A.      The Commencement of the Debtor's Chapter 7 Bankruptcy Case

4.      On May 1, 2016, Kerry Paris ("Kerry") filed her *Petition for Dissolution of Marriage* ("Petition") in the Circuit Court of Cook County, Illinois, Domestic Relations Division ("Divorce Court") seeking dissolution of her marriage to the Debtor in the matter of *Kerry Paris v. Frank Martin Paris, Jr.*, Case No. 2016-D-004685 ("Divorce Case"). On June 2, 2016, the Debtor filed his *Counter Petition for Dissolution of Marriage and Other Relief* in the Divorce Case against Kerry.

5.      On December 2, 2022, the Divorce Court entered its (i) Memorandum and Order: Judgment for Dissolution of Marriage ("JDOM"), and (ii) Opinion Memorandum and Allocation Judgment of Parental Responsibilities and Parenting Plan.

6.      The disputes between Kerry and the Debtor over the Debtor's compliance with his domestic support obligations continued after the State Court entered the JDOM.

7.      On January 19, 2024, the Court determined, among other things, that Kerry's continued enforcement proceedings in the State Court to collect the domestic support obligations from property that was not property of the Estate did not violate the automatic stay under § 362(a) of the Bankruptcy Code.

8.      On February 21, 2024, the Debtor filed a motion to convert his pending chapter 7 case to a case under subchapter V of chapter 11. [Dkt. No. 65.] The Court denied the Debtor's as reflected in the *Order Denying Motion to Convert to Chapter 11*, dated June 17, 2024. [ECF 177.]

**B.      The Debtor's Business Interests**

9.      The Debtor's Amended Schedules and Statement of Financial Affairs reported that the Debtor has ownership interests (either individually or through the Frank M. Paris Jr. Revocable Trust) in over 40 separate entities all valued in an "unknown" amount (the "Debtor Related Entities"). [Sched. A, at 4-5 Q. 19, 25.] From the Trustee's perspective, the ownership structure of the Debtor's various businesses is exceedingly complex and was designed for, among other things, "[b]usiness and liability protection."[1] [JDOM, at pp. 53-57.]

10.     Given the complexity of the ownership structure of the Debtor's businesses, the Trustee, with the assistance of his counsel and his financial advisor, began an extensive investigation of Debtor Related Entities and their value to the Estate.

**C.      The Pending Rule 2004 Subpoenas and Rule to Show Cause**

11.     On August 8, 2024, the Trustee served Rule 2004 subpoenas on thirteen of the Debtor Related Entities (the "Examinees") to obtain information regarding whether the Examinees' assets could be monetized for the benefit of the Estate. [ECF 218.]

12.     On September 25, 2024, the Court entered the Order to Show Cause ("Show Cause Order"), directing the Debtor and the Examinees to respond to the Rule 2004 subpoenas. [ECF 257.]

---

[1] For example, in the proceedings before the Divorce Court, the Debtor described his "Maeve" investment entities as "*a sophisticated series of various [c]ompanies (alphabetically lettered from A to LL) that own: 1) cash and marketable securities; 2) real property; 3) operating companies; 4) undivided interests in real property; and 5) other companies that no longer hold real estate or assets.*" [JDOM, at 53 (emphasis original).]

13.     After the entry of the Show Cause Order, the Examinees produced certain documents in response to the Rule 2004 subpoenas. The Debtor and the Examinees contend they have fully responded to the Show Cause Order and fully complied with any obligation to produce materials in response to the Rule 2004 subpoenas. The Trustee has not yet determined whether the Examinees have fully complied with the Rule 2004 subpoenas.

14.     The Show Cause Order against the Debtor and Examinees remain pending before the Court.

**D.      The Pending Sale Motion and Related Adversary Proceeding**

15.     On March 18, 2024, the Trustee filed the *Trustee's Motion for the Entry of an Order Authorizing the Sale of Real Estate and for Related Relief* (the "Sale Motion"). [ECF 86.] In the Sale Motion, the Trustee sought to sell the Estate's interest in property commonly known as 703 Park Avenue, River Forest, Illinois (the "Real Estate"). The Debtor and Kerry, among others, objected to the Sale Motion.

16.     In response to Kerry's objection to the Sale Motion, on June 20, 2024, the Trustee commenced an adversary proceeding (the "Sale Adversary") against Kerry seeking authority to sell the Real Estate free and clear of Kerry's co-ownership interest. [Adv. Pro. 24-00164.]

17.     Kerry filed a motion to dismiss the Sale Adversary proceeding, which has not been fully briefed.

18.     The Sale Motion and the Sale Adversary remain pending before the Court.

**E.      The Pending Stay Relief Motions and Related Adversary Proceeding**

19.     On August 8, 2024, K&S filed *Keystone & Stuart, LLC's Motion to Modify Automatic Stay* (the "K&S Stay Motion"). [ECF 219.] In the K&S Stay Motion, K&S sought to modify the automatic stay to pursue its asserted rights as a secured creditor to foreclose on a portion

of the Debtor's voting stock in Martin NV II, Inc. ("Martin NV II"). The Trustee objected to the K&S Stay Motion.

20.     On September 20, 2024, Arthur filed *Arthur Paris' Motion for an Order Confirming that the Stay Does Not Bar Him from Calling a Shareholders' Meeting for Certain Non-Debtor Entity to Elect a New Director and, in the Alternative, for Relief from the Stay* (the "Arthur Stay Motion"). [ECF 249.] In his motion, Arthur requested the entry of an order modifying the automatic stay to pursue his asserted right to vote certain shares in Conor DE II, Inc. ("Conor II"). The Trustee objected to the Arthur Stay Motion.

21.     On October 8, 2024, the Trustee filed his *Complaint for Declaratory Judgment and Injunctive Relief* against the Debtor's father, Arthur, Conor II, and Maeve Manager, Inc. (the "Declaratory Adversary," and together with the Sale Adversary, the "Adversary Proceedings"). [Adv. Pro. 24-00315.] In the Declaratory Adversary, the Trustee sought, among other things, a judicial declaration that the Debtor's voting and management interests in Conor II and Maeve Manager, Inc. (collectively, the "Manager Entities") are property of the Estate and that the Estate retained all of the Debtor's voting and management interests in the Manager Entities.

22.     The Defendants in the Declaratory Adversary filed their answer to the Trustee's complaint and the Bankruptcy Court subsequently entered an order setting a briefing schedule on cross-motions for summary judgment. The cross-motions for summary judgment have not yet been briefed by the parties.

23.     On October 16, 2024, the Trustee also filed the *Trustee's Motion for the Entry of an Order (I) Authorizing the Trustee to Use the Estate's Ownership, Voting, and Management Interests to Obtain Access to the Books and Records of Certain Operating Entities and (II) Approving Shortened and Limited Notice* (the "Management Motion"). [ECF 267.] In the

Management Motion, the Trustee sought approval of the Trustee's use of the Estate's ownership, voting and management interests to provide the Trustee and his professionals with unrestricted access to the financial and business records over seven of the Debtor Related Entities. The Debtor objected to the Management Motion.

24. The K&S Stay Motion, the Arthur Stay Motion, the Management Motion and the Declaratory Adversary remain pending before the Court.

**F.    The Pending Motion for Turnover and Assignment of Rights**

25. On November 6, 2024, the Trustee filed the *Trustee's Motion for Entry of an Order: (I) Requiring the Debtor to Turnover Certain Watercraft Assets; and (II) Authorizing the Trustee to Enter Into the Assignment of Watercraft Assets with Kerry Paris* (the "Turnover Motion"). [ECF 272.] In the Turnover Motion, the Trustee sought the entry of an order (i) requiring the Debtor to turnover to the Estate a 1957 Century Resorter and certain related watercraft assets (collectively, the "Watercraft Assets") and (ii) authorizing the Trustee enter into an agreement with Kerry to accept an assignment of her interests in the Watercraft Assets.

26. The Debtor objected to the Turnover Motion and it remains pending before the Court.[2]

**G.    The Debtor's Settlement of the Divorce-Related Claims Against the Estate**

27. On November 12, 2024, the Debtor, K&S and Arthur (collectively, the "Debtor Affiliates") entered into an email agreement with Kerry that will result in the satisfaction of a significant amount of the claims against the Estate (the "Kerry Settlement"). The Debtor Affiliates have also reached agreements in principle with Angelini Ori & Abate, LLC ("Angelini") and Stout

---

[2] The Trustee has agreed to provide the Debtor additional time to respond to the motion respecting the Watercraft Assets, while this motion is pending.

Risius Ross, LLC ("Stout") to resolve their claims against the Debtor (the "Angelini/Stout Settlements," and together with the Kerry Settlement, the "Divorce Settlements").

28.     Specifically, the following claims asserted against the Estate will be resolved through the Divorce Settlements ("Satisfied Claims"):

- Kerry's $2,594,765.90 claim for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 16 ];

- Angelini's $970,738.50 claim for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 12];

- Stout's $349,904.67 claim filed for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 8];

- Cronin & Co, Ltd.'s $100,000.00 claim filed for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 17];

- The portion of the Internal Revenue Service's claim secured by the Real Estate in the approximate amount of $238,549.01, plus accruing interest [Claim 5]; and

- The portion of the Illinois Department of Revenue's claim secured by the Real Estate in the approximate amount of $38,124.01, plus accruing interest [Claims 4 and 6].

29.     In total, the Divorce Settlements will satisfy approximately $4.3 million in asserted claims against the Estate, including all the domestic support obligations and substantially all, if not all, the other asserted priority claims.

### H.     The Settlement Negotiations Among Parties to the Divorce Proceedings, the Debtor Affiliates and the Trustee

30.     Since the Petition Date, the Trustee has played a key role in the parties' efforts to reach the Divorce Settlements. As part of those negotiations, the Debtor Affiliates also entered into discussions with the Trustee regarding the resolution of the Bankruptcy Case. While not directly contingent upon an agreement with the Trustee, the Debtor Affiliates sought assurances

from the Trustee that he would file and prosecute a motion to dismiss the Bankruptcy Case if the Divorce Settlements were consummated.

31.     As a result of those discussions, the Parties reached an agreement embodied in the Stipulation providing for the dismissal of the Bankruptcy Case conditioned upon (i) the payment of $375,000 in satisfaction of agreed-upon administrative expenses including the claims of the Trustee and his professionals and the other terms and conditions reflected therein and (ii) the Court's approval of the Stipulation and the dismissal of the Bankruptcy Case.

32.     In connection with those discussions, on November 13, 2024, K&S caused the amount of $100,000.00. (the "Initial Payment") to be deposited in Cozen O'Connor's IOLTA account as a non-refundable payment to the Estate in connection with the compromise reflected in the Stipulation. K&S made the Initial Payment to the Trustee with the understanding that if the Court did not approve the Stipulation, the Initial Payment would become property of the Estate free and clear of any claims of K&S and Arthur.[3]

## THE STIPULATION

33.     The Trustee and the Debtor Affiliates acknowledge that litigation with regard to all the pending contested matters and Adversary Proceedings will be unnecessarily burdensome and wasteful to each of them, and it is in the best interests of the Parties, the Estate, and its creditors to seek dismissal of the Bankruptcy Case on the terms set forth in the Stipulation.

34.     The following is a summary of the salient terms of the Stipulation:[4]

- K&S and Arthur, shall jointly and severally, pay to the Trustee the amount of Three Hundred Seventy-Five Thousand Dollars ($375,000.00) (the "Estate Payment") consisting of (i) the Initial Payment and (ii) a payment

---

[3] The Initial Payment represents the Estate's share of the sale proceeds had the Sale Motion been approved.

[4] The motion merely summarizes the terms of the Stipulation. The Trustee refers the Court and all parties to the Stipulation for its complete terms and conditions. Capitalized terms used but not otherwise defined in the summary shall have the meaning ascribed to them in the Stipulation.

in the amount of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) (the "Final Payment"). K&S and Arthur will cause the Final Payment to be wired to the Cozen O'Connor IOLTA account within one business day after K&S has executed and delivered the Stipulation.

- After the Trustee's receipt of the Final Payment, (i) the Trustee and the Trustee's professionals will file and present for hearing their final fee applications on shortened notice (the "Final Applications") and (ii) the Parties will jointly file this motion. The Trustee will request a hearing on the Final Applications concurrently with this motion. The Debtor Affiliates will not object to the Final Applications.

- The Stipulation is subject to the approval of the Bankruptcy Court and shall be of no force and effect unless and until an order approving the Stipulation acceptable to the Parties has been entered by the Bankruptcy Court (the "Approval Order"). The terms of the Approval Order will, among other things, (i) effectuate the dismissal of the Bankruptcy Case; (ii) resolve and discharge the Show Cause Order; and (iii) dismiss the Adversary Proceedings.

- The effective date of the Stipulation will be the later of the date that (i) the Approval Order is entered by the Bankruptcy Court and (ii) the Trustee's receipt of the Final Payment (the "Effective Date").

- Upon the Effective Date, the Trustee shall be deemed to have waived and released, and shall have waived and released, any and all claims or causes of action, known or unknown, that the Trustee or the Estate may have or hold against the Debtor Affiliates and any entity in which any of the Debtor Affiliates have an ownership or other interest. Upon the Effective Date, the Debtor Affiliates, and any entity in which any of the Debtor Affiliates have an ownership or other interest, shall be deemed to have waived and released, and shall have released, any claims or causes of action, known or unknown, they may have or hold against the Trustee, the Estate and the Trustee's professionals.

- In the event that the Effective Date does not occur: (a) this Stipulation and the recitals contained herein shall be null, void and without force or effect, and neither this Stipulation, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties; (b) neither the Dismissal Motion nor any of the documents filed in support thereof shall be admissible in any proceeding involving the Parties; and (c) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of any of the Parties, except that: (i) the Initial Payment will become property of the Estate free and clear of any claims of the Debtor, K&S and Arthur; (ii) the Trustee shall promptly return the Final Payment to K&S and Arthur; and (iii) the Debtor Affiliates and the Trustee will request by separate motion that the Court authorize K&S to increase the secured

portion of its claim against the Pledged Stock by the amounts actually paid
by K&S to satisfy the Satisfied Claims.

## RELIEF REQUESTED

35.     By this motion, Movants seek the entry of an order, pursuant to § 707(a) of the

Bankruptcy Code, Fed. R. Bankr. P. 9019(a) and 1017(a) and Local Rule 1017-3, that (i) approves

the compromise reflected in the Stipulation, (ii) dismisses the Bankruptcy Case, concludes the

show cause proceedings, and dismisses the Adversary Proceedings, and (iii) grants related relief.

36.     The Trustee has concluded that the compromise reflected in the Stipulation, which

was the result of arms'-length negotiations conducted over several months in good faith, is fair in all

respects and represents a favorable resolution of the Bankruptcy Case in a manner that is in the best

interests of the Estate and its creditors.

## BASIS FOR RELIEF

37.     As discussed below, the Court should grant the relief requested in this motion

pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 707(a).

**A.      The Standards for Approval of Compromises Under Fed. R. Bankr. P. 9019(a)**

38.     Prior to approving a settlement under Fed. R. Bankr. P. 9019(a), a court must

determine whether the settlement is in the "best interests of the estate." *In re Energy Co-op., Inc.*,

886 F.2d 921, 927-29 (7th Cir. 1989); *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*,

841 F.2d 159, 161 (7th Cir. 1987). In order to make that determination, a court must compare "the

value of the settlement with the probable costs and benefits of litigating." *In re Doctors Hosp. of*

*Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007). Among the factors that the Court should

consider in its analysis are the litigation's (i) probability of success, (ii) complexity, (iii) attendant

expense, inconvenience and delay (including the possibility that disapproving the settlement will

cause wasting of assets). *See, e.g., Doctors Hosp.*, 474 F.3d at 426; *Energy Co-op.*, 886 F.2d at 927.

39.     Based on the foregoing analysis, the Court must determine whether the settlement falls within the reasonable range of possible litigation outcomes. *Doctors Hosp.*, 474 F.3d at 426. Since litigation outcomes cannot be precisely determined, the Trustee's decision should not be disturbed unless the settlement "fall[s] below the lowest point in the range of reasonableness." *See, e.g., Energy Co-op.*, 886 F.2d at 929; *In re Commercial Loan Corp.*, 316 B.R. 690, 698 (Bankr. N.D. Ill. 2004). The approval of a settlement is committed to the sound discretion of the bankruptcy court. *Commercial Loan Corp.*, 316 B.R. at 698 (<u>citing</u> *In re Andreuccetti*, 975 F.2d 413, 421 (7th Cir. 1992)).

**B.      The Standards for Dismissal of Bankruptcy Case Under 11 U.S.C. § 707(a)**

40.     Section 707(a) of the Bankruptcy Code allows the Court to dismiss a chapter 7 case for cause, after notice and a hearing. 11 U.S.C. § 707(a)(1) ("[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause."); Fed. R. Bankr. P. 1017(a) (motion for dismissal of a bankruptcy case by a debtor or by consent of the parties must be based on cause after notice and a hearing). Although the statute does not expressly refer to the debtor as the movant, courts routinely apply § 707(a) to a debtor's request to voluntarily dismiss a chapter 7 case. *See, e.g. In re Hopper*, 404 B.R. 302, 306 (Bankr. N.D. Ill. 2009). The moving party bears the burden of demonstrating cause justifying dismissal of a chapter 7 case. *In re Watkins*, 220 B.R. 907, 908 (Bankr. N.D. Ill. 1999). The decision to grant a motion to dismiss under § 707(a) lies within the discretion of the bankruptcy court. *Hopper*, 494 B.R. at 307.

41.     Section 707(a) does not define cause, and only provides illustrative examples of what may constitute cause for dismissal. *See, e.g., In re Jakovljevic-Ostojic*, 517 B.R. 119, 126 (Bankr. N.D. Ill. 2014); *In re Sekendur*, 334 BR. 609, 618 (Bankr. N.D. Ill. 2005). In determining

whether cause exists, courts consider the totality of the circumstances and are guided by several factors including "(1) whether dismissal is in the best interest of the debtor; (2) whether dismissal is in the best interest of the creditors; (3) whether dismissal would result in an abuse or manipulation of the system; and (4) whether dismissal is justified by compelling equitable principles." *See, e.g., Hopper*, 494 B.R. at 308 (<u>citing</u> *Watkins*, 229 B.R. at 909 and *In re Schwartz*, 58 B.R. 923, 925-26 (Bankr. S.D.N.Y. 1986).

### C. The Court Should Approve the Stipulation and Dismiss the Bankruptcy Case

42.     Cause exists to dismiss the Bankruptcy Case under § 707(a) of the Bankruptcy Code under each of the foregoing factors. The application of those factors under § 707(a) of the Bankruptcy Code also fully support approval of the Stipulation under Fed. R. Bankr. P. 9019(a).

43.     <u>First</u>, the Debtor believes that dismissal is in his best interests. As a result of the Bankruptcy Case, the Debtor asserts that he has experienced difficulties with the lenders that finance the real estate projects owned by the Debtor Related Entities. In addition, the Bankruptcy Case has complicated the Debtor's relationships with the investors in, and members of, the entities that own the underlying real estate investments. The Bankruptcy Case also has been expensive and time consuming and has inhibited the Debtor's from moving forward with his financial affairs. The Debtor also believes that if the Trustee is successful in his efforts to liquidate estate property through a bankruptcy proceeding, the yield to creditors would be substantially less than the nonbankruptcy maintenance and management of such property.

44.     <u>Second</u>, dismissal is in the best interests of creditors. The Debtor Affiliates have agreed to pay an amount sufficient to settle over $4.3 million in claims against the Estate using non-Estate assets. Importantly, the Divorce Settlements will result in satisfaction of all of the outstanding domestic support obligations and most, if not all, of the priority tax claims owed to the United States and State of Illinois. Further, the remaining claims against the Estate are

primarily contingent guaranties or litigation claims that are related to the Debtor Related Entities. The Debtor will <u>not</u> receive a discharge upon dismissal of the Bankruptcy Case and all creditors holding those contingent and disputed claims retain the right to resolve or litigate those claims against the Debtor in other forums. As noted above, the Debtor believes that the resolution of such obligations outside of bankruptcy will yield a substantially greater return to creditors. Finally, the Trustee believes that potential distributions on account of the remaining disputed claims, if any, will take several years and require a sustained effort by the Trustee and his professionals without any guaranty of success. Given the substantial administrative costs already incurred by the Estate, any meaningful distributions on any claims that may ultimately be allowed by the Court is less than assured.

45.    <u>Third</u>, dismissal is consistent with the purposes of the bankruptcy system because the claims that significantly influenced the Debtor's need for bankruptcy protection – *i.e.,* the domestic support obligations – have been satisfied by agreement pursuant to the Divorce Settlements and have or will be withdrawn against the Estate. In addition, the Debtor Affiliates have agreed to pay the administrative expenses of the Estate upon dismissal of the Bankruptcy Case. Further, all remaining claims against the Debtor will be preserved because the Debtor will not receive a discharge and any meaningful distribution on account of claims is uncertain and years away from any resolution in the Bankruptcy Case.

46.    <u>Fourth,</u> dismissal is justified under compelling equitable principles. It is indisputable that the Divorce Settlements were possible because of the time and effort expended by the Trustee and his professionals over the last year. Those efforts helped bring the Divorce Case to a conclusion after 8 contentious years. But those efforts came only after a substantial investment of time and expense by the Trustee and his professionals without any funds to administer the

Estate. In the event that the Bankruptcy Case is not dismissed, the Trustee and his professionals will be obligated to continue to litigate the contested matters, including the Sale Motion and the Adversary Proceedings, to conclusion at their expense with an already administratively insolvent Estate. If and when those issues are resolved in the Estate's favor, the Trustee will only then commence the process of liquidating the Debtor Related Entities over the next several years. It would be inequitable for the Trustee and his professionals to be compelled to fund the Estate under these circumstances.

47.     Given that the initial purpose of the Bankruptcy Case has been achieved, and the Debtor Affiliates have agreed to pay the agreed administrative expenses of the Estate, equity warrants dismissal of the Bankruptcy Case. *See Hopper*, 494 B.R. at 307 (granting motion to dismiss chapter 7 case under § 707(a) although the debtor's request was otherwise insufficient, where the Trustee subsequently consented after the Debtor waived her discharge and agreed to pay the estate's administrative expenses).

48.     For all the foregoing reasons, the Stipulation should be approved and the Bankruptcy Case should be dismissed.

**D.      Dismissal of the Adversary Proceedings**

49.     Local Bankruptcy Rule 1017-3 provides that "[w]hen a bankruptcy case is dismissed, an adversary proceeding pending in the case will not be dismissed unless the court orders its dismissal." LR 1017-3.

50.     Pursuant to the terms of the Stipulation, Movants request that the order approving the dismissal of the Bankruptcy Case also provide for the dismissal of the Adversary Proceedings.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto: (i) approving the Stipulation attached as **Exhibit 1**; (ii) dismissing the

Bankruptcy Case, discharging the Show Cause Order, and dismissing the Adversary Proceedings;

and (iii) granting such other and further relief as is just and appropriate.

Respectfully submitted,

Ira Bodenstein, not individually, but as
chapter 7 trustee for the bankruptcy estate of
Frank Martin Paris, Jr.

Dated: November 27, 2024

By:  /s/ Allen J. Guon
       One of his attorneys

Allen J. Guon
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-4450
aguon@cozen.com
*Counsel for the Trustee*

**Arthur Paris and Keystone
& Stuart, LLC**

By:  /s/ Ariel Weissberg
       One of his/its attorneys

Ariel Weissberg
Weissberg and Associates, Ltd.
125 S. Wacker Dr., Ste. 300
Chicago, IL 60606
312-663-0004
ariel@weissberglaw.com

**Frank Martin Paris, Jr.**

By:  /s/ William J. Factor
       One of his attorneys

William J. Factor
Factor Law
105 W. Madison St., #2300
Chicago, IL 60602
(312) 878-6146
wfactor@wfactorlaw.com