EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| FRANK MARTIN PARIS, JR., | Case No. 23-16481 |
| Debtor. | Hon. David D. Cleary |

**STIPULATION RESOLVING DEBTOR'S CHAPTER 7 BANKRUPTCY CASE**

Ira Bodenstein, not individually, but as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Frank Martin Paris, Jr. (the "Estate"), the Debtor Frank Martin Paris, Jr. (the "Debtor"), Arthur Paris ("Arthur") and Keystone & Stuart, LLC ("K&S," and together with the Trustee, the Debtor and Arthur, the "Parties"), hereby stipulate and agree (this "Stipulation") as follows:

## RECITALS

- **The Commencement of the Debtor's Bankruptcy Case**

A. On May 1, 2016, Kerry Paris ("Kerry") filed her *Petition for Dissolution of Marriage* ("Petition") in the Circuit Court of Cook County, Illinois, Domestic Relations Division ("Divorce Court") seeking dissolution of her marriage to the Debtor in the matter of *Kerry Paris v. Frank Martin Paris, Jr.*, Case No. 2016-D-004685 ("Divorce Case").

B. On June 2, 2016, the Debtor filed his *Counter Petition for Dissolution of Marriage and Other Relief* in the Divorce Case against Kerry.

C. On December 2, 2022, the Divorce Court entered its (i) Memorandum and Order: Judgment for Dissolution of Marriage ("JDOM"), and (ii) Opinion Memorandum and Allocation Judgment of Parental Responsibilities and Parenting Plan.

D. The disputes between Kerry and the Debtor over the Debtor's compliance with his domestic support obligations continued after the State Court entered the JDOM.

E. On December 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq*., the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("Bankruptcy Court") thereby initiating the chapter 7 case captioned *In Re Frank Martin Paris*, as Case No. 23-16481 ("Bankruptcy Case").

F. Pursuant to § 541 of the Bankruptcy Code, as of the Petition Date substantially all of the Debtor's property became property of the Estate created upon the commencement of the Bankruptcy Case, which is being administered by Ira Bodenstein, not individually, but solely as the chapter 7 trustee of the Estate.

- **The Pending Rule 2004 Subpoenas and Rule to Show Cause**

G. The Debtor's bankruptcy schedules reported that the Debtor has ownership interest in various companies, including but not limited to real estate holding and management companies and thus the Trustee, with the assistance of his professionals, commenced an extensive investigation of the Debtor's business interests and their value to the Estate.

H. On August 8, 2024, the Trustee served Rule 2004 subpoenas on thirteen entities the Trustee contends the Debtor controlled (the "Examinees") to enable the Trustee to obtain information regarding whether the Examinees' assets could be monetized for the benefit of the Estate [ECF 218].

I. On September 25, 2024, the Bankruptcy Court entered the *Order to Show Cause* ("Show Cause Order"), directing the Debtor and the Examinees to respond to the Rule 2004 subpoenas [ECF 257].

J. The Debtor and the Examinees contend they have fully responded to the Show Cause Order and fully complied with any obligation to produce materials in response to the Rule 2004 subpoenas. As of the execution of this Stipulation, the Show Cause Order remains pending before the Bankruptcy Court.

- **The Pending Sale Motion and Related Adversary Proceeding**

K. On March 18, 2024, the Trustee filed the *Trustee's Motion for the Entry of an Order Authorizing the Sale of Real Estate and for Related Relief* (the "Sale Motion") [ECF 86]. In the Sale Motion, the Trustee sought to sell the Estate's interest in property commonly known as 703 Park Avenue, River Forest, Illinois (the "Real Estate"). The Debtor and Kerry, among others, objected to the Sale Motion.

L. In response to Kerry's objection to the Sale Motion, on June 20, 2024, the Trustee commenced an adversary proceeding (the "Sale Adversary") against Kerry seeking authority to sell the Real Estate free and clear of Kerry's co-ownership interest [Adv. Pro. 24-00164].

M. As of the execution of this Stipulation, the Sale Motion and the Sale Adversary remain pending before the Bankruptcy Court.

- **The Pending Stay Relief Motions and Related Adversary Proceeding**

N. On August 8, 2024, K&S filed *Keystone & Stuart, LLC's Motion to Modify Automatic Stay* (the "K&S Stay Motion") [ECF 219]. In the K&S Stay Motion, K&S sought to modify the automatic stay to pursue its asserted rights as a secured creditor to foreclose on a portion of the Debtor's voting stock in Martin NV II, Inc. ("Martin NV II").

O. On September 20, 2024, Arthur filed *Arthur Paris' Motion for an Order Confirming that the Stay Does Not Bar Him from Calling a Shareholders' Meeting for Certain Non-Debtor Entity to Elect a New Director and, in the Alternative, for Relief from the Stay* (the

"Arthur Stay Motion"). [ECF 249]. In his motion, Arthur requested the entry of an order modifying the automatic stay to pursue his asserted right to vote certain shares in Conor DE II, Inc. ("Conor II").

P. On October 8, 2024, the Trustee filed his *Complaint for Declaratory Judgment and Injunctive Relief* against the Debtor, Arthur, Conor II, and Maeve Manager, Inc. (the "Declaratory Adversary," and together with the Sale Adversary, the "Adversary Proceedings") [Adv. Pro. 24-00315]. In the Declaratory Adversary, the Trustee sought, among other things, a judicial declaration that the Debtor's voting and management interests in Conor II and Maeve Manager, Inc. (collectively, the "Manager Entities") are property of the Estate and that the Estate retained all of its voting and management interests in the Manager Entities.

Q. As of the execution of this Stipulation, the K&S Stay Motion, the Arthur Stay Motion, and the Declaratory Adversary remain pending before the Bankruptcy Court.

- **The Debtor's Settlement of the Divorce-Related Claims Against the Estate**

R. On November 12, 2024, the Debtor, K&S and Arthur (collectively, the "Debtor Affiliates") entered into an email agreement with Kerry that will result in the satisfaction of a significant amount of the claims against the Estate (the "Kerry Settlement"). The Debtor Affiliates have also reached agreements in principle with Angelini Ori & Abate, LLC ("Angelini") and Stout Risius Ross, LLC ("Stout") to resolve their claims against the Debtor (the "Angelini/Stout Settlements," and together with the Kerry Settlement, the "Divorce Settlements"). The Divorce Settlements are independent from the compromises reflected in this Stipulation.

S. Specifically, the following claims asserted against the Estate will be resolved through the Divorce Settlements ("Satisfied Claims"):

4

- Kerry's $2,594,765.90 claim for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 16 ];
- Angelini's $970,738.50 claim for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 12];
- Stout's $349,904.67 claim filed for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 8];
- Cronin & Co, Ltd.'s $100,000.00 claim filed for asserted unpaid domestic support obligations under § 507(a)(1) of the Bankruptcy Code [Claim 17];
- The portion of the Internal Revenue Service's claim secured by the Real Estate in the approximate amount of $238,549.01, plus accruing interest [Claim 5];
- The portion of the Illinois Department of Revenue's claim secured by the Real Estate in the approximate amount of $38,124.01, plus accruing interest [Claims 4 and 6].

T. In total, the Divorce Settlements will satisfy approximately $4.3 million in asserted claims against the Estate, including the majority of all of the asserted priority unsecured claims.

- **The Proposed Dismissal of the Bankruptcy Case**

U. As part of the negotiations regarding the Divorce Settlements, the Debtor Affiliates also entered into discussions with the Trustee regarding the resolution of the Bankruptcy Case. While not directly contingent upon an agreement with the Trustee, the Debtor Affiliates sought assurances from the Trustee that he would file and prosecute a motion to dismiss the Bankruptcy Case if the Divorce Settlements were consummated.

V. As a result of good-faith discussions, the Parties reached an agreement providing for the dismissal of the Bankruptcy Case conditioned upon (i) the payment of $375,000 in satisfaction of agreed-upon administrative expenses including the claims of the Trustee and his professionals and the other terms and conditions reflected in this Stipulation and (ii) the Bankruptcy Court's entry of the Approval Order (defined below).

W.      On November 13, 2024, K&S caused the amount of $100,000.00 (the "Initial Payment") to be deposited in Cozen O'Connor's IOLTA account as a non-refundable payment to the Estate in connection with this Stipulation. K&S made the Initial Payment to the Trustee with the understanding that if the Approval Order is not entered by the Bankruptcy Court, the Initial Payment will become property of the Estate free and clear of any claims of K&S and Arthur.

**AGREEMENT**

Intending to be legally bound and subject to Bankruptcy Court approval, each of the Parties stipulate and agree as follows:

1.      K&S and Arthur, shall jointly and severally, pay to the Trustee the amount of Three Hundred Seventy-Five Thousand Dollars ($375,000.00) (the "Estate Payment") consisting of (i) the Initial Payment and (ii) a payment in the amount of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) (the "Final Payment"). K&S and Arthur will cause the Final Payment to be wired to the Cozen O'Connor IOLTA account within one business day after K&S has executed and delivered this Stipulation. The Final Payment shall be transmitted by wire transfer using the same transfer instructions previously provided by the Trustee to K&S's counsel for the Initial Payment.

2.      After the Trustee's receipt of the Final Payment, (i) the Trustee and the Trustee's professionals will file and present for hearing their final fee applications on shortened notice (the "Final Applications") and (ii) the Parties will jointly file a motion to approve this Stipulation and seek the dismissal of the Bankruptcy Case (the "Settlement and Dismissal Motion"). The Trustee will request a hearing on the Final Applications concurrently with the hearing on the Settlement and Dismissal Motion. The Debtor Affiliates will not object to the Final Applications.

3. This Stipulation is subject to the approval of the Bankruptcy Court and shall be of no force and effect unless and until an order approving this Stipulation acceptable to the Parties has been entered by the Bankruptcy Court (the "Approval Order"). The terms of the Approval Order will, among other things, (i) effectuate the dismissal of the Bankruptcy Case; (ii) resolve and discharge the Show Cause Order; and (iii) dismiss the Adversary Proceedings.

4. The effective date of this Stipulation will be the later of the date that (i) the Approval Order is entered by the Bankruptcy Court and (ii) the Trustee's receipt of the Final Payment (the "Effective Date").

5. Upon the Effective Date, the Trustee shall be deemed to have waived and released, and shall have waived and released, any and all claims or causes of action, known or unknown, that the Trustee or the Estate may have or hold against the Debtor Affiliates and any entity in which any of the Debtor Affiliates have an ownership or other interest. Upon the Effective Date, the Debtor Affiliates, and any entity in which any of the Debtor Affiliates have an ownership or other interest, shall be deemed to have waived and released, and shall have released, any claims or causes of action, known or unknown, they may have or hold against the Trustee, the Estate and the Trustee's professionals.

6. In the event that the Effective Date does not occur: (a) this Stipulation and the recitals contained herein shall be null, void and without force or effect, and neither this Stipulation, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties; (b) neither the Dismissal Motion nor any of the documents filed in support thereof shall be admissible in any proceeding involving the Parties; and (c) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of any of the Parties, except that: (i) the Initial Payment will become property of the Estate free and clear of any

7
LEGAL\74187240\6

claims of the Debtor, K&S and Arthur; (ii) the Trustee shall promptly return the Final Payment to K&S and Arthur; and (iii) the Debtor Affiliates and the Trustee will request by separate motion that the Court authorize K&S to increase the secured portion of its claim against the Pledged Stock by the amounts actually paid by K&S to satisfy the Satisfied Claims.

7. The Parties hereto participated equally in the drafting of this Stipulation, and the rule of law which provides that ambiguities shall be construed against the drafting party in interpreting written instruments shall not be applicable to, or used in, resolving any dispute over the meaning or intent of this Stipulation.

8. The Recitals are incorporated into this Stipulation as if fully set forth herein. This Stipulation may not be amended except in a writing, signed by each of the Parties.

9. This Stipulation shall be governed by and construed in accordance with Illinois law, except to the extent the Bankruptcy Code requires a different result, in which case the provisions of the Bankruptcy Code shall be controlling, in each case to the maximum extent applicable, without regard to any conflict or choice of law provisions.

10. The Parties will execute and deliver such additional documents and to take such further action in the future as may be reasonably necessary to give effect to the terms of this Stipulation.

11. The Parties will not contest the Bankruptcy Court's jurisdiction to enforce and interpret the terms of this Stipulation.

12. This Stipulation may be executed in counterparts, each of which shall be deemed an original and such counterparts shall together constitute a single agreement. Any signature, including an electronic signature, shall be deemed an original signature of this Stipulation.

*[Signature Page Follows]*

**Ira Bodenstein, not individually, but as chapter 7 trustee for the bankruptcy estate of Frank Martin Paris, Jr.**

By: _____
One of his attorneys

Allen J. Guon
Cozen O'Connor
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 382-3100
aguon@cozen.com

**Arthur Paris**

By: _____
One of his attorneys

Ariel Weissberg
Weissberg and Associates, Ltd.
125 S. Wacker Dr., Ste. 300
Chicago, IL 60606
312-663-0004
ariel@weissberglaw.com

**Keystone & Stuart, LLC**

By: _____
One of its attorneys

Ariel Weissberg
Weissberg and Associates, Ltd.
125 S. Wacker Dr., Ste. 300
Chicago, IL 60606
312-663-0004
ariel@weissberglaw.com

**Frank Martin Paris, Jr.**

By: _____
One of his attorneys

William J. Factor
Factor Law
105 W. Madison St., #2300
Chicago, IL 60602
(312) 878-6146
wfactor@wfactorlaw.com